UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------

AVI KOSCHITZKI, on Behalf of Himself and all Others Similarly Situated,

                Plaintiff,

                *v.*                              Case No. 1:08-cv-04451-JBW-VVP

APPLE INC. and AT&T MOBILITY LLC,

                Defendants.
-------------------------------------------------------

# MEMORANDUM OF LAW IN SUPPORT OF MOTION OF AT&T MOBILITY LLC TO COMPEL ARBITRATION AND DISMISS CLAIMS

CROWELL & MORING LLP
153 East 53rd Street, 31st Floor
New York, NY 10022
(212) 895-4200
*Counsel for Defendant AT&T Mobility LLC*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii
BACKGROUND ....................................................................................................................... 1
      A.      Plaintiff Koschitzki Agrees To Arbitrate His Disputes With ATTM .................... 1
      B.      The Consumer-Friendly Features Of ATTM's Arbitration Provision ................... 2
      C.      Dispute Resolution Under ATTM's Arbitration Provision ................................... 3
      D.      Koschitzki Files Suit Against ATTM Notwithstanding His Agreement To Arbitrate ............................................................................................................... 4
ARGUMENT .............................................................................................................................. 5
I.      THE FEDERAL ARBITRATION ACT REQUIRES ENFORCEMENT OF KOSCHITZKI'S ARBITRATION AGREEMENTS ........................................................ 5
II.     KOSCHITZSKI'S ARBITRATION AGREEMENTS ARE ENFORCEABLE UNDER NEW YORK LAW .......................................................................................... 6
III.    THE FAA WOULD PREEMPT ANY STATE-LAW RULE THAT WOULD CONDEMN ATTM'S ARBITRATION PROVISION AS UNCONSCIONABLE ......... 8
CONCLUSION ......................................................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bar-Ayal v. Time Warner Cable Inc.*,
  2006 WL 2990032 (S.D.N.Y. Oct. 16, 2006) ................................................................8

*Blitz v. AT&T Wireless Servs., Inc.*,
  2005 WL 6177327 (Mo. Cir. Ct. Nov. 28, 2005) ........................................................10

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*,
  489 U.S. 141 (1989) ...................................................................................................10

*Brower v. Gateway 2000, Inc.*,
  676 N.Y.S.2d 569 (App. Div. 1998) ........................................................................7, 8

*Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*,
  252 F.3d 707 (4th Cir. 2001) .......................................................................................6

*Douglas v. U.S. Dist. Ct.*,
  495 F.3d 1062 (9th Cir. 2007) .....................................................................................8

*EEOC v. Waffle House, Inc.*,
  534 U.S. 279 (2002) .....................................................................................................5

*Fid. Union Trust Co. v. Field*,
  311 U.S. 169 (1940) .....................................................................................................8

*Gay v. CreditInform*,
  511 F.3d 369 (3d Cir. 2007) ...................................................................................9, 10

*Gillman v. Chase Manhattan Bank, N.A.*,
  534 N.E.2d 824 (N.Y. 1988) ........................................................................................6

*Harris v. Shearson Hayden Stone, Inc.*,
  435 N.E.2d 1097 (N.Y. 1982) ..................................................................................7, 8

*Harris v. Shearson Hayden Stone, Inc.*,
  441 N.Y.S.2d 70 (App. Div. 1981) ...........................................................................7, 8

*Hayes v. County Bank*,
  811 N.Y.S.2d 741 (App. Div.) ..................................................................................7, 8

*Hollern v. Wachovia Sec., Inc.*,
  458 F.3d 1169 (10th Cir. 2006) .................................................................................10

# TABLE OF AUTHORITIES
(continued)

**Page**

*Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*,
　379 F.3d 159 (5th Cir. 2004) ...................................................................................................9

*In re Apple & AT&TM Antitrust Litig.*,
　2008 WL 4810067 (N.D. Cal. Oct. 1, 2008) ............................................................................8

*La Salle Bank Nat'l Ass'n v. Kosarovich*,
　820 N.Y.S.2d 144 (App. Div. 2006) .....................................................................................6, 9

*Lipuma v. Am. Express Co.*,
　406 F. Supp. 2d 1298 (S.D. Fla. 2005) .....................................................................................8

