UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

AVI KOSCHITZKI, On Behalf of Himself and )
all Others Similarly Situated,                    )
                                                              )
                                  Plaintiff,           )        Civil Action No. 1:08-CV-04451-JBW-VVP
                                                              )
                        vs.                                )
                                                              )
APPLE INC. and AT&T MOBILITY LLC,     )        <u>CLASS ACTION</u>
                                                              )
                                  Defendants.       )
                                                              )
_____ )


**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTIONS TO DISMISS AND TO STRIKE**

Dockets.Justia.com

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ................................................................1

II.    STATEMENT OF FACTS ................................................................4

III.    DEFENDANTS' MOTIONS TO DISMISS MUST BE DENIED...................................6

     A.    The Motion to Dismiss Standard ................................................6

     B.    The Complaint Properly Alleges a General Business Law § 349 Claim................6

     C.    The Complaint Properly Alleges a Breach of Contract Claim ..............................9

     D.    The Complaint Properly Alleges Breach of Warranty Claims ..........................12

         1.    The Complaint Properly Alleges Claims for Breach of Express and Implied Warranties Against Both Defendants ...........................................13

             a.    Plaintiff's Claim for Breach of Express Warranty........................13

             b.    Plaintiff's Claims for Breach of Implied Warranty ......................16

                 (1)    Implied Warranty of Merchantability ................................16

                 (2)    Implied Warranty of Fitness ................................17

         2.    The Warranty Claims Are Not Otherwise Subject to Dismissal...............18

             a.    Apple Had Notice of the Defects Alleged in the Complaint ........19

             b.    Apple's Limited Warranty Cannot Restrict Plaintiff's Remedies or Require Dismissal of the Warranty Claims ..............22

         3.    AT&T's Purported Warranty Disclaimer Is Without Effect.....................23

         4.    Whether AT&T Provides a Service to Plaintiff is Irrelevant and, In any Event, the 3G Network is a Product Subject to Warranties ...............23

     E.    The Complaint Properly Alleges an Unjust Enrichment Claim............................24

     F.    The Complaint Properly Alleges a Restitution Claim ..........................................26

     G.    The Complaint Properly Alleges an Intentional Misrepresentation Claim...........27

     H.    The Complaint Properly Alleges a Negligent Misrepresentation Claim ..............29

|  |  | Page |
|---|---|---:|
| IV. | DEFENDANTS' MOTIONS TO STRIKE MUST BE DENIED | 31 |
| V. | CONCLUSION | 32 |

# TABLE OF AUTHORITIES

**CASES**                                                                    **Page**

*Aetna Cas. & Sur. Co. v. LFO Constr. Corp.*,
   615 N.Y.S.2d 389 (App. Div. 1st Dep't 1994) ............................................................. 25

*Alicea v. Circuit City Stores, Inc.*,
   No. 07 Civ. 6123 (DC), 2008 U.S. Dist. LEXIS 7336
   (S.D.N.Y. Jan. 22, 2008).............................................................................................. 31

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544, 127 S. Ct. 1955 (2007)............................................................................ 6

*Bell v. Manhattan Motorcars, Inc.*,
   No. 06 CV 4972 (GBD), 2008 U.S. Dist. LEXIS 58648
   (S.D.N.Y. Aug. 4, 2008) .................................................................................. 13, 15, 24

*Beneway v. Superwinch, Inc.*,
   216 F. Supp. 2d 24 (N.D.N.Y. 2002)............................................................................ 16

*Berkshire Fashions, Inc. v. F.W. Woolworth Co.*,
   682 N.Y.S.2d 172 (App. Div. 1st Dep't 1998) ........................................................ 29, 30

*Brady v. Lynes*,
   No. 05 Civ. 6540 (DAB), 2008 U.S. Dist. LEXIS 43512
   (S.D.N.Y. May 31, 2008) ............................................................................................. 13

*Breard v. Sachnoff & Weaver, Ltd.*,
   941 F.2d 142 (2d Cir. 1991) ........................................................................................ 27

*Carroll v. Kahn*,
   No. 03-CV-0656, 2003 U.S. Dist. LEXIS 17902
   (N.D.N.Y. Oct. 9, 2003)................................................................................................ 9

*Cayuga Harvester, Inc. v. Allis-Chalmers Corp.*,
   465 N.Y.S.2d 606 (App. Div. 4th Dep't 1983) ............................................................ 22

*Chatlos Sys. v National Cash Register Corp.*,
   635 F2d 1081 (3d Cir. 1980)) ...................................................................................... 22

*CBS, Inc. v. Ziff-Davis Publ'g Co.*,
   554 N.Y.S.2d 449 (N.Y. 1990) .................................................................................... 14

*Ceribelli v. Elghanayan*,
   990 F.2d 62 (2d Cir. 1993)........................................................................................... 28

*Chambers v. Time Warner, Inc.*,
  282 F.3d 147 (2d Cir. 2002)........................................................................ 10

*Chrysler Capital Corp. v. Hilltop Egg Farms Inc.*,
  514 N.Y.S.2d 1002 (App. Div. 3d Dep't 1987) ............................................ 9

*Confer Plastics, Inc. v. Hunkar Labs., Inc.*,
  964 F. Supp. 73 (W.D.N.Y. 1997).............................................................. 24

*Consolidated Data Terminals v. Applied Digital Data Sys.*,
  708 F.2d 385 (9th Cir. 1983) ..................................................................... 23

*Coolite Corp. v. American Cyanamid Co.*,
  384 N.Y.S.2d 808 (App. Div. 1st Dep't 1976) ............................................ 27

*Cornwall Bridge Pottery, Inc. v. Sheffield Pottery, Inc.*,
  No. 3:07cv1154 (WWE), 2008 U.S. Dist. LEXIS 26336
  (D. Conn. Apr. 2, 2008) ......................................................................... 30, 31

*Cox v. Microsoft Corp.*,
  778 N.Y.S.2d 147 (App. Div. 1st Dep't 2004) ......................................... 7, 26

*Creative Waste Mgmt. v. Capitol Envtl. Servs., Inc.*,
  429 F. Supp. 2d 582 (S.D.N.Y. 2006) ........................................................ 30

*Cruz v. McAneney*,
  816 N.Y.S.2d 486 (App. Div 2d Dep't 2006).............................................. 26

*DeAngelis v. Timberpeg East, Inc.*,
  858 N.Y.S.2d 410 (App. Div. 3d Dep't 2008)............................................ 6, 7

*Denny v. Ford Motor Co.*,
  639 N.Y.S.2d 250 (N.Y. 1995) ................................................................... 16

*Donald v. Shinn Fu Co. of Am.*,
  No. 99-CV-6397 (ARR), 2002 U.S. Dist. LEXIS 27967
  (E.D.N.Y. Sept. 4, 2002)............................................................................ 14

*Egan v. Marsh & McLennan Cos.*,
  No. 07 Civ 7134 (SAS), 2008 U.S. Dist. LEXIS 6647
  (S.D.N.Y. Jan. 30, 2008)............................................................................ 10

*Fagan v. AmerisourceBergen Corp.*,
  356 F. Supp. 2d 198 (E.D.N.Y. 2004) ........................................................ 13

*Fischer v. Mead Johnson Labs.*,
   341 N.Y.S.2d 257 (App. Div. 2d Dep't 1973) ................................................................. 19

*Fresh Direct, LLC v. Blue Martini Software, Inc.*,
   776 N.Y.S.2d 301 (App. Div. 2d Dep't 2004) ............................................. 20, 28, 29, 30

*Gale v. IBM*,
   781 N.Y.S.2d 45 (App. Div. 2d Dep't 2004) ...................................................... 7, 8, 15

*Golden Pac. Bancorp v. FDIC*,
   375 F.3d 196 (2d Cir. 2004), *cert. denied*, 546 U.S. 1012 (2005). .................................. 25

*Groome v. Matsushita Elec. Corp. of Am.*,
   No. 92 CV 3073 (NG), 2000 U.S. Dist. LEXIS 4082
   (E.D.N.Y. Mar. 30, 2000) ................................................................................ 16

*Gusmao v. GMT Group, Inc.*,
   No. 06 Civ. 5113 (GEL), 2008 U.S. Dist. LEXIS 58462
   (S.D.N.Y. Aug. 1, 2008) .................................................................................. 15

*Hole v. GMC*,
   442 N.Y.S.2d 638 (App. Div. 3d Dep't 1981) ................................................................. 21

*Howell v. Am. Airlines, Inc.*,
   No. 05-CV-3628 (SLT), 2006 U.S. Dist. LEXIS 89229
   (E.D.N.Y. Dec. 11, 2006) ................................................................................... 8

*Hubbard v. GMC*,
   No. 95 Civ. 4362 (AGS), 1996 U.S. Dist. LEXIS 6974
   (S.D.N.Y. May 22, 1996) .............................................................................. 19, 21

*Imperia v. Marvin Windows of N.Y., Inc.*,
   747 N.Y.S.2d 35 (App. Div. 2d Dep't 2002) ................................................................. 23

*In re Gartenberg*,
   636 F.2d 16 (2d Cir. 1980) ................................................................................. 26

*J&R Slaw, Inc. v. All Sys. Precast, Inc.*,
   No. 07-CV-5022 (ADS)(AKT), 2008 U.S. Dist. LEXIS 53747
   (E.D.N.Y. July 11, 2008) ................................................................................. 6, 9

*J.C. Constr. Mgmt. Corp. v. Nassau-Suffolk Lumber & Supply Corp.*,
   789 N.Y.S.2d 903 (App. Div. 2d Dep't 2005) ................................................................. 15

*Jernow v. Wendy's Int'l, Inc.*,
No. 07 Civ. 3971 (LTS)(THK), 2007 U.S. Dist. LEXIS 85104
(S.D.N.Y. Nov. 15, 2007) ........................................................................ 7, 8, 10

*Koenig Iron Works, Inc. v. Sterling Factories, Inc.*,
No. 89 Civ. 4257 (THK), 1999 U.S. Dist. LEXIS 3973
(S.D.N.Y. Mar. 30, 1999) ........................................................................ 19, 20

*Labajo v. Best Buy Stores, L.P.*,
478 F. Supp. 2d 523 (S.D.N.Y. 2007) .................................................. 10, 12, 22

*Leonard v. Tollycraft Corp.*,
No. 88 Civ. 5809 (VLB), 1989 U.S. Dist. LEXIS 12363
(S.D.N.Y. Oct. 19, 1989) ........................................................................ 21, 22

