UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

AVI KOSCHITZKI, On Behalf of Himself and ) 
all Others Similarly Situated,            ) 
                                          ) 
                      Plaintiff,          ) 
                                          ) 
            vs.                           ) 
                                          ) 
APPLE INC. and AT&T MOBILITY LLC,         ) 
                                          ) 
                      Defendants.         ) 
                                          ) 
_____ )

)

Civil Action No. 1:08-CV-04451-JBW-VVP

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
AT&T MOBILITY LLC'S MOTION TO COMPEL ARBITRATION**

# TABLE OF CONTENTS

**Page**

STATEMENT OF FACTS ........................................................................................................1

PRELIMINARY STATEMENT ............................................................................................1

ARGUMENT ...........................................................................................................................3

      A.     AT&T Has Failed to Meet its Burden of Proof to Compel Arbitration and Any Purported Service Agreement is Both Procedurally and Substantively Unconconscionable ...............................................................................................3

           1.     The Doctrine of Procedural Unconscionability Precludes Defendant from Compelling Plaintiff to Arbitrate His Claims Against AT&T ....................7

           2.     The Doctrine of Substantive Unconscionability Precludes Defendant from Compelling Plaintiff to Arbitrate His Claims Against AT&T ..................11

                 i.     AT&T's Improperly Submits an Inadmissable Expert Opinion ....12

      B.     Defendant's Policy Arguments Regarding the FAA's Preemption Rights Fails ...14

      C.     Courts in Several Jurisdictions Have Held Bans on Class Arbitration to be Unconscionable and Unenforceable ....................................................................15

IV.    CONCLUSION.................................................................................................................21

# TABLE OF AUTHORITIES

**CASES**                                                                                              **Page**

*Acorn v. Household Int'l, Inc.,*
    211 F. Supp. 2d 1160 (N.D. Cal. 2002) .......................................................... 15

*Advanced Med. & Alternative Care, P.C. v. New York Energy Sav. Corp.,*
    9693/08, 2008 N.Y. Misc. LEXIS 7097 (N.Y. Sup. Ct. Dec. 15, 2008) ........................... 9

*Am. Hotel Int'l Group, Inc. v. CGU Ins. Co.,*
    01 CV 0654 (RCC), 2002 U.S. Dist. LEXIS 15933 (S.D.N.Y. Aug. 27, 2002) .............. 13

*Amchem Prods. v. Windsor,*
    521 U.S. 591 (1997) ....................................................................................... 19

*Bensadoun v. Jobe-Riat,*
    316 F.3d 171 (2d Cir. 2003) ............................................................................ 3

*Brennan v. Bally Total Fitness,*
    198 F. Supp. 2d 377 (S.D.N.Y. 2002) ............................................................. 12

*Brower v. Gateway 2000 Inc.,*
    676 N.Y.S.2d 569 (App. Div. 1st Dep't 1998) ......................................... 8, 9, 10

*Carnegie v. Household Int'l, Inc.,*
    376 F. 3d 656 (7th Cir. 2004) ......................................................................... 19

*Daubert v. Merrell Dow Pharmaceuticals,*
    509 U.S. 579 (1993) ....................................................................................... 13

*Dreyfuss v. eTelecare Global Solutions-US, Inc.,*
    No. 08 Civ. 1115 (RJS), 2008 U.S. Dist. LEXIS 96945
    (S.D.N.Y. Nov. 14, 2008) ............................................................................... 3

*Fiser v. Dell Computer Corp.,*
    188 P.3d 1215 (N.M. 2008) ........................................................................... 18

*Fletcher v Kidder, Peabody & Co.,*
    81 N.Y.2d 623 (1993) ...................................................................................... 8

*Gay v. CreditInform,*
    511 F.3d 369 (3d Cir. 2007) ........................................................................... 15

*General Electric Co. v. Joiner,*
    522 U.S. 136 (1997) ....................................................................................... 13

*Gillman v Chase Manhattan Bank*,
    73 N.Y.2d 1 (N.Y. 1988) ................................................. 8

*Hayes v. County Bank*,
    811 N.Y.S.2d 741 (App. Div. 2d Dep't 2006) ........................... 8, 10

*In re Bridgestone/Firestone, Inc.*,
    131 F. Supp. 2d 1027 (S.D. Ind. 2001) ............................... 13

*Kinkel v. Cingular Wireless, LLC*,
    223 Ill. 2d 1 (Ill. 2006) ............................................ 18

*Kristian v. Comcast Corp.*,
    446 F.3d 25 (1st Cir. 2006) .......................................... 17

*Lowden v. T-Mobile, USA, Inc.*,
    No. C05-1482P, 2006 U.S. Dist. LEXIS 94861 (W.D. Wash. Apr. 13, 2006) ................ 19

*Luna v. Household Fin. Corp. III*,
    236 F. Supp. 2d 1166 (W.D. Wash. 2002) ............................... 16, 19

*Mace v. Van Ru Credit Corp.*,
    109 F.3d 338 (7th Cir. 1997) ......................................... 19

*McKee v. AT&T Corp.*,
    164 Wn.2d 372 (Wash. 2008) .......................................... 10, 11

*Moss v. Rent-A-Center, Inc.*,
    06 CV 3312 (SLT)(KAM), 2007 U.S. Dist. LEXIS 60011
    (E.D.N.Y. Aug. 15, 2007) ............................................. 3, 8

*Muhammad v. County Bank of Rehoboth Beach, Delaware*,
    189 N.J. 1 (N.J. 2006) ............................................... 19, 20

*Powertel, Inc. v. Bexley*,
    743 So.2d 570 (Fla. Dist. Ct. App. 1999) ............................ 17

*Ranieri v. Bell Atlantic Mobile*,
    759 N.Y.S.2d 448 (App. Div. 1st Dep't 2003) ......................... 9, 10