*Mandel v. Liebman*,
　100 N.E.2d 149 (N.Y. 1951) .....................................................................................................6

*Marchant v. Mead-Morrison Mfg. Co.*,
　169 N.E. 386 (N.Y. 1929) .........................................................................................................8

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
　473 U.S. 614 (1985) ................................................................................................................10

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
　460 U.S. 1 (1983) ......................................................................................................................5

*Pahuta v. Massey-Ferguson, Inc.*,
　170 F.3d 125 (2d Cir. 1999) ......................................................................................................8

*Perry v. Thomas*,
　482 U.S. 483 (1987) ..................................................................................................................9

*Preston v. Ferrer*,
　128 S. Ct. 978 (2008) ..........................................................................................................9, 10

*Pyburn v. Bill Heard Chevrolet*,
　63 S.W.3d 351 (Tenn. Ct. App. 2001) ....................................................................................10

*Ragan v. AT&T Corp.*,
　824 N.E.2d 1183 (Ill. App. Ct. 2005) .......................................................................................8

*Ranieri v. Bell Atl. Mobile*,
　759 N.Y.S.2d 448 (App. Div.) ..........................................................................................6, 7, 8

*Rubin v. Sona Int'l Corp.*,
　457 F. Supp. 2d 191 (S.D.N.Y. 2006) .......................................................................................6

# TABLE OF AUTHORITIES
(continued)

*Schultz v. AT&T Wireless Servs., Inc.*,
    376 F. Supp. 2d 685 (N.D. W. Va. 2005) ..................................................................10

*Shroyer v. New Cingular Wireless Servs., Inc.*,
    498 F.3d 976 (9th Cir. 2007) ....................................................................................10

*Tsadilas v. Providian Nat'l Bank*,
    786 N.Y.S.2d 478 (App. Div. 2004) .................................................................6, 7, 8

*United States v. Giordano*,
    442 F.3d 30 (2d Cir. 2006) .........................................................................................5

**Statutes and Rules**

9 U.S.C. §§ 1–16 ................................................................................................................1

9 U.S.C. § 2 ...............................................................................................................5, 8, 9

9 U.S.C. § 4 .......................................................................................................................6

N.Y. Uniform Dist. Ct. Act § 1801 ...................................................................................3

N.Y. Gen. Bus. law § 349 ..................................................................................................4

Fed. R. Civ. P. 11(b) .........................................................................................................2

Fed. R. Civ. P. 12(b)(6) .....................................................................................................1

Fed. R. Civ. P. 12(f) ..........................................................................................................1

Defendant AT&T Mobility LLC ("ATTM") respectfully moves to compel arbitration and to dismiss the claims against it.[1] The terms and conditions of ATTM's standard agreement for wireless service provide that customers must pursue any disputes with ATTM in individual arbitration or small claims court. Under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, ATTM's arbitration provision is enforceable. Accordingly, this Court should compel plaintiff Avi Koschitzski to resolve his claims through arbitration, as he has repeatedly agreed to do.

Koschitzski may argue that his arbitration agreements are unenforceable because they require arbitration on an individual rather than class-wide basis. As we explain below, any such argument fails as a matter of New York and federal law.

## BACKGROUND

### A. Plaintiff Koschitzki Agrees To Arbitrate His Disputes With ATTM.

Avi Koschitzki is an ATTM customer who resides in New York. Declaration of Caroline Mahone-Gonzalez ¶¶ 3–5; Am. Compl. ¶ 5. In August 2008, Koschitzki twice agreed to pursue his disputes with ATTM in individual arbitration or small claims court. First, on August 29, 2008, Koschitzki, who had placed a telephone order with ATTM's customer service representatives for a new cellular phone, activated that phone for use with ATTM's network. Using ATTM's Interactive Voice Response system, Koschitzki was required to indicate his acceptance of the terms of ATTM service by pressing a button on his telephone's keypad. Mahone-

---

[1] In the alternative, ATTM concurrently has filed a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and to strike the prayer for relief under Rule 12(f). Because this motion to compel arbitration raises the threshold question of whether plaintiff may pursue his claims against ATTM in this forum, we respectfully submit that this Court should decide this motion before reaching ATTM's motion to dismiss under Rule 12(b)(6) and to strike under Rule 12(f). Counsel for ATTM offered to stipulate to a request that the due date for Koschitzki's response to ATTM's Rule 12(b)(6)/Rule 12(f) motion be deferred until after this Court's resolution of this motion to compel arbitration. Plaintiff's counsel declined the invitation.