*Malul v. Capital Cabinets, Inc.*,
740 N.Y.S.2d 828 (N.Y. Civ. Ct. 2002) ........................................................ 17

*Mastrangelo v. Howmedica*,
903 F. Supp. 439 (E.D.N.Y. 1995) ........................................................ 17, 18

*Merrill Lynch & Co. v. Allegheny Energy, Inc.*,
500 F.3d 171 (2d Cir. 2007) .................................................................. 14, 15

*Miele v. Am. Tobacco Co.*,
770 N.Y.S.2d 386 (App. Div. 2d Dep't 2003) .............................................. 28

*Milau Assocs., Inc. v. North Ave. Dev. Corp.*,
398 N.Y.S.2d 882 (N.Y. 1977) .................................................................... 24

*Mittasch v. Seal Lock Burial Vault, Inc.*,
344 N.Y.S.2d 101 (App. Div. 2d Dep't 1973) .............................................. 17

*Morales v. Executive Telecard, Ltd.*,
No. 95 Civ. 10202 (KMW), 1998 U.S. Dist. LEXIS 17726
(S.D.N.Y. Nov. 10, 1998) .......................................................................... 26

*Muehlbauer v. GMC*,
431 F. Supp. 2d 847 (N.D. Ill. 2006) .......................................................... 19

*Muller-Paisner v. TIAA*, No. 06-4307-cv, 2008 U.S. App. LEXIS 17527
(2d Cir. Aug. 15, 2008) .............................................................................. 4

*Mullins v. Wyatt*,
887 S.W.2d 356 (Ky. 1994) ........................................................................ 19

*Murrin v. Ford Motor Co.*,
    756 N.Y.S.2d 596, 597 (App. Div. 2d Dep't 2003) .................................................. 13, 15

*Nasaba Corp. v Harfred Realty Corp.*,
    287 N.Y. 290 (1942) ........................................................................................... 28

*Neri v. R.J. Reynolds Tobacco Co.*,
    No. 98-CV-371 (FJS/GJD), 2000 U.S. Dist. LEXIS 22223
    (N.D.N.Y. Sept. 28, 2000) .................................................................................. 19

*New York v. Coastal Oil N.Y., Inc.*,
    No. 96 Civ. 8667 (RPP), 1998 U.S. Dist. LEXIS 2049
    (S.D.N.Y. Feb. 25, 1998) ................................................................................... 25

*Newbro v. Freed*,
    No. 06-1722-cv, 2007 U.S. App. LEXIS 4769 (2d Cir. Feb. 27, 2007) .................... 25, 26

*Newbro v. Freed*,
    409 F. Supp. 2d 386 (S.D.N.Y. 2006) ............................................................... 25

*Newbro v. Freed*,
    No. 03 Civ. 10308 (PKC), 2004 U.S. Dist. LEXIS 5358
    (S.D.N.Y. Mar. 31, 2004) ................................................................................... 28

*Newman & Schwartz v. Asplundh Tree Expert Co.*,
    102 F.3d 660 (2d Cir. 1996) ............................................................................... 24

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*,
    623 N.Y.S.2d 529 (N.Y. 1995) ............................................................................ 6

*Pronti v. DML of Elmira, Inc.*,
    478 N.Y.S.2d 156 (App. Div. 3d Dep't 1984) ..................................................... 21

*R. Freedman & Son, Inc. v. A.I. Credit Corp.*,
    641 N.Y.S.2d 429 (App. Div. 3d Dep't 1996)...................................................... 27

*R.D. Weis & Co. v. Children's Place Retail Stores, Inc.*,
    No. 08 Civ. 4245 (WCC), 2008 U.S. Dist. LEXIS 94542
    (S.D.N.Y. Nov. 19, 2008) ................................................................................... 24

*Randy Knitwear, Inc. v. American Cyanamid Co.*,
    226 N.Y.S.2d 363 (N.Y. 1962) ........................................................................... 13

*Rogath v. Siebenmann*,
    129 F.3d 261 (2d Cir. 1997).............................................................................. 14

*Sahu v. Union Carbide Corp.*,
548 F.3d 59 (2d Cir. 2008) ............................................................. 4

*Saratoga Spa & Bath, Inc. v. Beeche Sys. Corp.*,
656 N.Y.S.2d 787 (App. Div. 3d Dep't 1997) ................................ 18

*Schneidman v Whitaker Co.*,
758 N.Y.S.2d 142 (App. Div. 2d Dep't 2003) ............................... 15

*Schulman Inv. Co. v. Olin Corp.*,
477 F. Supp. 623 (S.D.N.Y. 1979) ................................................ 24

*Simmons v. Washing Equip. Techs.*,
857 N.Y.S.2d 412 (App. Div. 4th Dep't. 2008) ........................... 13, 16, 17, 18

*Simonds v. Simonds*,
408 N.Y.S.2d 359 (1978) .............................................................. 25

*Singh v. Queens Ledger Newspaper Group*,
770 N.Y.S.2d 99 (App. Div. 2d Dep't 2003) .................................. 7

*Starr v. Georgeson S'holder, Inc.*,
412 F.3d 103 (2d Cir. 2005) ........................................................... 6

*State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C.*,
375 F. Supp. 2d 141 (E.D.N.Y. 2005) .......................................... 27

*Stevenson Equip., Inc. v. Chemig Constr. Corp.*,
565 N.Y.S.2d 318 (App. Div. 3d Dep't 1991),
*aff'd*, 584 N.Y.S.2d 434 (N.Y. 1992) ......................................... 28

*Stewart v. Jackson & Nash*,
976 F.2d 86 (2d Cir. 1992) ........................................................... 27

*Strishak & Assocs. v. Hewlett Packard Co.*,
752 N.Y.S.2d 400 (App. Div. 2d Dep't 2002) ............................... 15

*Strzakowlski v. GMC*,
No. 04-4740, 2005 U.S. Dist. LEXIS 18111 (D.N.J. Aug. 16, 2005) ............ 19

*Stutman v. Chemical Bank*,
709 N.Y.S.2d 892 (N.Y. 2000) .................................................... 6, 7

*Swierkiewicz v. Sorema N.A.*,
534 U.S. 506 (2002) ....................................................................... 6

*Trujillo v. Apple Computer, Inc.*,
    578 F. Supp. 2d 979 (N.D. Ill. 2008) ............................................................ 11

*United States Leasing Corp. v. Comerald Assocs., Inc.*,
    421 N.Y.S.2d 1003 (N.Y. Civ. Ct. 1979).................................................. 17, 18

*Verizon Directories Corp. v. Yellow Book USA, Inc.*,
    309 F. Supp. 2d 401 (E.D.N.Y. 2004) ......................................................... 6, 8

*Villette v. Sheldorado Alum. Prods., Inc.*,
    No. 521/01, 2001 N.Y. Misc. LEXIS 509 (N.Y. Civ. Ct. June 11, 2001) ........................ 17

*Walker Mfg. Co. v. M & A Auto Warehouse Distributors, Inc.*,
    No. 78 Civ. 2285 (WCC), 1979 U.S. Dist. LEXIS 12457
    (S.D.N.Y. May 11, 1979)................................................................... 20

## STATUTES, RULES AND REGULATIONS

Fed. R. Civ. P. 8 ............................................................................. 24

N.Y. Gen. Bus. Law § 349......................................................... *passim*

N.Y. Gen. Bus. Law § 350.......................................................... 15

N.Y. U.C.C. § 1-201 ............................................................... 19

N.Y. U.C.C. § 2-313 ............................................................... 14

N.Y. U.C.C. § 2-314 ............................................................... 16

N.Y. U.C.C. § 2-315 ........................................................... 16, 17

## SECONDARY SOURCES

60 N.Y. Jur. 2d, Fraud and Deceit, § 206 (1987)........................................ 28

Plaintiff Avi Koschitzki ("Plaintiff") respectfully submits this Memorandum of Law in opposition to the motions of defendants Apple Inc. ("Apple") and AT&T Mobility LLC ("AT&T") (collectively, the "Defendants") to dismiss the Amended Class Action Complaint (the "Complaint") and to strike the Complaint's prayer for minimum and punitive damages under the New York General Business Law.[1]

## I.    PRELIMINARY STATEMENT

This putative class action on behalf of New York consumers arises out of Defendants' marketing and sale of Apple's "third-generation" (or "3G") iPhone mobile telephone (the "iPhone"), in which Defendants concealed significant problems associated with the iPhone's 3G reception and build quality and induced Plaintiff and thousands of others, who were unaware of the nature or extent of these problems, to purchase the iPhone and an AT&T network plan.  Plaintiff alleges that, contrary to Defendants' public marketing campaigns, the iPhone does not consistently maintain 3G reception or perform at 3G speeds.  Plaintiff also alleges that AT&T's wireless 3G network – the *only* network available for the iPhone, exclusively offered by AT&T – cannot accommodate regular usage at 3G speeds over extended periods of time, but instead frequently shifts users to AT&T's slower, second-generation (or "2G") EDGE network.   In addition, Plaintiff alleges that Apple defectively designed and manufactured the iPhone, which causes hairline cracks in its outer casing.  Plaintiff alleges a claim under Section 349 of the New York General Business Law (the "General Business Law" or "GBL"), as well as claims for breach of contract, breach of express and implied warranties, intentional and negligent misrepresentation, unjust enrichment and restitution.

---

[1] Citations to "Apple Br." and "AT&T Br." are to Defendants' Memoranda of Law in support of their respective motions to dismiss the Complaint.

Defendants' dismissal motions are largely predicated on their own self-serving statements of facts. Their factual allegations, however, are inappropriate for consideration (or determination) at this preliminary stage because Plaintiff has not yet had the opportunity to develop an adequate factual record. As Defendants well know, the Court must accept as true the allegations of the Complaint and afford *Plaintiff* the benefit of every favorable inference therefrom. Ignoring Defendants' efforts to engage in factual disputation and applying this standard to their motions results in only one conclusion: each of Plaintiff's claims is sufficient to withstand dismissal.[2]

First, Plaintiff has sufficiently alleged a General Business Law § 349 claim. Specifically, Plaintiff alleges that Defendants misleadingly marketed the iPhone when they represented that, *inter alia*, the product would consistently work at 3G speeds and function "twice as fast" as its 2G counterpart. Defendants also made positive statements concerning the quality of the iPhone's design and manufacture. Plaintiff alleges that these representations induced him and other consumers to purchase the iPhone, which did not function as Defendants had represented.