*Rollins, Inc. v. Garrett*,
    176 Fed. Appx. 968 (11th Cir. 2006) ................................. 17

*Shlomo Bar-Ayal v. Time Warner Cable Inc.*,
    03 CV 9905 (KMW), 2006 U.S. Dist. LEXIS 75972 (S.D.N.Y. Oct. 16, 2006) ................ 9

*Shroyer v. New Cingular Wireless Serv., Inc.*,
 498 F.3d 976, 984 (9th Cir. 2007) .................................................................. 16

*Silberman v. Innovation Luggage, Inc.*,
 01 Civ. 7109 (GEL)(DF), 2002 U.S. Dist. LEXIS 18456
 (S.D.N.Y. Sept. 30, 2002) ............................................................................. 13

*Skirchak v. Dynamics Research Corp.*,
 432 F. Supp. 2d 175 (D. Mass. 2006) ............................................................ 17

*Szetela v. Discover Bank*,
 97 Cal. App. 4th 1094 (Cal. Ct. App. 2002) .................................................. 16

*Tellium, Inc. v. Corning, Inc.*,
 No. 03 Civ. 8487 (NRB), 2004 U.S. Dist. LEXIS 2289
 (S.D.N.Y. Feb. 13, 2004)……………………..…………………………………………...4

*Tilton, S.A. v. Prudential-Bache Securities, Inc.*,
 No. 85 Civ. 8788 (MJL), 1987 U.S. Dist. LEXIS 2138
 (S.D.N.Y. March 24, 1987)............................................................................. 4

*Ting v. AT&T*,
 182 F. Supp. 2d 902 (N.D. Cal. 2002) ..................................................... 17, 20

*Trujillo v. Apple Computer*,
 578 F. Supp. 2d 979 (N.D. Ill 2008) ...................................................... 6, 7, 9

*Trujillo v. Apple Computer*,
 Case No. 07 C 4946, 2008 U.S. Dist. LEXIS 32128 (N.D. Ill. Apr. 18, 2008) ............. 6, 7

*Tsadilas v. Providian Nat'l Bank*, 786 N.Y.S.2d 478 (App. Div. 1st Dep't 2004) ..................... 10

Plaintiff Avi Koschitzki ("Plaintiff" or "Koschitzki") submits this memorandum of law in opposition to Defendant AT&T Mobility LLC's ("AT&T" or "Defendant") motion to compel arbitration and dismiss claims (the "Motion to Compel").

## I.  STATEMENT OF FACTS[1]

In or about late August 2008, Plaintiff purchased a 3G iPhone at an Apple store located in Long Island, New York.  Koschitzki Aff., ¶3.[2]  That same day, an Apple representative took the steps necessary to activate Plaintiff's iPhone on his behalf.  *Id.*  Plaintiff does not recall being given an opportunity to read or review the terms or conditions of AT&T's purported service agreement while at the Apple store on the day of his purchase. *Id.*

At the time Plaintiff purchased his iPhone, AT&T was the only company that Plaintiff could use for cellular service on his iPhone.[3]  As such, Plaintiff was effectively left with no choice but to activate the cellular service on his iPhone with AT&T.

## II.  PRELIMINARY STATEMENT

Defendant AT&T cannot enforce the terms and conditions of a service agreement that it cannot evince was ever provided to or even made available to Plaintiff at the time he purchased his iPhone or before the iPhone was activated with AT&T's cellular service.  As such, AT&T failed to meet its burden of presenting the existence of its service agreement and, further, that the formation of the purported agreement with Plaintiff is valid.

---

[1] These facts are submitted in addition to the Statement of Facts presented by Plaintiff in his combined oppositions to Defendants' Motions to Dismiss, which is incorporated herein.

[2] "Koschitzki Aff., ¶__" refers to paragraphs of Plaintiff Avi Koschitzki's Affidavit in Opposition.

[3] *See* AT&T Press Release, http://www.att.com/gen/pressroom?pid=4800&cdvn=news&newsarticleid= 25791, a copy of which is annexed as Exhibit A to the Declaration of Mark S. Reich, Esq., dated January 8, 2009 (the "Reich Dec."), submitted in opposition to this motion.

Where, as here, a court is asked to decide a motion to compel arbitration, a court will apply a standard akin to a motion for summary judgment. The party seeking to compel arbitration, therefore, bears the burden of proving the existence and validity of an agreement to arbitrate. At a minimum, based upon the facts presented to this Court by AT&T in support of its Motion to Compel, there are questions of fact as to whether a valid agreement exists between AT&T and Plaintiff.

AT&T first improperly relies on Plaintiff's supposed agreement to AT&T terms and conditions in connection with his purchase and activation of an entirely separate phone – a Sony Ericsson. Then, with respect to Plaintiff's purchase and activation of his iPhone, AT&T relies on the declarations of individuals, none of which have personal knowledge of Plaintiff's purchase or activation of his iPhone. The declarations state what the "typical" customer would need to do when purchasing and activating an iPhone, including methods of confirming that he accepts AT&T's terms and conditions. The declarations further indicate that AT&T's service agreement was available to customers at Apple retail stores, upon request, and attaches a copy of the service agreement as it "would be" printed for such a customer. The declarations do not state whether the declarants are aware of whether these practices were actually carried out, on a general basis, in Apple's retail stores. Further, the declarations do not evidence that Plaintiff was provided with a copy of Apple's service agreement, that he read the agreement, that he was given an opportunity do so, or even knew that that it was available to him. Indeed, Plaintiff affirmed that he does not recall reading or reviewing the service agreement or being given an opportunity to review it on the day of his purchase and activation of his iPhone.