Gonzalez Dec. ¶ 4; Declaration of Adam Gill ¶ 6. ATTM's Terms of Service included a provision requiring both ATTM and Koschitzki to "arbitrate all disputes and claims between us" or to pursue such disputes in small claims court. Gill Dec. Ex. 2, at 14. The terms further specify that arbitration must be conducted on an individual rather than class-wide basis. *Id.* at 14–16.

Two days later, on August 31, 2008, Koschitzki purchased and activated an iPhone 3G for wireless service on ATTM's network. Mahone-Gonzalez Dec. ¶ 5; Am. Compl. ¶ 31. During that transaction, which took place in an Apple store in Garden City, New York (Mahone-Gonzalez Dec. ¶ 5), Koschitzki again agreed to ATTM's service agreement. Declaration of TJ Terry ¶¶ 3–7. That agreement included an arbitration provision identical to the one in Koschitzki's earlier agreement. *Id.* ¶ 5 & Ex. 3.

### B. The Consumer-Friendly Features Of ATTM's Arbitration Provision.

To ATTM's knowledge, its provision is the most pro-consumer arbitration provision in the country. Richard Nagareda, a law professor at Vanderbilt University whose scholarship focuses on aggregate dispute resolution, observes that he has "never seen an arbitration provision that has gone as far as this one to ensure that consumers and their prospective attorneys have adequate incentives to bring claims" on an individual basis. Declaration of Richard A. Nagareda ¶ 11. The provision includes the following features (Gill Dec. Ex. 2, at 14–16; Terry Dec. Ex. 3, at 7–9):

- **Cost-free arbitration:** "[ATTM] will pay all [American Arbitration Association ("AAA")] filing, administration, and arbitrator fees" unless the arbitrator determines that a customer's claim "is frivolous or brought for an improper purpose (as measured by the standards set forth in Federal Rule of Civil Procedure 11(b))";[2]

- **Full remedies available:** The arbitrator can award the same remedies to individual consumers (including statutory and punitive damages, injunctions, and statutory attorneys' fees) that

---

[2] In the event that an arbitrator finds that a customer's claim is frivolous, the AAA's consumer arbitration rules would cap a consumer's arbitration costs at $125. Declaration of Theodore J. Weiman Ex. 1 (AAA, *Supplementary Procedures for Consumer Related Disputes* § C-8).

a court could award;

- **$5,000 minimum award:** If the arbitrator issues an award in favor of a customer that is greater than "[ATTM]'s last written settlement offer made before an arbitrator was selected" but less than $5,000, ATTM will pay the customer $5,000 rather than the smaller arbitral award;[3]

- **Double attorneys' fees:** If the arbitrator awards the customer more than ATTM's last written settlement offer, then "[ATTM] will * * * pay [the customer's] attorney, if any, twice the amount of attorneys' fees, and reimburse any expenses, that [the] attorney reasonably accrues for investigating, preparing, and pursuing [the] claim in arbitration";

- **Flexible consumer procedures:** Arbitration will be conducted under the AAA's Commercial Dispute Resolution Procedures and the Supplementary Procedures for Consumer Related Disputes, which the AAA designed with consumers in mind;

- **Choice of in-person, telephonic, or no hearing:** For claims of $10,000 or less, the customer has the exclusive right to choose whether the arbitrator will conduct an in-person hearing, a telephonic hearing, or a "desk" arbitration in which "the arbitration will be conducted solely on the basis of documents submitted to the arbitrator";[4]

- **Conveniently located hearing:** Arbitration will take place "in the county * * * of [the customer's] billing address";

- **ATTM disclaims right to seek attorneys' fees:** "Although under some laws [ATTM] may have a right to an award of attorneys' fees and expenses if it prevails in an arbitration, [ATTM] agrees that it will not seek such an award [from the customer]";

- **No confidentiality requirement:** Neither party must keep the arbitration confidential; and

- **Small claims court option:** Either party may bring a claim in small claims court.