Second, Plaintiff has sufficiently pled his claims for breach of contract and breach of warranty. Although Plaintiff disputes the terms and application of the unsigned documents that Defendants contend control here, Plaintiff alleges that Defendants breached the terms of separate executory contracts pursuant to which he purchased the iPhone and an AT&T network plan because the iPhone failed to function on the 3G network as Defendants had represented or as it should.

---

[2] As discussed below, prior to Plaintiff's commencement of this action, Apple was named as a defendant in *Smith v. Apple, Inc.*, Case No. CV-08-AR-1498-S (N.D. Ala.), a putative class action lawsuit pending in the Northern District of Alabama which concerns similar defects and claims relating to the iPhone. The court in that case recently denied, in part, Apple's motion to dismiss. *See* Declaration of Jamie A. Levitt, dated November 24, 2008, submitted in support of Apple's motion to dismiss (the "Levitt Decl.," filed as Docket Entry #13), at Exhibit B (attaching a copy of the Memorandum Opinion in *Smith*, dated November 4, 2008 ("*Smith* Mem. Op.")).

Moreover, Defendants breached express and implied warranties as a result of their misleading representations concerning the quality of the iPhone's design and manufacture and the reliability, efficiency and speed of its use on AT&T's 3G network, and, as the respective providers of the iPhone and the 3G network, they possessed specialized knowledge concerning the use of each product. Additionally, Plaintiff gave notice of the problems alleged in the Complaint to Defendants, who failed to resolve them. These allegations provide a sufficient factual basis for Plaintiff's contract-based claims.

Third, Plaintiff has adequately alleged claims for unjust enrichment and restitution because he alleges that Defendants unjustly enriched themselves when they induced consumers to purchase the defective iPhone based on the misrepresentations described herein. Moreover, as explained below, the claims are properly alleged together because Plaintiff's unjust enrichment claim seeks recovery in equity, while his restitution claim seeks recovery at law. Finally, because the terms and scope of the contractual relationship between the parties is in dispute, Plaintiff's claims for unjust enrichment and restitution (like certain of his other claims) are properly pleaded in the alternative.

Fourth, Plaintiff has properly alleged claims for intentional and negligent misrepresentation. Here, the Complaint alleges facts that give rise to an inference that Defendants made the misleading statements and omissions at issue either negligently *or* intentionally, because Defendants knew or should have known the scope and extent of the problems associated with the iPhone and its performance on the 3G network. Moreover, consumers relied upon Defendants' representations to their detriment when they were induced to purchase the iPhone and a network plan – products whose functions were impaired. Further, the Complaint alleges a sufficient factual basis to support the negligent misrepresentation claim because it alleges that Defendants were in privity of contract with

Plaintiff, had specialized knowledge concerning each product, and issued affirmative statements (and made omissions) concerning the quality and utility of the iPhone without a reasonable basis to do so.

Finally, Defendants' limited motions to strike the Complaint's purported prayer for minimum and punitive damages under the General Business Law must be denied as premature because the issue of whether Plaintiff may maintain a class action, and thus assert claims on behalf of a class of New York consumers, is not before the Court. Defendants may, of course, renew their motions at the appropriate time, but a determination of whether Plaintiff may maintain a claim for minimum or punitive damages on a class basis at this juncture is simply unnecessary.

## II.   STATEMENT OF FACTS[3]

Defendant Apple designed and manufactures the iPhone, which it sells in a variety of ways, including through its website, Apple-branded retail stores and authorized resellers, such as AT&T. ¶8. Defendant AT&T is the exclusive wireless network provider for the iPhone. *See* ¶¶5, 9; *see also* Russello Aff., Exhibit A at 2 (attaching AT&T webpage which notes, in the second footnote, that the iPhone "is configured to work only with the wireless services provided by AT&T," visited on January 7, 2009, located at http://www.wireless.att.com/cell-phone-service/specials/iPhone.jsp).

Defendants cross-marketed each other's products in a widespread public marketing campaign that described the iPhone as being "twice as fast" and "half the cost" of a 2G predecessor product.

---

[3] The facts relied upon in this Memorandum of Law are drawn from the Complaint, cited as "¶__," a copy of which is annexed as Exhibit C to the Levitt Decl.; the Affidavit of Plaintiff Avi Koschitzki, sworn to on January 4, 2009, cited as "Koschitzki Aff., ¶__"; and the Affidavit of Joseph Russello, Esq., sworn to January 7, 2009, cited as "Russello Aff., ¶__." In addition, the Court may take judicial notice of the web pages referenced herein, copies of which are attached to the Russello Aff. *See Muller-Paisner v. TIAA*, No. 06-4307-cv, 2008 U.S. App. LEXIS 17527, at *14 n.5 (2d Cir. Aug. 15, 2008). To the extent that the Court is inclined to decide the pending motions based on Defendants' factual submissions, Plaintiff respectfully requests that the Court convert the motions into ones for summary judgment and, prior to determining them, provide Plaintiff with a reasonable opportunity to conduct discovery. *See Sahu v. Union Carbide Corp.*, 548 F.3d 59 (2d Cir. 2008).

¶15. In fact, Apple's website boasts that "email attachments and web-pages load twice as fast" on AT&T's 3G network as compared to its slower 2G EDGE network. *Id.*; *see also* Russello Aff., Exhibit B (attaching copy of Apple's webpage, visited on January 7, 2009, located at http://www.apple.com/iphone/features/wireless.html). AT&T's website also extols the virtues of the iPhone and the 3G network, characterizing the iPhone as a "revolutionary mobile phone." *See* Russello Aff., Ex. A at 1.

In the summer of 2008, Plaintiff purchased his iPhone from an Apple retail store located in Garden City, New York, at which time an Apple employee took the steps to activate it. ¶31; *see also* Koschitzki Aff., ¶2. Like other consumers, Plaintiff began experiencing reception issues soon after he purchased the iPhone, including dropped calls and an inability to receive a 3G signal during ordinary use. *See* Koschitzki Aff., ¶¶4-5. In fact, Plaintiff and other iPhone users are frequently bumped from the 3G network to the 2G EDGE network despite attempting to use the iPhone in geographical areas that are purportedly rich with 3G coverage. ¶19.

To address these widespread problems, Apple developed and issued several software patches that Plaintiff and other consumers installed. ¶33. The problems, however, persisted. *Id.*; *see* Koschitzki Aff., ¶5. As a result, Plaintiff separately complained on various occasions to Apple and AT&T about reception and other quality issues associated with the iPhone. *See* Koschitzki Aff., ¶¶4-5. Neither Apple nor AT&T took any steps to correct or otherwise address these issues, nor did either of them direct Plaintiff to raise his complaints in any other manner or through any other channels. *See id.* at ¶6.

## III. DEFENDANTS' MOTIONS TO DISMISS MUST BE DENIED

### A. The Motion to Dismiss Standard

To survive a motion to dismiss, "the plaintiff need only provide a 'short and plain statement' that 'give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *J&R Slaw, Inc. v. All Sys. Precast, Inc.*, No. 07-CV-5022 (ADS)(AKT), 2008 U.S. Dist. LEXIS 53747, at \*4 (E.D.N.Y. July 11, 2008) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512-513 (2002)). Moreover, "the Court must 'accept all of the plaintiff's factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff.'" *J&R*, 2008 U.S. Dist. LEXIS 53747, at \*5 (quoting *Starr v. Georgeson S'holder, Inc.*, 412 F.3d 103, 109 (2d Cir. 2005)). Accordingly, "when a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1969 n.8 (2007).

### B. The Complaint Properly Alleges a General Business Law § 349 Claim

To state a claim under General Business Law § 349, a plaintiff must only "allege that defendants engaged in consumer-oriented acts or practices that are 'deceptive or misleading in a material way'" and that he was injured as a result of such conduct. *DeAngelis v. Timberpeg East, Inc.*, 858 N.Y.S.2d 410, 414 (App. Div. 3d Dep't 2008) (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 623 N.Y.S.2d 529, 532 (N.Y. 1995)); *accord Verizon Directories Corp. v. Yellow Book USA, Inc.*, 309 F. Supp. 2d 401, 405 (E.D.N.Y. 2004) (citing, *inter alia*, *Stutman v. Chemical Bank*, 709 N.Y.S.2d 892, 895 (N.Y. 2000)). Consequently, as the New York Court of Appeals has "repeatedly stated" (and Apple concedes), "reliance is not an element of a section 349 claim." *Stutman*, 709 N.Y.S.2d at 896; *see also* Apple Br. at 16. Rather, a plaintiff

must only allege that the defendant's deceptive act caused his injury. *See, e.g.*, *Stutman*, 709 N.Y.S.2d at 896; *see also* Apple Br. at 17.

Here, the Complaint alleges that Defendants disseminated materially incomplete and misleading information to the public about the iPhone to induce consumers to purchase it and a 3G network plan. The Complaint also alleges that Plaintiff and other consumers purchased the iPhone as a result of such misrepresentations and omissions. These allegations are more than sufficient to state a claim under General Business Law § 349. *See, e.g.*, *Jernow v. Wendy's Int'l, Inc.*, No. 07 Civ. 3971 (LTS)(THK), 2007 U.S. Dist. LEXIS 85104, at *7 (S.D.N.Y. Nov. 15, 2007) (sustaining claim where the "[p]laintiff allege[d] that [d]efendant misled consumers as to the quantity of trans fats in its fried food products when it engaged in a national campaign . . . but [allegedly] provided customers with fried food products containing higher quantities of trans fats."); *DeAngelis*, 858 N.Y.S.2d at 414 (sustaining claim where the defendants allegedly advertised themselves as competent to construct a home but were not so qualified, did not work together in the manner in which they represented, and failed to provide the plaintiff with a home of the quality they advertised); *Cox v. Microsoft Corp.*, 778 N.Y.S.2d 147, 148 (App. Div. 1st Dep't 2004) (sustaining claim where a defendant allegedly "engaged in purposeful, deceptive monopolistic business practices" that, *inter alia*, "resulted in artificially inflated prices for [its] products"); *Singh v. Queens Ledger Newspaper Group*, 770 N.Y.S.2d 99, 101 (App. Div. 2d Dep't 2003) (sustaining claim where a plaintiff allegedly purchased a suit whose tag displayed the incorrect fiber content).