Further, at the time when AT&T contends Plaintiff agreed to its service agreement, Plaintiff lacked meaningful choice as AT&T was the exclusive service provider of cellular service for

iPhones. In effect, Plaintiff did not have an opportunity to use an alternative service provider and, as such, any purported agreement with AT&T is procedurally unconscionable.

Courts routinely find arbitration clauses that simultaneously bar class actions to be unconscionable and, therefore, unenforceable. There are strong public policy considerations in play when a court is faced with enforcing an arbitration clause while, at the same time, faced with precluding consumers with the procedural mechanism of commencing a class action – whether in a court or arbitration proceeding. AT&T cannot be allowed to shield itself with a substantively unconscionable provision that forces Plaintiff into arbitration and prevents him from bringing his case on a class-wide. Forcing Plaintiff's claim into individual arbitration will increase the likelihood that AT&T avoids answering for their share of the wrongdoing at issue in this litigation.

## III.  ARGUMENT

### A.  AT&T Has Failed to Meet its Burden of Proof to Compel Arbitration and Any Purported Service Agreement is Both Procedurally and Substantively Unconscionable

AT&T has failed to meet its burden of showing the existence of its purported service agreement – and embedded individual arbitration clause –and that the formation of the contract with Plaintiff (and/or other iPhone users) is valid.

In determining a motion to compel arbitration, a court will apply "a standard similar to that of a motion for summary judgment." *Moss v. Rent-A-Center, Inc.*, 06 CV 3312 (SLT)(KAM), 2007 U.S. Dist. LEXIS 60011 at *5 (E.D.N.Y. Aug. 15, 2007) (citing *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003)). In that regard, the party seeking to compel arbitration bears the burden of proof. *See, e.g., Dreyfuss v. eTelecare Global Solutions-US, Inc.*, No. 08 Civ. 1115 (RJS), 2008 U.S. Dist. LEXIS 96945 at *8-9 (S.D.N.Y. Nov. 14, 2008) ("Defendant bears the burden of proving that such an agreement exists. The party seeking to compel arbitration has the burden of demonstrating

by a preponderance of the evidence the existence of an agreement to arbitrate.") *Tellium, Inc. v. Corning, Inc.,* No. 03 Civ. 8487 (NRB), 2004 U.S. Dist. LEXIS 2289 at *15 (S.D.N.Y. Feb. 13, 2004); *Tilton, S.A. v. Prudential-Bache Securities, Inc*., No. 85 Civ. 8788 (MJL), 1987 U.S. Dist. LEXIS 2138 at *3 (S.D.N.Y. Mar. 24, 1987) ("The party seeking to compel arbitration must bear the burden of demonstrating the existence of an agreement by the parties to arbitrate their dispute.").

Here, in support of its motion to compel arbitration, AT&T submitted the unsworn declarations of Caroline Mahone-Gonzalez ("Gonzalez"), Adam Gill ("Gill") and TJ Terry ("Terry").

Gonzalez, an area manager in the West region of AT&T Office of the President, declared that she reviewed Plaintiff's account records. Gonzalez Dec., ¶¶2-3.[4] First, according to Gonzalez, Plaintiff placed a telephone order for a Sony Ericsson W580i cellular phone on August 27, 2008 and activated it using an automated phone system two days later. Gonzalez Dec., ¶4. Gonzales states that Plaintiff purportedly accepted a new wireless service agreement during this call. Gonzalez Dec., ¶4. Gonzalez' declaration, notably, fails to state if and when Plaintiff was given the opportunity to read the service agreement or if it was even made available to him at all. Moreover, even assuming that Plaintiff was provided and read the service agreement associate with the purchase and activation of the Sony Ericsson W580i cellular phone, AT&T has not shown what bearing that agreement has on the instant litigation. Plaintiff's purchase and activation of a phone other than that at issue here is plainly irrelevant. As such, the declaration submitted by Gill (filed as Docket Entry #18), AT&T's "Senior Area Manager of the Customer Experience Team and Converged Services group," regarding

---

[4] "Gonzalez Dec., ¶¶__" refers to the paragraphs of Caroline Mahone-Gonzalez' declaration in support of AT&T's Motion to Compel, filed as Docket Entry #20.

the Sony Ericsson phone, which does not relate to Plaintiff's purchase of the purchase or activation of the iPhone at issue here, is equally irrelevant.

Second, according to Gonzalez, on August 31, 2008 Plaintiff "obtained an iPhone 3G from an Apple retain store at Roosevelt Field in Garden City, New York." Gonzalez Dec., ¶5. Plaintiff does not dispute this statement, except to the extent that he believes it is incomplete. Plaintiff maintains that in addition to obtaining the iPhone from the Apple store, an Apple representative took steps to activate the iPhone on his behalf that same day. Koschitzki Aff., ¶3. In addition, Plaintiff does not recall reading or reviewing the service agreement or being given an opportunity to do so on that day. Koschitzki Aff., ¶3. Gonzalez does not dispute this. Her declaration does not address whether Plaintiff read, agreed or signed any form of AT&T service agreement or that one was provided to, or made available for, Plaintiff on that date.

In an effort to endorse Gonzalez's declaration, AT&T submitted the declaration of Terry, "Manager of Daily Operations and Store Support, Apple Retail." Terry Dec., ¶2.[5] Terry stated that any customer who purchases an iPhone from an Apple store must confirm acceptance of AT&T's terms before completing the transaction. Terry Dec., ¶2. According to Terry, an electronic device allows customers to click a box and then sign their name indicating acceptance of AT&T's terms and conditions. Terry Dec., ¶3. Attached to Terry's declaration are copies of the screens purportedly as they "would have appeared to a customer," but those documents do not evidence that Plaintiff viewed or signed any screen. More importantly, there is no evidence that Plaintiff was provided a copy of AT&T's terms and conditions or that they were made available to him (or made available to

---

[5] "Terry Dec., ¶¶__" refers to the paragraphs of TJ Terry's declaration in support of AT&T's Motion to Compel, filed as Docket Entry #19.

any iPhone purchaser for that matter) prior to purportedly clicking or signing the described electronic device.