### C. Dispute Resolution Under ATTM's Arbitration Provision.

ATTM has tailored the dispute-resolution process to the needs of its customers. Should efforts by ATTM's customer care department to resolve a dispute prove unsuccessful, a customer

---

[3] The minimum award under the ATTM provision is "the greater of (a) $5,000 or (b) the maximum claim that may be brought in small claims court in the county of [the customer's] billing address." Gill Dec. Ex. 2, at 15; Terry Dec. Ex. 3, at 9. The jurisdictional limit of the small claims part of New York's state district court is $5,000. N.Y. UNIFORM DIST. CT. ACT § 1801. Accordingly, the minimum award for Koschitzki is $5,000.

[4] Under the AAA rules that would otherwise apply, either party may insist on a hearing in cases involving claims of $10,000 or less. Weiman Dec. Ex. 1 (AAA, *Supplementary Procedures for Consumer Related Disputes* §§ C-5, C-6).

-3-

can take the next step—as required by ATTM's arbitration provision—of notifying ATTM of the dispute in writing. Gill Dec. Ex. 2, at 14–15; Terry Dec. Ex. 3, at 8. That is as simple as mailing a letter to ATTM or submitting a one-page Notice of Dispute form that ATTM has posted on its web site (at http://www.att.com/arbitration-forms). Declaration of Harry Bennett Ex. 3. If ATTM and the customer cannot resolve the dispute within 30 days, the customer may begin the formal arbitration process. To do so, the customer need only fill out a one-page Demand for Arbitration form and send copies to the AAA and to ATTM. Customers may either obtain a copy of the demand form from the AAA's web site (at http://www.adr.org) or use the simplified form that ATTM has posted on its web site (at http://www.att.com/arbitration-forms). *Id.* Ex. 4. To further assist its customers, ATTM has posted on its web site a layperson's guide on how to arbitrate a claim. *Id.* Ex. 2 (http://www.att.com/arbitration-information).

        **D.    Koschitzki Files Suit Against ATTM Notwithstanding His Agreement To Arbitrate.**

Despite agreeing to arbitrate all disputes against ATTM (or to bring them in small claims court), Koschitzki commenced this putative class action against AT&T Inc. and Apple, Inc., the manufacturer of the iPhone, in the New York Supreme Court for Nassau County on October 6, 2008. Apple removed the action to this Court on November 4, 2008, and Koschitzki filed an amended complaint on November 12, 2008 that substituted ATTM for AT&T Inc. as a defendant. Koschitzki alleges that he purchased an Apple iPhone in the summer of 2008. Am. Compl. ¶ 31. Koschitzki contends that Apple and ATTM engaged in "deceptive, improper, or unlawful conduct in [the] design, marketing manufacturing, distribution, and sale of Apple's iPhone 3G series of mobile phones." *Id.* ¶ 1. Specifically, he alleges that the 3G network is inadequate and that the iPhone devices are defective. *Id.* ¶¶ 14–39. As a consequence, he claims, ATTM and Apple have violated Section 349 of the New York General Business Law, breached

express and implied warranties, breached their contracts with him (and others), made negligent and intentional misrepresentations, and unjustly enriched themselves. *Id.* ¶¶ 48–98. Koschitzski seeks to represent a putative class of New York residents who purchased iPhone 3G devices. *Id.* ¶ 40 & pp. 21–22.

**ARGUMENT**

**I. THE FEDERAL ARBITRATION ACT REQUIRES ENFORCEMENT OF KOSCHITZKI'S ARBITRATION AGREEMENTS.**

The FAA mandates that written agreements to arbitrate disputes "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Congress enacted the FAA to "reverse the longstanding judicial hostility to arbitration agreements * * *[,] to place [these] agreements upon the same footing as other contracts[,] * * * [and to] manifest a liberal federal policy favoring arbitration agreements." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) (internal quotation marks omitted). Accordingly, "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

The FAA applies if the arbitration agreement is "written" and in a contract "evidencing a transaction involving commerce." 9 U.S.C. § 2. Both criteria are met here: Koschiztki has entered into arbitration agreements that are in writing (*see* pages 1–2, *supra*), and his contracts involve interstate commerce. The Second Circuit has held that telephones, even when used intrastate, are "instrumentalities of interstate commerce." *United States v. Giordano*, 442 F.3d 30, 39, 41–42 (2d Cir. 2006), *cert. denied*, 127 S. Ct. 1253 (2007). In addition, Koschitzki's claims fall within the all-encompassing scope of ATTM's arbitration provision, which applies to "all disputes and claims" between him and ATTM. Gill Dec. Ex. 2, at 14; Terry Dec. Ex. 3, at 8.