Contrary to Defendants' contentions, the Complaint alleges that Plaintiff relied upon, *and thus saw*, Defendants' representations prior to purchasing the iPhone – as did thousands of other consumers that Plaintiff seeks to represent in this action. *See, e.g.*, ¶¶6-7; *see also* ¶¶14-17 (describing Defendants' widespread marketing efforts). These facts set this case apart from *Gale v.*

*IBM*, 781 N.Y.S.2d 45 (App. Div. 2d Dep't 2004), the decision upon which Apple chiefly relies in seeking dismissal of this claim. *See* Apple Br. at 17 (discussing the decision). In *Gale*, the court dismissed a General Business Law § 349 claim where the plaintiff failed to allege that he had seen the allegedly deceptive statements "before he purchased or came into possession of his hard drive," which broke the chain of causation between the alleged deceptive conduct and his claimed injury. *See* 781 N.Y.S.2d at 47. The situation in *Gale* stands in stark contrast to the situation here because, as noted above, the Complaint alleges that Defendants' representations induced Plaintiff and other consumers to purchase the iPhone and Defendants inundated the public with advertising falsely extolling the capabilities of the iPhone and AT&T's 3G network. *See* ¶¶14-20.

Defendants' attack on the specificity and nature of the statements alleged is also groundless. As even they admit, the Complaint alleges that Defendants made specific statements concerning the attributes of the iPhone and its functionality on the 3G network. For Defendants to demand even more detail contravenes the objective of notice pleading, which merely requires the Complaint to provide them with enough detail to ascertain the nature and bases of the claim alleged against them. *See Jernow*, 2007 U.S. Dist. LEXIS 85104, at *7 (noting, in the context of a N.Y. GBL § 349 claim, that "Federal Rule of Civil Procedure 8(a) requires only a short and plain statement of the claim showing that the pleader is entitled to relief," and sustaining the claim) (citation omitted). Moreover, Defendants' characterization of the statements at issue as "puffery" ignores the context in which they were made and any dismissal on that basis would prematurely require the Court to make a factual determination without an evidentiary basis upon which to do so. *See Verizon*, 309 F. Supp. 2d at 408 (sustaining N.Y. GBL § 349 claim because whether statements were puffery posed factual issue).

## C.    The Complaint Properly Alleges a Breach of Contract Claim

Contrary to Defendants' contentions, a breach of contract claim is not subject to dismissal merely because a copy of the contract is not attached to the complaint or the plaintiff does not "quote the contractual provisions verbatim." *See Howell v. Am. Airlines, Inc.*, No. 05-CV-3628 (SLT), 2006 U.S. Dist. LEXIS 89229, at *10 (E.D.N.Y. Dec. 11, 2006) (cited by AT&T); *see also J&R*, 2008 U.S. Dist. LEXIS 53747, at *9 (sustaining a contract claim where "the complaint d[id] not explicitly spell out all of the purported contract terms and no written contract [wa]s appended to the complaint").[4]  In fact, a plaintiff need not even identify each of the contract's material terms.  *See J&R*, 2008 U.S. Dist. LEXIS 53747, at *9 (citing, *inter alia*, *Carroll v. Kahn*, No. 03-CV-0656, 2003 U.S. Dist. LEXIS 17902, at *13 (N.D.N.Y. Oct. 9, 2003)).

Rather, in accordance with the liberal pleading standard embodied in Rule 8(a) of the Federal Rules of Civil Procedure, a plaintiff must only allege the existence of a contractual arrangement in a manner sufficient to provide defendants with notice of the nature of the claim and the grounds upon which it is based.  *See, e.g., J&R*, 2008 U.S. Dist. LEXIS 53747, at *9 (sustaining a claim where "the plaintiff assert[ed] the existence of an executory contract whereby each party agreed to certain performance in connection with the erection of precast concrete"); *see also Carroll*, 2003 U.S. Dist. LEXIS 17902, at *13 (sustaining a claim where the allegations "g[ave] Defendants fair notice of the claims and the grounds upon which they rest.").

---

[4] *Chrysler Capital Corp. v. Hilltop Egg Farms Inc*., 514 N.Y.S.2d 1002 (App. Div. 3d Dep't 1987), a case upon which Apple relies, is not contrary.  In that case, the plaintiff sought to recover rental and late charges "due under an equipment lease agreement," but did not supply or reference the operative payment schedule upon which the charges were based.  *Id*. at 1003-1004.  Thus, the plaintiff failed to provide the defendants with notice of the actual payments it had alleged were due.

However, because "'[c]onsideration of extraneous material in judging the sufficiency of a complaint is at odds with the liberal pleading standard . . . and 'risks depriving the parties of a fair adjudication of the claims by examining an incomplete record,'" a court will generally only "consider documents appended to a defendant's motion to dismiss . . . when the document is *undisputedly authentic* and when it is central to plaintiff's claims." *Egan v. Marsh & McLennan Cos.*, No. 07 Civ. 7134 (SAS), 2008 U.S. Dist. LEXIS 6647, at *19 (S.D.N.Y. Jan. 30, 2008) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 154-155 (2d Cir. 2002) (emphasis added)). Moreover, "[c]ourts have declined to consider unsigned documents in ruling on motions to dismiss." *Chambers*, 282 F.3d at 154 n.5.

Here, Plaintiff has alleged the existence of a contractual relationship with Apple and AT&T arising out of his purchase of the iPhone and an AT&T network plan, a fact that the Court must accept as true for the purposes of these motions. *See* ¶¶5, 31 (alleging that Plaintiff purchased an iPhone and network plan); *see also Labajo v. Best Buy Stores, L.P.*, 478 F. Supp. 2d 523, 529 (S.D.N.Y. 2007) (sustaining breach of contract claim where the plaintiff "allege[d] the existence of a contract whereby defendants agreed to provide certain merchandise or services to [her] in exchange for payment."); *Jernow*, 2007 U.S. Dist. LEXIS 85104, at *11 (sustaining breach of contract claim where a plaintiff alleged that he and a fast food restaurant "entered into a contract when he paid for the fried food products" that he had purchased).

Moreover, Defendants actually *concede* that contractual relationships exist between themselves and Plaintiff:  (i) AT&T claims that a written agreement exists to provide wireless service to Plaintiff, but submits an *unsigned* copy whose authenticity and terms Plaintiff disputes at this juncture; and (ii) Apple purports to deny the existence of a contract, but *admits* that Plaintiff purchased an iPhone from an Apple retail store and instead places reliance on an alleged written

warranty.[5]  Having admitted that a contractual relationship exists, and having asserted *numerous* purported grounds for dismissal of Plaintiff's contract claim in their motions, Defendants cannot complain that Plaintiff has failed to provide the minimal notice required under the liberal pleading standard applicable to this claim.

Moreover, because Plaintiff does *not* agree that AT&T has supplied a correct copy of his contract, AT&T cannot obtain dismissal of this claim on the basis of a provision in that document which suggests that service interruptions may occur on a temporary basis.  Indeed, absent from AT&T's submission, either in connection with its dismissal motion or its motion to compel arbitration, is a copy of the actual agreement that Plaintiff *executed*.[6]  In fact, although both Apple and AT&T employees claim in their unsworn Declarations to have reviewed certain records relating to Plaintiff's iPhone purchase, *no such records are attached*.  *See* Terry Decl., ¶7; Mahone-Gonzalez Decl., ¶5.  Instead, AT&T relies upon documents that *could have* represented information shown to Plaintiff at the time he purchased his iPhone (*see* Terry Decl., ¶¶2, 4-5) – an approach that a federal court recently rejected in a scathing decision denying AT&T's motion to compel arbitration there.  *See Trujillo v. Apple Computer, Inc.*, 578 F. Supp. 2d 979, 987-989 (N.D. Ill. 2008) (concluding that a plaintiff did not have access to AT&T's terms of service where AT&T failed to provide adequate

---

[5] In support of its separate motion to compel arbitration, AT&T has submitted unsworn Declarations from TJ Terry, a Senior Manager of Store Operations for *Apple*, and Caroline Mahone-Gonzalez, an AT&T Area Manager, in which they admit that Plaintiff purchased his iPhone from an Apple retail store.  *See* Declaration of TJ Terry, dated November 24, 2008 (the "Terry Decl.," filed as Docket Entry #19), ¶7; Declaration of Caroline Mahone-Gonzalez, dated November 20, 2008 ("Mahone-Gonzalez Decl.," filed as Docket Entry #20), ¶5.  Thus, Defendants admit that Apple sold Plaintiff his iPhone, and the Court should ignore Apple's contrary claim in its brief.  *See* Apple Br. at 21.

[6] While AT&T may contend that no such agreement exists because Apple electronically processes iPhone purchases, the Court cannot determine this issue without a developed factual record.

proof but instead submitted the ostensibly false and misleading affidavit of counsel). These submissions are insufficient to establish the terms of Plaintiff's contract with AT&T at this juncture.

Indeed, in a similar case, a court held that this sort of "proof" – *i.e.*, an unsigned document and other submissions – was insufficient to establish a contract's terms at the motion to dismiss stage, where, as here, the defendants claimed that the plaintiff had "signed the electronic signature pad containing the terms of the agreement." *See Labajo*, 478 F. Supp. 2d at 530. There, the court reasoned that "defendants would have to go outside the pleadings (and documents annexed thereto), as they would have to provide some testimony or other evidence to show that [the plaintiff] actually signed a signature pad that contained the disclosure," which "would run afoul of the prohibition on considering matters outside the pleadings." *Id*. This reasoning is equally applicable here, and precludes a finding at this stage that AT&T has submitted the operative agreement.

Nevertheless, even if AT&T has identified the correct contract, a question of fact exists as to whether the term upon which AT&T relies would sufficiently apprise Plaintiff and other consumers of the nature and extent of the network deficiencies alleged in the Complaint to preclude this claim. *See* AT&T Br. at 5. Moreover, AT&T's argument would necessarily require the Court to conclude that the network issues alleged in the Complaint do not exceed the circumstances set forth in the term upon which it relies – a *favorable inference* to which AT&T is not entitled on its motion, and one that is as yet unsupported by any established facts.

### D. The Complaint Properly Alleges Breach of Warranty Claims

Plaintiff has properly alleged claims for breach of express and implied warranties under the liberal pleading requirements applicable to them. Moreover, Defendants' alleged defenses are without merit, particularly at this early stage of the proceedings when discovery has not taken place.