Quite simply, there is no evidence that Plaintiff read, reviewed or even had access to AT&T's service agreement before purchasing and/or activating his iPhone with AT&T's cellular service – or that the terms and conditions of the service agreement were even available to him. There is likewise no evidence that the service agreement was available to other consumers or that they had an opportunity to read or review it.

The matter of *Trujillo v. Apple Computer* is informative for the purposes of this discussion. *See Trujillo v. Apple Computer*, Case No. 07 C 4946, 2008 U.S. Dist. LEXIS 32128 (N.D. Ill. Apr. 18, 2008); *Trujillo v. Apple Computer,* 578 F. Supp. 2d 979 (N.D. Ill 2008). In *Trujillo*, Plaintiff commenced a class action against Apple and AT&T (the same Defendants here) alleging that the defendants hid mandatory fees for the replacement of the battery in his iPhone. AT&T moved to compel arbitration, citing (like here) its arbitration agreement with a bar on class arbitration proceedings. In support of its motion to compel individual arbitration, AT&T submitted an affidavit stating that AT&T's service agreement was made available in the stores where customers purchased the iPhone and that the agreement was also available online. *Trujillo*, 2008 U.S. Dist. LEXIS 32128, at *4-*5.

Even without a competing affidavit submitted by plaintiff to support the position that the service agreement may not have been available to him, the court nevertheless found the unspecific affidavit to be an insufficient showing that the service agreement was made available to plaintiff at the time of purchase. *Id*. at *7-*8.[6] The court likewise found that the mere availability of the service

---

[6] The court, separately, noted that plaintiff "could not activate the phone via any service provider other than AT&T Mobility." *Trujillo*, 2008 U.S. Dist. LEXIS 32128, at *6.

agreement online did not equate to the terms and conditions being provided (or made available) to the customer. *Id*. at *8. Still, with the issue regarding the availability of the service agreement containing the arbitration clause to plaintiff, the court invited the parties to submit supplemental submissions. *Id*. at *14-*15.

After receiving supplemental affidavits from AT&T and plaintiff, the court rendered its opinion on September, 22, 2008. *Trujillo,* 578 F. Supp. 2d 979. Astoundingly, in its supplemental submissions, AT&T's supplemental affidavit recanted the prior testimony that AT&T's service agreement was made available in the stores where customers purchased the iPhone. *Id*. at 983. Rather, the AT&T in-house counsel that submitted the first affidavit in support of AT&T changed his testimony upon "being informed" that the Apple store from which plaintiff purchased his iPhone did not stock AT&T's service agreement. *Id*. Indeed, in the further supplement to his affidavit, the in-house counsel called into question whether ***any*** Apple stores had the AT&T service agreement available to its customers. *Id*. at 985. The court, therefore, easily concluded that plaintiff "had no access -- none -- to the purported contract upon which that obligation to arbitrate the dispute in this case is claimed to rest, either before or at the time he purchased the iPhone from the Apple store." *Id*. at 983.

There, as here, there was no evidence that plaintiff (or any other iPhone purchaser) had the opportunity to read or review AT&T's service agreement – or that the chance to do so was even presented or offered to any of AT&T's customers.[7]

1. **The Doctrine of Procedural Unconscionability Precludes Defendant from Compelling Plaintiff to Arbitrate His Claims Against AT&T**

_____

[7] At best, from AT&T's perspective, it had a policy in place that may or may not have been carried out as applied to Plaintiff or as applied to any other iPhone purchaser who suffers from the inadequate 3G network.

AT&T's service agreement is procedurally unconscionable for several reasons.[8] First, for the reasons detailed above, there is no evidence that Plaintiff had a chance to review the agreement before purchasing the iPhone from Apple and having it activated with AT&T.

Second, Plaintiff (and other iPhone users) did not have an opportunity to select between AT&T and other service providers to activate his iPhone's cellular capabilities – thereby obviating any meaningful choice in connection with his purported assent or agreement to AT&T's terms and conditions and the individual arbitration provision.

"To determine whether there is procedural unconscionability, courts look at whether a party lacked meaningful choice." Moss, 2007 U.S. Dist. LEXIS 60011 at *13; *see also Gillman,* 73 N.Y.2d 10-11 ("The procedural element of unconscionability requires an examination of the contract formation process and the alleged lack of meaningful choice."); *Brower v. Gateway 2000 Inc.*, 676 N.Y.S.2d 569, 573 (App. Div. 1st Dep't 1998) ("As to the procedural element, a court will look to the contract formation process to determine if in fact one party lacked any meaningful choice in entering into the contract.").

Based upon the information presented to this Court, there is no indication that Plaintiff was provided with an opportunity to read or review AT&T's service agreement. Defendant submitted

---

[8] Defendant argues that the Federal Arbitration Act (the "FAA") mandates the enforcement of the arbitration provision included in AT&T's service agreement – Def. Mem. at 6 – and that when the FAA governs an arbitration provision that covers a potential claim, the court should compel arbitration – Def. Mem. at 7. Not so. The court in *Hayes v. County Bank* held, for example, that "[w]hile the FAA preempts state law on the subject of the enforceability of arbitration agreements a state court may assess the enforceability of such agreements in the same manner as it construes the validity of contracts generally, without contravening the FAA." 811 N.Y.S.2d 741, 743 (App. Div. 2d Dep't 2006) (citing *Fletcher v Kidder, Peabody & Co.*, 81 N.Y.2d 623, 630 (1993)). A court's assessment may include whether "the arbitration agreements are procedurally and substantively unconscionable and therefore unenforceable." *Id.*, citing *Gillman v Chase Manhattan Bank*, 73 N.Y.2d 1, 10 (N.Y. 1988).

declarations indicating that Plaintiff "would be" given the opportunity to view the service agreement under certain policies or procedures. Terry Aff, ¶5. Defendant does not proffer, however, that the stated policies or procedures were carried out in connection with Plaintiff's purchase and activation of his iPhone.[9] Absent evidence that Plaintiff had an opportunity to review AT&T's service agreement, he cannot be procedurally bound by the terms and conditions – namely, the individual class arbitration requirement – contained therein. *See Brower,* 676 N.Y.S.2d 569.