When, as here, the FAA governs an arbitration provision that covers a plaintiff's claims, the Court should compel arbitration and dismiss the claims. *See* 9 U.S.C. § 4; *see also*, *e.g.*, *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir. 2001) ("dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable"); *Rubin v. Sona Int'l Corp.*, 457 F. Supp. 2d 191, 198 (S.D.N.Y. 2006) ("Where all of the issues raised in the Complaint must be submitted to arbitration, the Court may dismiss an action rather than stay proceedings.")

## II. KOSCHITZSKI'S ARBITRATION AGREEMENTS ARE ENFORCEABLE UNDER NEW YORK LAW.

Koschitzski may argue that his arbitration agreements are unconscionable because they require arbitration on an individual (as opposed to a class-wide) basis. Any such argument would be meritless. Under New York law, a party claiming that a contractual term is unconscionable must show that "no reasonable and competent person would accept [its] terms, which are so inequitable as to shock the conscience." *La Salle Bank Nat'l Ass'n v. Kosarovich*, 820 N.Y.S.2d 144, 146 (App. Div. 2006) (internal quotation marks omitted); *see also Gillman v. Chase Manhattan Bank, N.A.*, 534 N.E.2d 824, 828 (N.Y. 1988) (contract must be "'grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place'") (quoting *Mandel v. Liebman*, 100 N.E.2d 149, 152 (N.Y. 1951)).

New York courts have consistently rejected unconscionability challenges to agreements to arbitrate on an individual basis. For example, the First Department of New York's Appellate Division has held that "a contractual proscription against class actions" contained in the arbitration provision of a cell phone company's form contract "is neither unconscionable nor violative of public policy." *Ranieri v. Bell Atl. Mobile*, 759 N.Y.S.2d 448, 449 (App. Div.), *leave to appeal denied*, 807 N.E.2d 290 (N.Y. 2003). Since then, the First Department has twice reaffirmed

this rule and enforced provisions requiring arbitration on an individual basis. *See Tsadilas v. Providian Nat'l Bank*, 786 N.Y.S.2d 478, 480 (App. Div. 2004), *leave to appeal denied*, 832 N.E.2d 1189 (N.Y. 2005); *Brower v. Gateway 2000, Inc.*, 676 N.Y.S.2d 569, 573 (App. Div. 1998). As the First Department explained, a consumer's preference for a class-action lawsuit "does not alter the binding effect of the valid arbitration clause contained in [his] agreement." *Brower*, 676 N.Y.S.2d at 573. The Second Department has embraced the same proposition, holding that "the fact that [an] arbitration agreement[] effectively precludes [a consumer] from pursuing a class action does not alone render [the agreement] substantively unconscionable." *Hayes v. County Bank*, 811 N.Y.S.2d 741, 743 (App. Div.), *leave to appeal denied*, 857 N.E.2d 1137 (N.Y. 2006).

These recent decisions are no aberration. Twenty-seven years ago, the First Department rejected the contention that an arbitration provision in an agreement between a customer and a brokerage house is unenforceable simply because it precludes the customer from pursuing claims on behalf of a class. *Harris v. Shearson Hayden Stone, Inc.*, 441 N.Y.S.2d 70, 75 (App. Div. 1981). The court explained that New York law requires enforcement of an agreement to arbitrate notwithstanding the purported "significance of the availability of the class action device." *Id.* It further held that, "[e]ven were a balancing of interests permissible, it is clear * * * that the interests favoring arbitration should prevail over those favoring the class action." *Id.* The New York Court of Appeals subsequently affirmed this ruling "for the reasons stated in the [Appellate Division's] opinion." *Harris v. Shearson Hayden Stone, Inc.*, 435 N.E.2d 1097, 1097 (N.Y. 1982).