1.  **The Complaint Properly Alleges Claims for Breach of Express and Implied Warranties Against Both Defendants**

    a.  **Plaintiff's Claim for Breach of Express Warranty**

As the Complaint alleges, Defendants engaged in a widespread advertising campaign in which they made specific factual representations concerning the quality of the iPhone's design and manufacture and the reliability, efficiency and speed of its use on AT&T's 3G network. *See* ¶¶14-20. Moreover, Apple marketed and sold the iPhone through its retail stores and various authorized resellers, including AT&T, and Defendants cross-marketed the iPhone and the 3G network – the only available network for the iPhone, exclusively offered by AT&T. Thus, Defendants made express warranties concerning the iPhone and its use on the 3G network within the purview of the New York Uniform Commercial Code.[7] *See, e.g., Bell v. Manhattan Motorcars, Inc*., No. 06 CV 4972 (GBD), 2008 U.S. Dist. LEXIS 58648, at *10-11 (S.D.N.Y. Aug. 4, 2008) (holding that "[a]ny affirmation of fact or promise which relates to the goods, or any description of the goods at issue, which is made part of the basis of the bargain creates an express warranty [under the U.C.C.] that the goods shall conform to the affirmation, promise or description."); *Simmons v. Washing Equip. Techs*., 857 N.Y.S.2d 412, 413-414 (App. Div. 4th Dep't. 2008) (express warranties made in

---

[7] Defendants do not dispute that representations made in advertisements and marketing materials may create express warranties, such as those alleged here. *See, e.g., Randy Knitwear, Inc. v. American Cyanamid Co*., 226 N.Y.S.2d 363, 365-366 (N.Y. 1962) (express warranty claim arising from advertising and marketing); *see also Murrin v. Ford Motor Co*., 756 N.Y.S.2d 596, 597 (App. Div. 2d Dep't 2003) ("an express warranty may be formed by advertisements"). As such, Apple's call for even more detail concerning its *own* representations concerning the quality of the iPhone is groundless, and, in any event, must await discovery. *See* Apple Br. at 9 n.4 (claiming that the statements alleged about the hairline cracks "are too vague," yet purporting to assert a defense anyway). Moreover, Apple's cited authorities are distinguishable, as the plaintiffs in those cases failed to allege the existence of any statements that could constitute an express warranty. *See, e.g., Brady v. Lynes*, No. 05 Civ. 6540 (DAB), 2008 U.S. Dist. LEXIS 43512, at *36 (S.D.N.Y. May 31, 2008); *Fagan v. AmerisourceBergen Corp*., 356 F. Supp. 2d 198, 216 (E.D.N.Y. 2004).

advertising brochure); *see also* N.Y. U.C.C. § 2-313(2) (providing that "[i]t is not necessary to the creation of an express warranty that the seller use formal words such as 'warrant' or 'guarantee' or that he have a specific intention to make a warranty . . . .").

As Plaintiff and thousands of other consumers discovered, however, the iPhone's quality and functionality did not live up to Defendants' representations. Specifically, the iPhone had only intermittent functionality on AT&T's 3G network, forcing consumers to primarily utilize AT&T's slower and less advanced 2G EDGE network – a network that consumers did not expect to use on a regular or extended basis. The quality of the iPhone was also substandard, with the product's hard plastic outer casing developing hairline cracks as a result of apparent design or manufacturing defects. These physical and functional defects stand in stark contrast to the glowing factual statements that Defendants disseminated to the public about the quality and functionality of the iPhone in their marketing campaigns. Accordingly, the Complaint properly alleges a breach of warranty claim against the Defendants, each of whom marketed and sold the iPhone.

Contrary to Apple's contentions, Plaintiff is not required to demonstrate actual reliance for his express warranty claims to survive. Rather, New York law "'requir[es] no more than reliance on the express warranty as being a part of the bargain between the parties.'" *Rogath v. Siebenmann*, 129 F.3d 261, 264 (2d Cir. 1997) (quoting *CBS, Inc. v. Ziff-Davis Publ'g Co.*, 554 N.Y.S.2d 449, 452-453 (N.Y. 1990)); *see also Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500 F.3d 171, 186 (2d Cir. 2007) ("The plaintiff must show that it believed that it was purchasing [the] seller's promise regarding the truth of the warranted facts."). "So long as . . . the express warranty was part of the bargained-for agreement, plaintiff can succeed on an express warranty claim *regardless of actual reliance on the particular terms of the warranty*." *Donald v. Shinn Fu Co. of Am.*, No. 99-CV-6397 (ARR), 2002 U.S. Dist. LEXIS 27967, at *14 (E.D.N.Y. Sept. 4, 2002) (emphasis added). Thus,

"[i]n contrast to the reliance required to make out a claim for fraud, a buyer may enforce an express

warranty even if [he] had reason to know that the warranted facts were untrue" because its purpose is

to assure the buyer that the seller will perform its part of the bargain. *Merrill Lynch*, 500 F.3d at

186. In this manner, the warranty serves as an inducement for the purchaser. *See Bell*, 2008 U.S.

Dist. LEXIS 58648, at *9-10 (sustaining express warranty claim where plaintiff alleged that he was

induced to enter into a contract for the purchase of a car as a result of defendants' representation that

he would receive the contractual right to receive the first such car within defendants' possession).

Here, Plaintiff alleges that Defendants misrepresented fundamental aspects of the iPhone's

quality and performance and that these representations were integral to his decision to purchase the

iPhone.[8] *See, e.g.,* ¶¶6-7, 34, 48-52. These allegations are sufficient to withstand a motion to

dismiss, and, at this stage of the litigation (pre-discovery), Apple cannot set forth a sufficient factual

basis upon which to demonstrate otherwise. *See Gusmao v. GMT Group, Inc*., No. 06 Civ. 5113

(GEL), 2008 U.S. Dist. LEXIS 58462, at *14 (S.D.N.Y. Aug. 1, 2008) (noting that the applicable

"conception of reliance mandates 'fine factual distinctions in [New York's] law of warranties'").

---

[8] The authorities upon which Apple relies are distinguishable for all of the reasons that it cites them.
*See, e.g.*, *J.C. Constr. Mgmt. Corp. v. Nassau-Suffolk Lumber & Supply Corp*., 789 N.Y.S.2d 903
(App. Div. 2d Dep't 2005) (no reliance on warranties); *Schneidman v Whitaker Co*., 758 N.Y.S.2d
142, 143 (App. Div. 2d Dep't 2003) (no evidence of warranty); *Murrin*, 756 N.Y.S.2d at 597 (failure
to allege that advertisements "were part of the bargain" or awareness of them prior to purchase); *see
also Gale*, 781 N.Y.S.2d at 46-47 (dismissing N.Y. GBL § 350 claim alleging breach of warranty for
lack of reliance); *Strishak & Assocs. v. Hewlett Packard Co*., 752 N.Y.S.2d 400 (App. Div. 2d Dep't
2002) (dismissing N.Y. GBL § 350 claim alleging deceptive advertising, *not breach of warranty*, for
lack of reliance). In addition, nearly all of those cases were dismissed beyond the motion to dismiss
stage, after the plaintiffs had an opportunity to conduct discovery or make their case at trial. *See J.C.
Constr.*, 789 N.Y.S.2d at 903 (dismissal after non-jury trial); *Gale*, 781 N.Y.S.2d at 46 (class
certification stage); *Schneidman*, 758 N.Y.S.2d at 143 (dismissal after trial).

**b.      Plaintiff's Claims for Breach of Implied Warranty**

Plaintiff alleges two claims for breach of implied warranty:  the first, relating to breach of the implied warranty of merchantability (*see* N.Y. U.C.C. § 2-314); and the second, relating to breach of the implied warranty of fitness for a particular purpose (*see* N.Y. U.C.C. § 2-315).  *See Simmons*, 857 N.Y.S.2d at 414 (sustaining a claim for breach of implied warranties on both grounds).  Although Defendants ignore the first claim (conceding its viability), Plaintiff's implied warranty claims are properly alleged and are not subject to dismissal at this preliminary stage of the action.

**(1)      Implied Warranty of Merchantability**

A warranty of merchantability is implied in every sales contract under New York law.  *See* N.Y. U.C.C. § 2-314(1).  To plead a claim for breach of this implied warranty, a plaintiff must only allege that a product is not fit for its ordinary use.  *See, e.g.*, *Denny v. Ford Motor Co*., 639 N.Y.S.2d 250, 256 (N.Y. 1995).  Whether a product is fit for its ordinary use is dependent upon "the expectations of the product's performance when used in the customary, usual, and reasonably foreseeable manner."  *Groome v. Matsushita Elec. Corp. of Am.*, No. 92 CV 3073 (NG), 2000 U.S. Dist. LEXIS 4082, at *15 (E.D.N.Y. Mar. 30, 2000).  Thus, whether a product's use is consistent with that which is impliedly warranted raises a question of fact.  *See Beneway v. Superwinch, Inc.*, 216 F. Supp. 2d 24, 30 (N.D.N.Y. 2002) (noting the inquiry is "focused on consumer expectations").

Here, the Complaint alleges that the iPhone is not fit for its ordinary use because its intended functionality is limited as a result of an inability to access the 3G network, AT&T's default network for the iPhone.  *See* ¶¶15-16.  In fact, the whole point of the 3G version of the iPhone was to offer users the speed, efficiency and functionality that third-generation networks and feature-rich 3G phones offer, such as email, internet access and GPS capabilities – functions that Defendants knew iPhone users expected.  Indeed, these features were a major selling point for Plaintiff and other

consumers – a fact that Defendants cannot deny. *See* ¶34. Consequently, the fact that the iPhone can operate on the slower EDGE network when 3G reception is unavailable does not mean that it works as intended (or as it should), because users do not have the functionality or consistency of operation that the iPhone was intended, promised and expected to provide. *See, e.g., United States Leasing Corp. v. Comerald Assocs., Inc.*, 421 N.Y.S.2d 1003, 1005 (N.Y. Civ. Ct. 1979) (implied warranty breached where copier frequently malfunctioned); *see also Malul v. Capital Cabinets, Inc.*, 740 N.Y.S.2d 828, 835 (N.Y. Civ. Ct. 2002) (same, where kitchen cabinets "melted" when installed near stove, a common location for them, although they remained functional); *Villette v. Sheldorado Alum. Prods., Inc.*, No. 521/01, 2001 N.Y. Misc. LEXIS 509, at 14-15 (N.Y. Civ. Ct. June 11, 2001) (same, where awning buckled from snow accumulation); *cf. Mittasch v. Seal Lock Burial Vault, Inc.*, 344 N.Y.S.2d 101, 103 (App. Div. 2d Dep't 1973) (nature of product implied extended operation).