Here, AT&T's exclusive right to provide cellular service to Apple's iPhones substantiates Plaintiff's procedural unconscionability argument. Courts have noted that a consumer's option to utilize the services of a competitor will counterbalance an argument of procedural unconscionability. Here, however, Plaintiff (and other iPhone purchasers) had no alternate option.

In *Shlomo Bar-Ayal v. Time Warner Cable Inc.*, 03 CV 9905 (KMW), 2006 U.S. Dist. LEXIS 75972 (S.D.N.Y. Oct. 16, 2006), the court refused to find procedural unconscionability where plaintiff could not state that he could not obtain the (high-speed) service from another provider, despite his claims that Time Warner had a monopoly. *Id.* at *59 ("'It does not avail plaintiff to argue that the arbitration provision is unconscionable without offering evidence that he could not have chosen another service provider.'") (citing *Ranieri v. Bell Atlantic Mobile*, 759 N.Y.S.2d 448, 449 (App. Div. 1st Dep't 2003)); *see also Advanced Med. & Alternative Care, P.C. v. New York Energy Sav. Corp.*, 9693/08, slip. op. at *4, 2008 N.Y. Misc. LEXIS 7097 (N.Y. Sup. Ct. Dec. 15, 2008) (finding that "[i]t does not avail plaintiff to argue that the arbitration provision is unconscionable without offering evidence that [it] could not have chosen another service provider").

---

[9] As the *Trujillo* matter has shown, *see, supra,* at p. 8, planned or expected procedures are often not implemented. F. Supp. 2d at 983, 985. Accordingly, a declaration stating what would have or should have been provided or made available to Plaintiff cannot suffice as evidence that he did, in fact, read AT&T service agreement or that he was even presented with the opportunity to do so.

Here, however, there is no dispute that AT&T was (and is) the only wireless service provider for Apple's iPhones. Plaintiff had no other choice.

The New York State case law relied on by Defendant in its Motion to Compel is distinguishable on this basis. In *Hayes,* 811 N.Y.S.2d 741 – Def. Mem.[10] at 7, 8 – the court noted that a basis for rejecting plaintiff's procedural unconscionability argument was due to the lack of evidence that plaintiff did not have other lending institutions or banks to go to. In *Ranieri,* 759 N.Y.S.2d at 449 – Def. Mem. at 7, 8 – the court similarly reasoned that "[i]t does not avail plaintiff to argue that the arbitration provision is unconscionable without offering evidence that he could not have chosen another service provider." Unlike the plaintiffs in *Hayes* and *Ranieri*, Plaintiff here could not have chosen another service provider.

The New York State decisional authority cited by Defendant are likewise distinguishable in that those cases do not have evidentiary questions regarding the existence of arbitration agreements and/or whether the consumer had an opportunity to read or review the agreement. *See Hayes,* 811 N.Y.S.2d at 744 (determining that evidence of the loan agreement containing the arbitration clause was not in question); *Tsadilas v. Providian Nat'l Bank*, 786 N.Y.S.2d 478, 480 (App. Div. 1st Dep't 2004) ("Defendants sufficiently proved that it sent the arbitration provision to plaintiff."); *Ranieri,* 759 N.Y.S.2d 448 (noting that the two orders at issue were physically signed by plaintiff); *Brower,* 676 N.Y.S.2d 569 (finding sufficient evidence that customer had ample opportunity to read and review the agreement containing the arbitration clause); Def. Mem. at 7, 8.

In a recent decision by the Supreme Court of Washington, *McKee v. AT&T Corp.*, 164 Wn.2d 372, 401-02 (Wash. 2008), the court affirmed the trial court's conclusion that the agreement

---

[10] "Def. Mem. at __" refers to pages of Defendant AT&T's Motion to Compel.

barring class action was procedurally and substantively unconscionable. With respect to the procedural unconscionability assessment, the Washington Supreme Court noted that there was no evidence that plaintiff was provided with a copy of any agreement at the time he signed up for AT&T's services and there was no evidence that plaintiff customer was actually required to read and sign or affirmatively acknowledge acceptance of the terms and conditions. These facts, according to the court, raised an issue of whether plaintiff had a reasonable opportunity to understand the terms and a meaningful choice.[11]

Plaintiff, in this action, was clearly precluded from having a meaningful choice to enter into the service agreement with AT&T. There is no evidence that Plaintiff was provided with a copy of any service agreement when his iPhone was activated or when he signed up with AT&T. There is likewise no evidence that he affirmatively acknowledged the terms or conditions of AT&T's agreement or, more importantly, that he was even given an opportunity to do so. Finally, AT&T's exclusivity agreement with Apple for providing cellular service for iPhones prevented Plaintiff from choosing an alternative service provider. As such, this Court should conclude that AT&T's ostensible service contract is procedurally unconscionable.