The Court of Appeals' summary affirmance in *Harris* establishes the law of New York on this issue. Certainly there is no reason to believe that the Court of Appeals has changed its mind, as in recent years it has denied leave to appeal in *Ranieri*, *Tsadilas*, and *Hayes*. While the

Court of Appeals' orders denying leave to appeal are not "authoritative precedent," other courts "are at liberty * * * to give to such a refusal some measure of significance, as a token, though indecisive, of the impressions of [the] court." *Marchant v. Mead-Morrison Mfg. Co.*, 169 N.E. 386, 391 (N.Y. 1929). And as the Second Circuit has held, New York's federal courts "are bound * * * to apply the law as interpreted by New York's intermediate appellate courts" in the absence of "persuasive evidence that the New York Court of Appeals * * * would reach a different conclusion." *Pahuta v. Massey-Ferguson, Inc.*, 170 F.3d 125, 134 (2d Cir. 1999); *accord Fid. Union Trust Co. v. Field*, 311 U.S. 169, 177–78 (1940). Given the unanimity of *Ranieri*, *Tsadilas*, *Brower*, *Hayes*, and *Harris*, New York law is clear: Agreements to arbitrate on an individual basis are not unconscionable. ATTM's arbitration provision thus is fully enforceable.[5]

## III. THE FAA WOULD PREEMPT ANY STATE-LAW RULE THAT WOULD CONDEMN ATTM'S ARBITRATION PROVISION AS UNCONSCIONABLE.

Even if the Court were to conclude that ATTM's arbitration provision is unconscionable under New York law merely because the provision requires individual arbitration, the FAA would preempt application of that law to invalidate ATTM's provision.

---

[5] A federal district court in California recently held that ATTM's arbitration provision is substantively unconscionable under New York law because it forbids class arbitration. *In re Apple & AT&TM Antitrust Litig.*, 2008 WL 4810067, at *5–*6 (N.D. Cal. Oct. 1, 2008). But that court simply assumed that New York law is similar to California law on the subject and did not consider the New York cases rejecting identical unconscionability arguments. *See* pages 6–7, *supra*. Indeed, other courts—including the Ninth Circuit, whose decisions are binding on district courts in that Circuit—have consistently recognized that arbitration agreements that include "class action waiver provision[s] * * * aren't substantively unconscionable under New York law." *Douglas v. U.S. Dist. Ct.*, 495 F.3d 1062, 1068 (9th Cir. 2007), *cert. denied sub nom. Talk Am., Inc. v. Douglas*, 128 S. Ct. 1472 (2008); *see also Bar-Ayal v. Time Warner Cable Inc.*, 2006 WL 2990032, at *16 (S.D.N.Y. Oct. 16, 2006) (holding that a class waiver is not unconscionable under New York law); *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1321 (S.D. Fla. 2005) (noting that New York and federal courts have consistently upheld arbitration agreements containing class waivers); *Ragan v. AT&T Corp.*, 824 N.E.2d 1183, 1193–94 (Ill. App. Ct. 2005) (stating that "the law of New York is clear": a "preclusion of class action relief is not unconscionable").

***First***, Section 2 of the FAA preempts even "general principle[s] of contract law, such as unconscionability" if "those general doctrines" are "employ[ed] * * * in ways that subject arbitration clauses to special scrutiny." *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 166–67 (5th Cir. 2004) (citing 9 U.S.C. § 2). "Special scrutiny" is precisely what would be needed to invalidate ATTM's arbitration provision. As noted above, a contract is not unconscionable under generally applicable New York law unless it "shock[s] the conscience." *La Salle*, 820 N.Y.S.2d at 146. ATTM's arbitration provision, which makes arbitration free and offers premiums of $5,000 and double attorneys' fees to encourage consumers to pursue individual claims, cannot be said to shock the conscience without severely distorting the ordinary meaning of that term. Indeed, to deem arbitration in its traditional, individual form to be unconscionable would be to "rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable." *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987). For precisely this reason, the Third Circuit recently held that the FAA preempted two Pennsylvania state-court decisions that had concluded that agreements to arbitrate individually were unconscionable. *See Gay v. CreditInform*, 511 F.3d 369, 395 (3d Cir. 2007).