### (2)    Implied Warranty of Fitness

An implied warranty of fitness arises "'[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods . . . .'" *See Simmons*, 857 N.Y.S.2d at 414 (quoting N.Y. U.C.C. § 2-315). Here, Apple designed and manufactured the iPhone to operate at 3G speeds with the understanding and intention that consumers would use the iPhone for applications that required such functionality. Moreover, both Apple and AT&T sold the iPhone to consumers at retail stores and through other means, and engaged in an aggressive marketing campaign that cross-sold their respective products – Apple's iPhone and AT&T's 3G network. In addition, AT&T, as the exclusive provider of the 3G network on which the iPhone operates, had knowledge of users' particular demands – including personal and business uses – and presumably designed and implemented the 3G network to accommodate them.

Under these circumstances, Defendants cannot shield themselves from liability at this stage merely by feigning ignorance of the particular purposes for which consumers would use the iPhone. *See Simmons*, 857 N.Y.S.2d at 414 (sustaining a claim for breach of implied warranty where it was alleged "that WET was a merchant that held itself out as an expert in the field of constructing car washes, that WET was aware that the water reclaim unit was to be used in the operation of a car wash, and that plaintiffs justifiably relied on WET's expertise"). Nevertheless, the issue of whether the iPhone is fit for a "particular purpose" is a question of fact which requires a factually intensive inquiry that is inappropriate at this juncture – a conclusion that Defendants' cited authorities support. *See, e.g.*, *Saratoga Spa & Bath, Inc. v. Beeche Sys. Corp.*, 656 N.Y.S.2d 787, 789 (App. Div. 3d Dep't 1997) (dismissing claim after jury trial); *United States Leasing*, 421 N.Y.S.2d at 1005 (evidence at trial established no breach); *cf. Mastrangelo v. Howmedica*, 903 F. Supp. 439, 443 n.1 (E.D.N.Y. 1995) (noting in *dicta* on summary judgment that claim failed and finding preemption).

## 2. The Warranty Claims Are Not Otherwise Subject to Dismissal

Although Defendants purport to advance a variety of additional reasons to dismiss Plaintiff's warranty claims, none of them is sufficient. As set forth in detail below, the "notice" requirement of New York's Uniform Commercial Code does not require the dismissal of Plaintiff's warranty claims because Defendants had adequate notice of the defects alleged in the Complaint. Moreover, Apple's alleged "limited warranty" cannot restrict the remedies available to Plaintiff and other consumers because its existence and terms are disputed and, in any event, such warranty failed of its essential purpose. Likewise, AT&T's purported disclaimer of warranties is insufficient to insulate it from liability for Defendants' express and implied representations concerning the iPhone. Finally, whether AT&T renders a service to Plaintiff has no bearing on the propriety of his warranty claims.

### a. Apple Had Notice of the Defects Alleged in the Complaint

Although notice is a prerequisite to asserting a breach of warranty claim, "any conduct which reasonably communicates the essential facts concerning the [product's] nonconformity is sufficient." *Koenig Iron Works, Inc. v. Sterling Factories, Inc.*, No. 89 Civ. 4257 (THK), 1999 U.S. Dist. LEXIS 3973, at *18-19 (S.D.N.Y. Mar. 30, 1999) (citations omitted); *see also* N.Y. U.C.C. § 1-201(25)-(26) (defining the term "notice" and what constitutes it). Thus, some courts have held that notice is satisfied where the defendant has actual or constructive knowledge of the defect, such as from a lawsuit or consumer complaint.[9] *See, e.g.*, *Muehlbauer v. GMC*, 431 F. Supp. 2d 847, 858 (N.D. Ill. 2006) ("[D]irect notice is not required when the seller actually knows about the defect of a particular product, or the seller is reasonably notified by the filing of the buyer's complaint."); *Strzakowlski v. GMC*, No. 04-4740, 2005 U.S. Dist. LEXIS 18111, at *12 (D.N.J. Aug. 16, 2005) (filing of complaint constituted notice). As Apple acknowledges, the "'sufficiency and timeliness of notice . . . [are] question[s] of fact to be determined by the jury . . . .'" *See* Apple Br. at 6 (quoting *Hubbard v. GMC*, No. 95 Civ. 4362 (AGS), 1996 U.S. Dist. LEXIS 6974, at *13 (S.D.N.Y. May 22, 1996)).

Here, the Complaint alleges that Apple received notice of the defects at issue in several ways, including from consumer complaints posted on numerous websites (including its own), and

---

[9] There is a "line of New York cases suggesting that the notice requirement does not apply to retail sales." *See Neri v. R.J. Reynolds Tobacco Co.*, No. 98-CV-371 (FJS/GJD), 2000 U.S. Dist. LEXIS 22223, at *66 (N.D.N.Y. Sept. 28, 2000) (citing *Fischer v. Mead Johnson Labs.*, 341 N.Y.S.2d 257 (App. Div. 2d Dep't 1973)). Although those cases appear to be limited to situations in which a plaintiff seeks damages for personal injuries, other courts have not imposed such a restriction. *See Mullins v. Wyatt*, 887 S.W.2d 356, 358 (Ky. 1994) (holding, in a commercial context, that a "failure to give the notice is not fatal to a civil action for breach of warranty.").

widespread reports of systemic problems with the iPhone.[10]  *See, e.g.*, ¶¶35-39.  In addition, prior to

Plaintiff's commencement of this action, Apple was named as a defendant in *Smith v. Apple, Inc.*, a

putative class action lawsuit pending in the Northern District of Alabama which concerns similar

defects and claims relating to the iPhone.  *See Smith* Mem. Op., at 1-2.

Moreover, Apple released at least *three* software patches to address the operational defects at

issue – all of which were unsuccessful (*see* ¶¶21-23, 33, 36) – which precludes Apple from claiming

that it did not have notice of those defects.  *See Koenig*, 1999 U.S. Dist. LEXIS 3973, at *19

(holding that "when a defendant . . . makes repair attempts after receiving notice of defects, it cannot

be heard to claim that it was not given sufficient notice.").  Further, on several occasions, Plaintiff

complained to Defendants of problems associated with his iPhone, but they failed or refused to

successfully resolve the issues.  *See* Koschitzki Aff., ¶¶4-6; *Walker Mfg. Co. v. M & A Auto

Warehouse Distributors, Inc.*, No. 78 Civ. 2285 (WCC), 1979 U.S. Dist. LEXIS 12457, at *5

(S.D.N.Y. May 11, 1979) ("Oral notice may be sufficient to satisfy the notice provisions of the

UCC."); *see also Fresh Direct, LLC v. Blue Martini Software, Inc.*, 776 N.Y.S.2d 301, 302 (App.

Div. 2d Dep't 2004) (noting that "the court may consider affidavits submitted by the plaintiff to

remedy any defects in the complaint," and holding that "[t]he complaint, together with [such]

affidavits . . . established that the plaintiff has a cognizable cause of action based on breach of

express warranty.").  The notion that Apple is or was unaware of these defects, or that any amount of

*additional* notice would have enabled Apple to successfully address these issues, is groundless.

---

[10] AT&T does not contend that notice is a prerequisite for Plaintiff's warranty claims and thus does
not dispute that Plaintiff gave such notice.

These facts, which Apple all but ignores, mandate a departure from the court's holding in *Smith*. There, the court dismissed warranty claims based upon the strict application of a provision of the Alabama Commercial Code which, like the New York provision, makes notice a prerequisite to asserting a warranty claim. *See Smith* Mem. Op., at 4. Although the plaintiff in that case admittedly failed to give notice, however, *Plaintiff here attests that he gave notice to Apple* (and AT&T) of the defects alleged in the Complaint. *See* Koschitzki Aff., ¶¶4-6. Moreover, contrary to the court's holding in *Smith*, the policy underlying the notice requirement is simply not met here because Apple indisputably had notice of the defects at issue and unsuccessfully attempted to resolve the problems on at least three occasions – a fact that it does not deny. Thus, it would make little sense to require Plaintiff to provide notice to Apple of defects that it already knows exist yet failed (or refused) to satisfactorily address. Indeed, no amount of additional notice, whether from Plaintiff or any other aggrieved consumer, would change the manner in which Apple could or would address the issues raised in this case – a paramount concern that courts, including the *Smith* court, have expressed when considering the notice requirement.[11] Nevertheless, at the very least, an issue of fact exists as to whether Defendants had notice of the defects at issue.[12]

---

[11] For this reason alone, Apple's cited authorities are distinguishable. Indeed, in each of those cases, the plaintiffs refused to permit the defendants to even *attempt* to correct the alleged defects. *See, e.g., Leonard v. Tollycraft Corp.*, No. 88 Civ. 5809 (VLB), 1989 U.S. Dist. LEXIS 12363, at *15 (S.D.N.Y. Oct. 19, 1989) (plaintiff "unequivocally rejected" defendant's offer to "make any necessary repairs"); *Pronti v. DML of Elmira, Inc.*, 478 N.Y.S.2d 156, 157 (App. Div. 3d Dep't 1984) (plaintiffs refused to let defendant correct furniture defects); *Hole v. GMC*, 442 N.Y.S.2d 638, 640 (App. Div. 3d Dep't 1981) (plaintiff rejected "several offers to repair" car). In this case, it is beyond dispute that Defendants had ample opportunity to correct the defects and failed to do so.

[12] In the event that the Court elects to dismiss the warranty claims, Plaintiff respectfully requests the Court to grant leave to re-plead. *See Hubbard*, 1996 U.S. Dist. LEXIS 6974, at *14.

### b.    Apple's Limited Warranty Cannot Restrict Plaintiff's Remedies or Require Dismissal of the Warranty Claims

Apple's reliance upon an alleged "limited one-year warranty" is misplaced because it cannot restrict Plaintiff's remedies or require dismissal of his warranty claims.

First, the existence and terms of the warranty are in dispute. Indeed, at this stage, Plaintiff does not concede that the purported written warranty governs or restricts his available remedies, nor does Apple indicate that Plaintiff ever received a copy of it. *See* Koschitzki Aff., ¶7; *see also* Levitt Decl., ¶3 (attaching purported warranty). As such, for the purposes of these motions (and without the benefit of a developed factual record), the Court must assume that the warranty does not exist. *See Smith* Mem. Op., at 5 ("Because the parties are not in agreement as to the existence or non-existence of a written warranty, the court must rule on Apple's motion without assuming the existence of a written warranty."); *see also Labajo*, 478 F. Supp. 2d at 530 (accepting as true a plaintiff's claim that she did not assent to a specific contract term and thus could not be bound by it).