### 2. The Doctrine of Substantive Unconscionability Precludes Defendant from Compelling Plaintiff to Arbitrate His Claims Against AT&T

AT&T's service agreement is substantively unconscionable as it provides the unilateral benefit of arbitration – and, more specifically, individual arbitration – to AT&T. "A contract is substantively unconscionable where its terms are unreasonably favorable to the party against whom

---

[11] In support of its motion to compel arbitration, defendant AT&T Corp. submitted the declarations of two employees, who averred that a specific agreement was sent to plaintiff. A copy of that agreement was attached to their respective declarations. One of the employees later filed an additional declaration, in which he repudiated the filed declaration and the agreement it sought to enforce. *McKee*, 164 Wn.2d at 379, 381.

unconscionability is claimed. While the procedural aspect of unconscionability is shown by reference to the contract formation process, substantive elements of unconscionability appear in the context of the contract per se." *Brennan v. Bally Total Fitness*, 198 F. Supp. 2d 377, 382 (S.D.N.Y. 2002) (citation omitted).

AT&T contends that the arbitration provision contained in its service agreement is pro-consumer. Def. Mem. at 2-3. Noticeably absent from AT&T's argument on this issue is that fact that the arbitration provision not only forces AT&T's out of court, but prevents them from forming a class even in the arbitration setting. As detailed in section C, below, and the cases cited therein, the denial of consumers' right to class actions could render an agreement unconscionable. Additionally, the expert costs associated with litigating this action against AT&T corroborates the unconscionable nature of AT&T's arbitration provision. By precluding class proceedings, AT&T effectively denies any prospective plaintiff from pooling his resources with other plaintiffs and sharing the onus and costs associated with proving the claims against AT&T.

In essence, the purpose of AT&T's service agreement is to discourage any potential plaintiff from commencing an action and to deter any litigation against AT&T for its wrongdoing. Stated otherwise, enforcement of AT&T's arbitration provision and bar against class proceedings would, for all intents and purposes, equate to a free pass for AT&T (or other companies that adopt a similar provision) to take advantage of New York consumers. AT&T's service agreement is, therefore, substantively unconscionable.

### i. AT&T's Improperly Submits an Inadmissible Expert Opinion

To support the supposedly "consumer-friendly" features of AT&T's arbitration provision, Defendant submits the affidavit of a law professor, Richard Nagareda ("Nagareda"), to opine on the terms of the arbitration provision. The submission of testimony such as Nagareda's at the current

stage of this litigation is inappropriate. *Am. Hotel Int'l Group, Inc. v. CGU Ins. Co.*, 01 CV 0654 (RCC), 2002 U.S. Dist. LEXIS 15933 (S.D.N.Y. Aug. 27, 2002) (noting that arguments supported by expert testimony should await summary judgment motion practice); *see also Silberman v. Innovation Luggage, Inc.,* 01 Civ. 7109 (GEL)(DF), 2002 U.S. Dist. LEXIS 18456 (S.D.N.Y. Sept. 30, 2002). At a minimum, Plaintiff should be entitled to discovery relating to the topics at issue in the expert's affidavit. *See In re Bridgestone/Firestone, Inc.*, 131 F. Supp. 2d 1027, 1031 (S.D. Ind. 2001) (holding that where expert affidavits are submitted, discovery on the basis of the experts' conclusions and qualifications was appropriate). Notwithstanding the question of whether Mr. Nagareda's declaration is appropriate at this stage of this litigation, his declaration conspicuously fails to address the existence of an "individual" arbitration requirement and the lack of compensation for the much needed expert testimony in this matter.

Further, Nagareda's declaration is inadmissible under Rule 702 of the Federal Rules of Evidence, *see General Electric Co. v. Joiner*, 522 U.S. 136, 142 (1997), particularly when there has been no opportunity for Plaintiff or this Court to determine the reliability of the expert and the evidence or statements he seeks to introduce. *See Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579, 589 (1993).

Notably, Nagareda has submitted declarations in support of numerous motions to compel arbitration filed by AT&T, in which he opines on the language of the arbitration provisions included in AT&T service agreements. Recently, Nagareda filed a declaration, dated November 19, 2008, in support of such a motion that AT&T filed in an action captioned *Walters v. Apple Computers, Inc., AT&T, Inc. and AT&T Mobility*, Case No. 4:08CV002484-JLH, United States District Court for the Eastern District of Arkansas. Reich Dec., Ex. B. The *Walters* action relates to claims similar to those at issue here. The appropriateness of Nagareda's declaration was not raised as the case was

13

voluntarily dismissed before plaintiff filed an opposition to AT&T's motion to compel arbitration. Reich Dec., Ex. C. In another action, captioned *Larson v. AT&T Mobility LLC f/k/a Cingular Wireless LLC,* Civil Case No. 07-CV-5325 (JLL-ES) and pending in the United States District Court for the District of New Jersey, Nagareda submitted a declaration, dated January 16, 2008, in support of yet another motion to compel arbitration on AT&T's behalf. Reich Dec., Ex. D. There, plaintiff was provided with an opportunity to depose Nagareda relating to his background, expertise, and his opinion on the language of AT&T's arbitration provision at issue. Plaintiff in the *Larson* action, ***with the benefit of Nagareda's testimony***, asked the court to strike his declaration. Reich Dec., Ex. E. (The New Jersey court has not issued a decision on the issue.)[12]

## B. Defendant's Policy Arguments Regarding the FAA's Preemption Rights Fails

Defendants argue that the FAA would preempt a finding by this Court that AT&T's arbitration provision is unconscionable under New York law simply because it calls for individual arbitration. Def. Mem. at 8. In this regard, Defendants likewise argue that such a finding would frustrate the FAA's promotion of arbitrations and "force companies to abandon arbitrations altogether." Def. Mem. at 9-10. Defendants' policy argument ignores the decisional authority in which proscription on class arbitration are deemed unconscionable and, therefore, unenforceable. *See, supra,* __. In addition, there is no indication (and Defendant certainly has not provided any) showing that arbitration has been abandoned in any states where a court has rejected the enforcement of individual arbitration acquirements (*e.g.* California or Florida). Also, the American Arbitration Association ("AAA") has an independent set of rules to dictate its handling of class arbitrations – http://www.adr.org/Classarbitrationpolicy (*see* Reich Dec., Ex. F) – and currently has many pending

---

[12] Plaintiff refers this Court to his Motion to Strike the Declaration of Richard Nagareda for more detailed argument and discussion on this issue.

class arbitrations – http://www.adr.org/sp.asp?id=25562.   A finding in this litigation against enforcement of AT&T's individual arbitration provision would not, therefore, run afoul of the FAA and there is no evidence to support the notion that such a finding would lead companies to abandon arbitration proceedings in New York.