***Second***, a state-law rule that conditions the enforceability of an arbitration agreement on the availability of class arbitration would violate the FAA because such a rule would frustrate the FAA's objective of promoting arbitration. *See Preston v. Ferrer*, 128 S. Ct. 978, 986 (2008). In *Preston*, the Supreme Court held that the FAA preempted a provision of California's Talent Agencies Act that required the Labor Commissioner to decide a dispute before it could be submitted to arbitration. *See id.* at 981, 984–85. The Court rejected the argument that the California law is "compatible with the FAA because [the California law] merely postpones arbitration until after the Labor Commissioner has exercised her primary jurisdiction." *Id*. at 985. It explained

that "[a] prime objective of an agreement to arbitrate is to achieve 'streamlined proceedings and expeditious results.'" *Id.* at 986 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 633 (1985)). "That objective would be frustrated," however, because even the mere act of "[r]equiring initial reference of the parties' dispute to the Labor Commissioner would, at the least, hinder speedy resolution of the controversy." *Id.* Here, there can be no doubt that engrafting class proceedings onto arbitration "would, at the least, hinder speedy resolution" (*id.*) of the dispute between Koschitzki and ATTM.

Moreover, a state-law requirement that class arbitration be made available would force companies to abandon arbitration altogether. Class arbitration eliminates the efficiencies of individual arbitration while multiplying its risks exponentially, without the safety valve of judicial review. *See, e.g., Hollern v. Wachovia Sec., Inc.*, 458 F.3d 1169, 1172 (10th Cir. 2006) ("the standard of review of arbitral awards is among the narrowest known to law") (internal quotation marks omitted). No business could afford to expose itself to the risk of an unreviewable—yet massive—class award. The inevitable consequence is that businesses will stop agreeing to arbitrate in their consumer contracts. Nothing could more clearly "frustrate[]" the "objective" of the FAA. *Preston*, 128 S. Ct. at 986; *see also Schultz v. AT&T Wireless Servs., Inc.*, 376 F. Supp. 2d 685, 691 (N.D. W. Va. 2005); *Blitz v. AT&T Wireless Servs., Inc.*, 2005 WL 6177327 (Mo. Cir. Ct. Nov. 28, 2005); *Pyburn v. Bill Heard Chevrolet*, 63 S.W.3d 351, 365 (Tenn. Ct. App. 2001).[6]

---

[6] The Ninth Circuit rejected a similar conflict preemption argument in *Shroyer v. New Cingular Wireless Services, Inc.*, 498 F.3d 976 (9th Cir. 2007). That decision conflicts with the Third Circuit's decision in *Gay* and has been abrogated by *Preston*'s holding that even a state-law rule that merely "hinder[s] speedy resolution of the controversy" in arbitration is preempted. *Preston*, 128 S. Ct. at 986. Moreover, *Shroyer* is erroneous. The Ninth Circuit held that the defendant in that case (a predecessor to ATTM) was required to prove affirmatively that businesses would abandon arbitration in order for conflict preemption to apply. *Shroyer*, 498 F.3d at 993. To the contrary, courts—out of necessity—consistently engage in a predictive exercise when determining whether a state law will operate to frustrate the purposes and goals of Congress. *See,*

**CONCLUSION**

The Court should grant ATTM's motion to compel arbitration and dismiss all claims against ATTM.

Dated: November 24, 2008               Respectfully submitted,

/s Steven D. Greenblatt_____
Steven D. Greenblatt (SG – 5105)
CROWELL & MORING LLP
153 East 53rd Street, 31st Floor
New York, NY 10022
(212) 895-4200

*Counsel for Defendant AT&T Mobility LLC*

*Of Counsel:*

Kathleen Taylor Sooy
Lynn E. Parseghian
CROWELL & MORING LLP
1001 Pennsylvania Ave., NW
Washington, DC 20004
(202) 624-2500

Evan M. Tager
Archis A. Parasharami
Kevin S. Ranlett
MAYER BROWN LLP
1909 K St., NW
Washington, DC 20006
(202) 263-3000

---

*e.g.*, *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 161 (1989) (finding conflict preemption where state law "***could*** pose a substantial threat to the patent system's ability to accomplish its mission of promoting progress in the useful arts," and refusing to dismiss the conflict as a "hypothetical * * * possibility") (emphasis added).  In any event, at least one major company—Comcast—has abandoned arbitration in its contracts with its California customers. *See* http://www.comcast.net/terms/subscriber/.

-11-