Second, as noted above, Apple has repeatedly failed to resolve the 3G network issues with software patches (even after Plaintiff requested it to do so), and it has ignored requests to remedy the hairline cracks.[13] Thus, the limited warranty upon which Apple relies fails in its essential purpose and cannot restrict his available remedies or otherwise require the dismissal of this claim. *See, e.g.*, *Cayuga*, 465 N.Y.S.2d at 612 ("[A] finding that a limited warranty has failed of its essential purpose frees the buyer to pursue his remedies under other provisions of the Uniform Commercial Code as if

---

[13] "[A] 'delay in supplying the remedy can just as effectively deny the purchaser the product he expected as can the total inability to repair. In both instances the buyer loses the substantial benefit of his purchase[.]'" *Cayuga Harvester, Inc. v. Allis-Chalmers Corp.*, 465 N.Y.S.2d 606, 611 (App. Div. 4th Dep't 1983) (quoting *Chatlos Sys. v National Cash Register Corp.*, 635 F2d 1081, 1085 (3d Cir. 1980)).

the clause did not exist"); *see also Consolidated Data Terminals v. Applied Digital Data Sys.*, 708

F.2d 385, 392 (9th Cir. 1983) (upholding an express warranty claim where, "[d]espite ADDS's good

faith efforts to correct the continuing problems with the Regent 100 terminals, none of the terminals

ever operated at the rate of 19,200 baud as warranted."); *Leonard*, 1989 U.S. Dist. LEXIS 12363, at

*16 (acknowledging that a plaintiff "could still avoid the impact of the limitation on remedies by

demonstrating that the limited remedy of repair or replacement fails of its essential purpose.").

### 3.     AT&T's Purported Warranty Disclaimer Is Without Effect

AT&T's purported warranty disclaimer also cannot foreclose Plaintiff's warranty claims

because he disputes the terms and application of the agreement upon which AT&T relies, including

its disclaimer.  *See* Koschitzki Aff., ¶8.  Moreover, even if the disclaimer applies, it cannot extend to

Plaintiff's iPhone because he purchased it from Apple, and, further, Defendants' representations, in

advertising and otherwise, negated the effect of any such disclaimer.  *See Imperia v. Marvin*

*Windows of N.Y., Inc.*, 747 N.Y.S.2d 35, 37 (App. Div. 2d Dep't 2002) (disclaimer inapplicable).

### 4.     Whether AT&T Provides a Service to Plaintiff is Irrelevant and, In any Event, the 3G Network is a Product Subject to Warranties

The warranty claims are also not subject to dismissal merely because AT&T provides access

to the 3G network, which it refers to as a "telecommunications service."  *See* AT&T Br. at 9.  As an

initial matter, the issue of whether AT&T provides a service to Plaintiff is entirely irrelevant to the

question of whether it breached express or implied warranties concerning the *iPhone*, a product that

unequivocally falls under the scope of the Uniform Commercial Code and common law.

Moreover, the 3G network is not a "service" but is a *product* that AT&T licenses to iPhone

users and which is sufficiently tangible to qualify as a "good" under the Uniform Commercial Code

and common law.[14]  *Cf. Confer Plastics, Inc. v. Hunkar Labs., Inc.*, 964 F. Supp. 73, 77 (W.D.N.Y. 1997) (citing cases in which New York courts have held that computer software is sufficiently tangible to qualify as a "good" under the Uniform Commercial Code); *see also Bell*, 2008 U.S. Dist. LEXIS 58648, at *11 ("Defendants simply assert, but provide no legal support for their contention, that courts require warranty claims to concern the physical characteristic of a good or its ability to perform as promised.  There is no such limitation in the New York Uniform Commercial Code or in the case law.") (footnote omitted).  The mere fact that AT&T may perform services associated with maintaining the network, however, does not transform it into a "service" or insulate AT&T from a warranty claim.  *See Milau Assocs., Inc. v. North Ave. Dev. Corp.*, 398 N.Y.S.2d 882, 885-886 (N.Y. 1977) (observing that a contract that predominately relates to the sale of goods is subject to the Uniform Commercial Code even if it also contemplates the performance of services, and could give rise to a breach of warranty claim).  As such, AT&T is subject to Plaintiff's warranty claims.

### E.    The Complaint Properly Alleges an Unjust Enrichment Claim

As Defendants' moving briefs demonstrate, Plaintiff's unjust enrichment claim is properly pled.[15]  "[T]he very essence of an unjust enrichment claim under New York law . . . is that one party

---

[14] At the very least, an issue of fact exists as to whether the 3G network qualifies as a "good."  *See Schulman Inv. Co. v. Olin Corp.*, 477 F. Supp. 623, 629 (S.D.N.Y. 1979) (refusing to determine the issue of whether a contract was one for goods or services at the summary judgment stage because it "raise[d] a question of fact" that could not be resolved at that stage of the proceedings).

[15] Because the terms of a contractual relationship between Plaintiff and the Defendants are presently in dispute, Plaintiff properly pleads his claims for unjust enrichment and restitution in the alternative to his contract-based claims.  *See, e.g., Newman & Schwartz v. Asplundh Tree Expert Co.*, 102 F.3d 660, 663 (2d Cir. 1996) (claim for unjust enrichment properly pleaded in alternative to contract claim); *R.D. Weis & Co. v. Children's Place Retail Stores, Inc.*, No. 08 Civ. 4245 (WCC), 2008 U.S. Dist. LEXIS 94542, at *13 (S.D.N.Y. Nov. 19, 2008) (holding that "plaintiff has properly pleaded its quasi-contract claim as an alternative ground of relief" where the terms and validity of a contract were disputed); *see also* Fed. R. Civ. P. 8(d)(2) (permitting alternative pleading).  As noted above,

has received money or a benefit at the expense of another" and that equity requires its return. *Newbro v. Freed*, No. 06-1722-cv, 2007 U.S. App. LEXIS 4769, at *5 (2d Cir. Feb. 27, 2007) (citations and internal quotation marks omitted), *aff'g*, 409 F. Supp. 2d 386 (S.D.N.Y. 2006); *see also Golden Pac. Bancorp v. FDIC*, 375 F.3d 196, 203 n.8 (2d Cir. 2004) (noting elements), *cert. denied*, 546 U.S. 1012 (2005). However, a plaintiff need not allege that the defendant wrongfully obtained or actively sought the benefit. *Newbro*, 409 F. Supp. 2d at 398 (citing, *inter alia*, *Simonds v. Simonds*, 408 N.Y.S.2d 359, 364 (1978), and *Aetna Cas. & Sur. Co. v. LFO Constr. Corp.*, 615 N.Y.S.2d 389, 390 (App. Div. 1st Dep't 1994)).

Here, Plaintiff has properly alleged a claim for unjust enrichment because both Defendants profited from selling the iPhone to him and other consumers, which did not function as Defendants represented and suffered from undisclosed design and manufacturing defects. In addition, as the iPhone's exclusive wireless network provider, AT&T further profited from Plaintiff and other consumers by selling them 3G network plans that they could not use. Thus, purchasers did not receive the full benefit of the iPhone or the 3G network plan, both of which Defendants cross-marketed and induced users to purchase (wrongfully or otherwise).

Accordingly, this case presents a quintessential unjust enrichment claim even if Defendants did not intend to mislead Plaintiff and other consumers.[16] *See, e.g.*, *Newbro*, 2007 U.S. App. LEXIS

---

Apple contends that no contract exists between itself and Plaintiff (other than a warranty), and AT&T has produced a purported contract whose terms and application Plaintiff contests at this stage. *See New York v. Coastal Oil N.Y., Inc.*, No. 96 Civ. 8667 (RPP), 1998 U.S. Dist. LEXIS 2049, at *21 (S.D.N.Y. Feb. 25, 1998) (relied upon by Apple; dismissing a restitution claim where a written contract existed whose terms were not disputed).

[16] Defendants fail to raise a substantive argument for the dismissal of this claim and thus appear to agree that Plaintiff has properly alleged it. *See* Apple Br. at 17-19; AT&T Br. at 10-11. Contrary to

4769, at *4-5 (affirming summary judgment in favor of an unjust enrichment claim where a third-party had transferred a plaintiff's funds to the defendants' account without their consent and they "did not wrongfully intend to deprive [the plaintiff] of his money at the time they received it"); *Cox*, 778 N.Y.S.2d at 149 (reversing a trial court's dismissal of an unjust enrichment claim because the "plaintiffs' allegations that [defendant's] deceptive practices caused them to pay artificially inflated prices for its products state[d] a cause of action"); *see also Cruz v. McAneney*, 816 N.Y.S.2d 486, 491 (App. Div. 2d Dep't 2006) (observing that those unjustly enriched may frequently be innocent).

## F.     The Complaint Properly Alleges a Restitution Claim

Plaintiff properly alleges a restitution claim because he seeks *legal* relief in the form of monetary damages as opposed to equitable relief, which sets it apart from his unjust enrichment claim for which *equitable* considerations are crucial. "[R]ecovery of damages has traditionally been understood as a legal remedy rather than an equitable remedy . . . ." *Morales v. Executive Telecard, Ltd.*, No. 95 Civ. 10202 (KMW), 1998 U.S. Dist. LEXIS 17726, at *5 (S.D.N.Y. Nov. 10, 1998) (holding that an action seeking disgorgement of short-swing profits pursuant to Section 16(b) of the Securities Exchange Act of 1934 is legal, as opposed to equitable, in nature). In contrast, in cases involving an alleged breach of fiduciary duty (unlike here), restitution may constitute "a type of the broader cause of action for money had and received, a remedy which is equitable in origin and function . . . ." *See In re Gartenberg*, 636 F.2d 16, 17 (2d Cir. 1980) (citation and quotation marks omitted), *cert. denied*, 451 U.S. 910 (1981); *see also* Apple Br. at 19 (noting same). Accordingly,

---

AT&T's contention, this claim does not "sound in fraud" because it does not hinge on whether Defendants engaged in intentional misconduct. *See* Apple Br. at 11 n.6.

Defendants cannot obtain dismissal of this claim merely because Plaintiff has also alleged an unjust enrichment claim (or, as noted above, a breach of contract claim).