Defendant's reliance on *Gay v. CreditInform*, 511 F.3d 369 (3d Cir. 2007) is likewise misplaced.  Def. Mem. at 9-10.  AT&T argues that, under *Gay*, the FAA preempts any rule of law which holds that an arbitration clause is unconscionable because it contains a class action waiver. Here, Plaintiff does not argue that AT&T's arbitration clause is, in and of itself, unconscionable. Plaintiff argument focuses on the unconscionability of the *ban* against class proceedings, which applies to ***both*** court and arbitration proceedings.  Ideally, Plaintiff's class claims should be litigated in this Court, the proper forum for such actions and the forum in which the class claims against co-defendant Apple will proceed.  Still, Plaintiff appreciates the public policy favoring arbitration and would proceed with a class arbitration should he be Ordered to do so by this Court.  AT&T's purported service agreement, however, bans Plaintiff's right to class proceedings and Plaintiff's challenge of that ban is not preempted by the FAA.

C.     **Courts in Several Jurisdictions Have Held Bans on Class Arbitration to be Unconscionable and Unenforceable**

The courts of several states have held that contractual bans against class action – particular when encompassing bans against arbitration classes – are unenforceable.   These courts have reasoned that class action/arbitration bans are unconscionable, as class arbitration bans (1) are patently unfair to potential plaintiffs who may only be owed a relatively small amount in recovery, and (2) provide security for the companies protected by the provisions to avoid litigation or responsibility for their wrongful conduct.  *See, e.g., Acorn v. Household Int'l, Inc.,* 211 F. Supp. 2d 1160, 1170 (N.D. Cal. 2002) (determining that arbitration clauses banning class treatment are harsh

and unfair to customers who might be owed a relatively small sum of money, and also serve as a disincentive for companies to avoid the type of conduct that might lead to class action litigation); *see also Shroyer v. New Cingular Wireless Serv., Inc.*, 498 F.3d 976, 984 (9th Cir. 2007); *Szetela v. Discover Bank*, 97 Cal. App. 4th 1094 (Cal. Ct. App. 2002). The decision in *Szetela* held that a nominally mutual[13] prohibition on class actions is substantively unconscionable as the bar (i) is meant to prevent customers from seeking redress for wrongs involving small amounts of money; (ii) serves as a disincentive for the defendant to avoid conduct that might lead to class action litigation; and (iii) jeopardizes consumer rights by prohibiting any effective means of litigating challenged business practices.

Here, Plaintiff's claim for damages would certainly be considered relatively small and, absent a right to bring this action on a class-wide basis, few if any iPhone users would undertake the effort to bring a claim. Moreover, even assuming that a plaintiff could find a suitable attorney willing to represent him in an individual arbitration proceeding, the potential costs associated with the retention of experts will act as an additional basis to prevent a plaintiff from pursuing an individual claim. A consumer's action will typically require expert testimony that can include, for instance, an assessment of the defective product or service, the widespread impact of the alleged defect, and the financial value of the alleged defect on consumers. This litigation, just by way of example, could call for an expert in the field of mobile networking, an expert to scrutinize the software associated with Apple's iPhone, an expert to inspect AT&T's High Speed Downlink Packet

---

[13] While the typical arbitration provision is read to be reciprocal, an arbitration provision is far from it. *See Luna v. Household Fin. Corp. III,* 236 F. Supp. 2d 1166, 1179 (W.D. Wash. 2002) (stating that although an arbitration rider's class action provision is nominally mutual, because there is no reasonable possibility that the lender would institute a class action against its borrowers, the provision is effectively one-sided).

Access/Universal Mobile Telephone System (HSDPA/UMTS) technology, and/or an expert to value or assess the damages to Plaintiff (akin to other iPhone users).

To date, the New York Court of Appeals has not ruled on the enforceability, conscionability, or public policy implications of an agreement that requires arbitration while, simultaneously, precluding class actions. However, AT&T's dispute resolution provision, requiring arbitration proceedings to specifically take place on an individual basis, is precisely the sort of ban that more and more courts have taken issue with and found to be unenforceable.

For example, the Federal District Court of Massachusetts, in *Skirchak v. Dynamics Research Corp.*, 432 F. Supp. 2d 175 (D. Mass. 2006), concluded that a ban on class arbitrations was unenforceable. The court reasoned that an arbitration agreement, by eliminating the right to class relief, could contravene the guiding principle behind class actions and result in "chilling the effective protection of interests common to a group." *Id.* at 181 (citation omitted); *see also Kristian v. Comcast Corp.,* 446 F.3d 25, 54 (1st Cir. 2006) (noting that a class action or class arbitration ban effectively bars spreading the cost of litigation, including the costs of experts, among multiple plaintiffs and because these costs can exceed the value of the recovery sought by a plaintiff, the arbitration agreement prohibiting class arbitrations was invalid). "Under Florida law," according to the Eleventh Circuit, "a consumer contract that prohibits class arbitration is unconscionable because it 'preclude[s] the possibility that a group of [a company's] customers might join together to seek relief that would be impractical for any of them to obtain alone.'" *Rollins, Inc. v. Garrett,* 176 Fed. Appx. 968, 969 (11th Cir. 2006), quoting *Powertel, Inc. v. Bexley*, 743 So.2d 570, 576 (Fla. Dist. Ct. App. 1999); *see also Ting v. AT&T*, 182 F. Supp. 2d 902, 938 (N.D. Cal. 2002), *aff'd in relevant part*, 319 F.3d 1126 (9th Cir. 2003) (finding an arbitration clause prohibiting class actions unconscionable and enjoining its enforcement).