### G.    The Complaint Properly Alleges an Intentional Misrepresentation Claim

Plaintiff also properly alleges, in the alternative, his claim for intentional misrepresentation. As the Complaint alleges, Defendants misrepresented the functionality of the iPhone and the 3G network when they knew or should have known that the iPhone could not provide users with functionality, speed or efficiency on the 3G network that they advertised.  In fact, Defendants continued to make misleading statements concerning the iPhone's functionality on the 3G network even *after* Apple unsuccessfully tried on at least three occasions to remedy the reception issues with the issuance of software patches.  The Complaint alleges that these misrepresentations induced Plaintiff and other consumers to purchase the iPhone and a 3G network plan, which is sufficient to state a claim for intentional misrepresentation or fraud.

"Where, as here, the statement forming the basis for the fraud charge was not merely a promise to perform in the future, but an allegedly intentional misrepresentation of the present state of affairs (which purportedly caused the party to which it was made to enter into a contract in reliance thereon), a fraud claim is maintainable."[17]  *R. Freedman & Son, Inc. v. A.I. Credit Corp.*, 641 N.Y.S.2d 429, 430 (App. Div. 3d Dep't 1996) (citing *Coolite Corp. v. American Cyanamid Co.*, 384 N.Y.S.2d 808, 811 (App. Div. 1st Dep't 1976)); *see also Stewart v. Jackson & Nash*, 976 F.2d 86, 88 (2d Cir. 1992) (observing that "where a contract or transaction was induced by false representations,

---

[17] Defendants do not argue that the Complaint fails to allege that they had the requisite intent to commit fraud presumably because they *cannot*.  *See State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C.*, 375 F. Supp. 2d 141, 154 (E.D.N.Y. 2005) (holding that allegations of scienter may be alleged without particularity and in a conclusory fashion so long as "they reveal a sufficient showing of fraudulent intent," citing *Breard v. Sachnoff & Weaver, Ltd.*, 941 F.2d 142, 143 (2d Cir. 1991)).

the representations and the contract are distinct and separable," quoting 60 N.Y. Jur. 2d, Fraud and

Deceit, § 206 at 740 (1987)); *Fresh Direct*, 776 N.Y.S.2d at 303 (sustaining fraud claim where the

plaintiff "alleg[ed] that the defendant made false representations regarding the manufacture of its

software and the manner in which the software performed for the defendant's other customers,"

which "induced the plaintiff to enter into the contract").

Moreover, "concealment of fact can provide a basis for fraud, even when the alleged

concealer is a non-fiduciary." *Newbro v. Freed*, No. 03 Civ. 10308 (PKC), 2004 U.S. Dist. LEXIS

5358, at *14 (S.D.N.Y. Mar. 31, 2004). In fact, "'[c]oncealment with intent to defraud of facts

which one is duty-bound in honesty to disclose is of the same legal effect and significance as

affirmative misrepresentations of fact[.]'" *Miele v. Am. Tobacco Co*., 770 N.Y.S.2d 386, 391 (App.

Div. 2d Dep't 2003) (quoting *Nasaba Corp. v Harfred Realty Corp*., 287 N.Y. 290, 295 (1942)). A

duty to disclose arises where, as here, the defendants are alleged to have superior knowledge that is

not readily available to the plaintiff and they are aware that he is acting on the basis of a mistaken

belief. *See, e.g*., *Newbro*, 2004 U.S. Dist. LEXIS 5358, at *13 (citing, *inter alia*, *Stevenson Equip.,

Inc. v. Chemig Constr. Corp*., 565 N.Y.S.2d 318, 320 (App. Div. 3d Dep't 1991), *aff'd*, 584

N.Y.S.2d 434 (N.Y. 1992)); *see also Ceribelli v. Elghanayan*, 990 F.2d 62, 64 (2d Cir. 1993)

(acknowledging such duty of disclosure).

As the Complaint alleges, Defendants had exclusive knowledge of the iPhone's problems yet

concealed the information from the public, which induced Plaintiff and other consumers to purchase

the iPhone on the mistaken belief that it was non-defective and would function as represented.

Moreover, Defendants knew that consumers could not uncover the full extent of the problems, nor

the fact that the issues would persist even after Apple attempted to address them, prior to purchasing

the iPhone. Thus, Defendants had a duty to disclose information concerning the defects to Plaintiff

and other consumers prior to their purchase of the iPhone. Instead of satisfying their obligation to disclose this information, however, Defendants continued to conceal it – a practice they continue even today. As such, the Complaint alleges an actionable claim for intentional misrepresentation. *See Stevenson*, 565 N.Y.S.2d at 320 (holding that a duty of disclosure arose where defendants, who had rescinded a contract for the purchase of construction equipment, knew that it "had been reported stolen, that the FBI was looking for it and that plaintiff did not know these facts," and "were aware that plaintiff [w]as acting on the basis of a mistaken belief when purchasing [it]").

### H. The Complaint Properly Alleges a Negligent Misrepresentation Claim

A negligent misrepresentation claim requires a plaintiff to allege "that a defendant had a duty to use reasonable care to impart correct information due to a special relationship existing between the parties, that the information was false, and that [he] reasonably relied on the information." *Fresh Direct*, 776 N.Y.S.2d at 302. Here, the Complaint alleges that Plaintiff and other consumers purchased the iPhone in reliance upon Defendants' misleading and/or false representations regarding its quality and 3G network reception. The Complaint also alleges that privity of contract exists between Plaintiff and Defendants (although the precise terms of the relationship is in dispute), which obviates the need to establish a special relationship. *See Berkshire Fashions, Inc. v. F.W. Woolworth Co.*, 682 N.Y.S.2d 172, 174 (App. Div. 1st Dep't 1998) (upholding claim where "defendant and plaintiff were in direct and actual privity."). Nevertheless, the Complaint alleges facts which give rise to an inference that Defendants occupied a special relationship with consumers who reasonably relied upon the representations at issue. For example, Apple designed, manufactured, supported and serviced the iPhone, both Apple and AT&T marketed and sold it, and AT&T was and is its exclusive

network provider – all of which induced consumers to rely upon the truth, accuracy and completeness of Defendants' representations.[18]

These allegations are sufficient to support a negligent misrepresentation claim. *See, e.g., Fresh Direct*, 776 N.Y.S.2d at 303 (sustaining claim where complaint alleged that defendant software provider was aware of plaintiff's software needs, made false representations, and induced plaintiff to rely upon its expertise). The fact that Plaintiff has also alleged contract-based claims does not require the dismissal of this claim because, as even Defendants' supporting papers demonstrate, the existence and scope of a contract between the parties is presently in dispute. Moreover, as explained above in connection with Plaintiff's intentional misrepresentation claim, the representations at issue do not form the basis of Plaintiff's contract-based claims and thus concern matters that are extraneous to any agreement. *See, e.g.*, *Fresh Direct*, 776 N.Y.S.2d at 303 (sustaining claim in the presence of an alternatively pleaded breach of contract claim where "the plaintiff alleged facts demonstrating that the defendant made false representations regarding matters which were extraneous to the contract itself"); *Berkshire*, 682 N.Y.S.2d at 173-174 (sustaining claim where plaintiff stocked merchandise based on defendant's allegedly false assurances that its business was "experiencing promising financial trends" that would require the goods). Consequently, the economic loss rule, which generally precludes recovery in tort for purely economic loss where the relationship between the parties is contractual, is inapplicable here. *See Cornwall Bridge Pottery,*

---

[18] Moreover, Defendants had superior knowledge of essential facts that required them to remedy the misleading nature of their misrepresentations and omissions concerning the iPhone's problems. *See Creative Waste Mgmt. v. Capitol Envtl. Servs., Inc.*, 429 F. Supp. 2d 582, 607 (S.D.N.Y. 2006) (applying the "special facts doctrine" and holding that an issue of fact existed).

*Inc. v. Sheffield Pottery, Inc.*, No. 3:07cv1154 (WWE), 2008 U.S. Dist. LEXIS 26336, at * 4 (D. Conn. Apr. 2, 2008) (reciting the rule).

## IV.    DEFENDANTS' MOTIONS TO STRIKE MUST BE DENIED

Defendants' purported motions to strike the Complaint's prayer for minimum and punitive damages under Section 349 of the General Business Law are premature at this stage of the proceedings and must be denied.  Indeed, although Plaintiff *seeks* to represent a class of consumers who purchased the iPhone, and will move for class certification at the appropriate time, the propriety of class certification is not at issue at this juncture.   Therefore, regardless of whether a *class representative* may seek minimum or punitive damages on a General Business Law claim, that issue is not before the Court and thus cannot warrant striking Plaintiff's prayer for such relief.  In fact, in Apple's supporting memorandum of law (in which AT&T purportedly joins), Defendants concede that a plaintiff may seek and obtain such damages on an individual basis, which is presently the only capacity in which Plaintiff can assert his claims.

Moreover, the sole federal case upon which Defendants chiefly rely is distinguishable because it did not concern the question of whether a plaintiff may seek minimum and punitive damages under the General Business Law in the context of a motion to dismiss or strike.  *See Alicea v. Circuit City Stores, Inc.*, No. 07 Civ. 6123 (DC), 2008 U.S. Dist. LEXIS 7336, at *3 (S.D.N.Y. Jan. 22, 2008) (granting a plaintiff's motion to remand for lack of subject matter jurisdiction under the Class Action Fairness Act because compensatory damages sought in connection with a GBL § 349(h) claim could not be tripled "for purposes of determining the amount in controversy").  Accordingly, Defendants' motions to strike must be denied at this stage.

## V.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court to deny Defendants'

motions to dismiss and to strike in their entirety.  In the event that the Court grants any relief with

respect to such motions, Plaintiff respectfully requests the Court to grant leave to re-plead.

DATED:  January 8, 2009

**RIGRODSKY & LONG, P.A.**

Mark S. Reich
Joseph Russello
585 Stewart Avenue, Suite 304
Garden City, NY 11530
Tel.: (516) 683-3516
Fax: (302) 654-7530

—  and –

Seth D. Rigrodsky
Brian D. Long
919 N. Market Street, Suite 980
Wilmington, DE 19801
Tel.: (302) 295-5310
Fax: (302) 654-7530

*Counsel for Plaintiff*

OF COUNSEL:

**STEIN FARKAS & SCHWARTZ LLP**
Aaron M. Stein
Joshua Farkas
1639 E. 13th Street
Brooklyn, NY 11229
Tel.: (718) 645-5600
Fax: (718) 645-3767