17

Here, as stated, the costs associated with hiring experts to support the claims against AT&T could, alone, thwart the filings of arbitrations. The lack of claims for Defendant's wrongdoing would, in essence, accomplish precisely what AT&T had hoped when it inserted the individual arbitration clause in its service agreement: to allow AT&T to shield itself from litigation by its customers and enable AT&T to sell a defective or inferior service to its customers without fear of recourse.

Several state courts have articulated this exact concern. The Supreme Court of New Mexico, in *Fiser v. Dell Computer Corp.*, 188 P.3d 1215, 1221 (N.M. 2008), expressly stated that "[b]y preventing customers with small claims from attempting class relief and thereby circumscribing their only economically efficient means for redress, Defendant's class action ban exculpates the company from wrongdoing." The Supreme Court of Illinois has reached a similar conclusion. *See Kinkel v. Cingular Wireless, LLC*, 223 Ill. 2d 1 (Ill. 2006) (finding that where a company seeks to "insulate itself from liability to a potential class of customers by enforcing a class action waiver in its standard service agreement," the class action waiver is unconscionable and unenforceable).

It is patently unjust for AT&T's customers to have only one method of recourse (arbitration) and then have that method restricted (no class). And, allowing Defendant to hide behind its individual arbitration provision will only embolden AT&T to continue its exploitation of New York consumers. In discussing the basic tenets of class actions and the public policy supporting such proceedings, the United States Supreme Court in *Amchem Prods. v. Windsor*, noted the following:

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

521 U.S. 591, 615 (1997) citing *Mace v. Van Ru Credit Corp.,* 109 F.3d 338, 344 (7th Cir. 1997); *see also Carnegie v. Household Int'l, Inc.*, 376 F. 3d 656, 661 (7th Cir. 2004) (observing that in cases involving small individual damages amounts, the "realistic alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30").

     With this policy in mind, the fact that a class arbitration ban prevents the reduction of costs associated with challenging wrongful corporate practices – by spreading the costs among numerous plaintiffs – flies in the face of the very purpose of the class action mechanism. *See, e.g., Lowden v. T-Mobile, USA, Inc.*, No. C05-1482P, 2006 U.S. Dist. LEXIS 94861, at *4-5 (W.D. Wash. Apr. 13, 2006) quoting *Luna,* 236 F. Supp. 2d at 1179 (A class action prohibition "is likely to bar actions involving practices applicable to all potential class members, but for which an individual consumer has so little at stake that she is unlikely to pursue her claim").

     The Supreme Court of New Jersey analogized class arbitration bans to exculpatory waivers that seek a release from statutorily imposed duty. *Muhammad v. County Bank of Rehoboth Beach, Delaware*, 189 N.J. 1, 23 (N.J. 2006). In doing so, the court in *Muhammad* determined that, like such waivers, class arbitration bans are void as against public policy, because:

> To permit the defendants to contest liability with each claimant in a single, separate suit, would, in many cases give defendants an advantage which would be almost equivalent to closing the door of justice to all small claimants. This is what we think the class suit practice was to prevent.

*Id.* at 20. New Jersey, like New York, has a strong public policy favoring arbitration. Yet, despite the State's long-standing public policy, the State's Supreme Court would not allow the policy to easily expand to include a bar against class proceedings. The court in *Muhammad* explained:

> In our view, New Jersey's public policy favoring arbitration is not determinative of whether a specific class-arbitration waiver is unenforceable. Nothing in the arbitration process requires that claims be brought only by individuals. Moreover, unlike the limited discovery often found in arbitration agreements, class-arbitration waivers do not make arbitration a more streamlined and efficient forum for

adjudicating disputes. One could speculate that class-arbitration waivers are viewed as more efficient because of the likelihood that fewer individual consumers would seek redress than those who would be included as part of a class.

189 N.J. at 23 (citing *Ting,* 182 F. Supp. 2d at 931 n.16).

The policy favoring arbitration should not override the policy against the elimination of class proceedings. As demonstrated herein, courts regularly lean toward protecting the right for litigants to commence a class action, particularly when, without the class action option, the litigants will likely forfeit their claims entirely. Individual claims are often, as is the case here, not financially worthwhile to pursue on an individual basis. Accordingly, arbitration clauses that simultaneously bar class actions are clearly one-sided, unconscionable and, therefore, unenforceable. This Court should not allow an unconscionable agreement – particularly one, such as AT&T's service agreement here, that has its validity called into question – to be a tool used by AT&T to evade a class proceeding for Plaintiff's (and other iPhone users') claims.

IV.     **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant

AT&T's Motion to Compel.

                                    **RIGRODSKY & LONG, P.A.**

DATED:  January 8, 2009


                                    */s/ Mark S. Reich*_____
                                    Mark S. Reich
                                    Joseph Russello
                                    585 Stewart Avenue, Suite 304
                                    Garden City, NY 11530
                                    Tel.: (516) 683-3516

                                            – and –

                                    Seth D. Rigrodsky
                                    Brian D. Long
                                    919 N. Market Street, Suite 980
                                    Wilmington, DE 19801
                                    Tel.: (302) 295-5310
                                    Fax: (302) 654-7530


                                    *Counsel for Plaintiff*

OF COUNSEL:

**STEIN FARKAS & SCHWARTZ LLP**
Aaron M. Stein
Joshua Farkas
1639 E. 13th Street
Brooklyn, NY 11229
Tel: (718) 645-5600
Fax: (718) 645-3767