UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------

AVI KOSCHITZKI, on Behalf of Himself and all
Others Similarly Situated,

                Plaintiff,

        *v.*                                Case No. 1:08-cv-04451-JBW-VVP

APPLE INC. and AT&T MOBILITY LLC,

                Defendants.

------------------------------------------------


## REPLY BRIEF IN SUPPORT OF MOTION OF AT&T

## MOBILITY LLC TO COMPEL ARBITRATION AND DISMISS CLAIMS


CROWELL & MORING LLP
153 East 53rd Street, 31st Floor
New York, NY  10022
(212) 895-4200

MAYER BROWN LLP
1909 K Street, N.W.
Washington, DC 20006
(202) 263-3000

*Counsel for Defendant AT&T*
*Mobility LLC*

Dockets.Justia.com

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................... ii

I.  ATTM HAS DEMONSTRATED THAT KOSCHITZKI AGREED TO ARBI-
    TRATE HIS DISPUTES ................................................................................... 4

    A.  This Dispute Is Within The All-Inclusive Scope Of Both The Arbitration
        Agreement Koschitzki Entered Into Two Days Before His iPhone 3G Pur-
        chase And The Identical Agreement Koschitzki Entered Into After ATTM
        Moved To Compel Arbitration. ............................................................... 4

    B.  ATTM Has Shown—And Koschitzki Has Failed To Rebut—That
        Koschtizki Entered Into A Second Arbitration Agreement When He Pur-
        chased His iPhone 3G ............................................................................ 9

II. KOSCHITZKI'S CONTENTION THAT ATTM'S ARBITRATION PROVI-
    SION IS UNCONSCIONABLE UNDER NEW YORK LAW IS BASELESS ............. 16

    A.  The Court Should Enforce Koschitzki's First And Third Arbitration
        Agreements Because Koschitzki Has Not Even Tried To Show That The
        First Agreement Is Procedurally Unconscionable, And Cannot Make That
        Showing About His Third Agreement. ..................................................... 16

    B.  Koschitzki Has Failed To Show That ATTM's Arbitration Provision Is
        Substantively Unconscionable .............................................................. 18

    C.  Koschitzki Has Failed To Show That His Second Arbitration Agreement
        Is Procedurally Unconscionable ........................................................... 23

III. ANY INTERPRETATION OF NEW YORK LAW THAT WOULD INVALI-
     DATE ATTM'S ARBITRATION CLAUSE IS PREEMPTED BY THE FAA. ............ 26

IV. THE REQUIREMENT IN ATTM'S ARBITRATION PROVISION THAT AR-
    BITRATION TAKE PLACE ON AN INDIVIDUAL BASIS IS NON-
    SEVERABLE .............................................................................................. 28

CONCLUSION ...................................................................................................... 29

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Acquaire v. Canada Dry Bottling*,
906 F. Supp. 819 (E.D.N.Y. 1995) .......................................................................23

*Allied Bruce Terminix Cos. v. Dobson*,
513 U.S. 265 (1995)............................................................................................20

*Almacenes Fernandez, S.A. v. Golodetz*,
148 F.2d 625 (2d Cir. 1945)..........................................................................10, 13

*Baldeo v. Darden Rests., Inc.*,
2005 WL 44703 (E.D.N.Y. Jan. 11, 2005) ...........................................................12

*Bank Julius Baer & Co. v. Waxfield Ltd.*,
424 F.3d 278 (2d Cir. 2005)..................................................................................7

*Bell v. Cendant Corp.*,
293 F.3d 563 (2d Cir. 2002)...................................................................................7

*Bellefonte Reinsurance Co. v. Argonaut Ins. Co.*,
757 F.2d 523 (2d Cir. 1985)..................................................................................11

*Blashka v. Greenway Capital Corp.*,
1995 WL 608284 (S.D.N.Y. Oct. 17, 1995) ..........................................................13

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*,
489 U.S. 141 (1989)............................................................................................27

*Brower v. Gateway 2000, Inc.*,
676 N.Y.S.2d 569 (App. Div. 1998) .....................................................................19

*Brown v. ITT Consumer Fin. Corp.*,
211 F.3d 1217 (11th Cir. 2000) .............................................................................7

*Buckeye Check Cashing, Inc. v. Cardegna*,
546 U.S. 440 (2006).............................................................................................22

*Bunge Corp. v. Williams*,
359 N.E.2d 844 (Ill. App. Ct. 1977) ....................................................................24

*Butvin v. DoubleClick, Inc.*.
2001 WL 228121 (S.D.N.Y. Mar. 7, 2001), *aff'd*, 22 F. App'x 57 (2d Cir. 2001) .................23

*Canada Life Assur. Co. v. Guardian Life Ins. Co.*,
242 F. Supp. 2d 344 (S.D.N.Y. 2003).................................................................10

*Cara's Notions, Inc. v. Hallmark Cards, Inc.*,
140 F.3d 566 (4th Cir. 1998) ..............................................................................7

*Carbajal v. H & R Block Tax Servs., Inc.*,
372 F.3d 903 (7th Cir. 2004) ............................................................................26

*Carideo v. Dell, Inc.*,
520 F. Supp. 2d 1241 (W.D. Wash. 2007)..........................................................21

*Cash Converters USA, Inc. v. Burns*,
1999 WL 98345 (N.D. Ill. Feb. 19, 1999) ...........................................................7

*Crandall v. AT&T Mobility LLC*,
2008 WL 2796752 (S.D. Ill. July 18, 2008) .......................................................22

*Cunningham v. Van Ru Credit Corp.*,
2006 WL 3289775 (E.D. Mich. Nov. 12, 2006) ..................................................14

*David L. Threlkeld & Co. v. Metallgesellschaft Ltd.*,
923 F.2d 245 (2d Cir. 1991)...............................................................................10

*Davidson v. Cingular Wireless LLC*,
2007 WL 896349 (E.D. Ark. Mar. 23, 2007) .......................................................9

*Davis v. Dell, Inc.*,
2008 WL 3843837 (D.N.J. Aug. 15, 2008) .........................................................21

*DeBono v. Wash. Mut. Bank*,
2006 WL 3538938 (S.D.N.Y. Dec. 8, 2006) .......................................................12

*Doctor's Assocs., Inc. v. Jabush*,
89 F.3d 109 (2d Cir. 1996)..................................................................................10

*Douce v. Origin ID TMAA 1404-236-5547*,
2009 WL 382708 (S.D.N.Y. Feb. 17, 2009)..........................................................9

*Douglas v. U.S. Dist. Ct. for Cent. Dist. of Cal.*,
495 F.3d 1062 (9th Cir. 2007), *cert denied*, 128 S. Ct. 1472 (2008).....................21

*Enderlin v. XM Satellite Radio Holdings, Inc.*,
2008 WL 830262 (E.D. Ark. Mar. 25, 2008) ..................................................9, 25

*Eslworldwide.com, Inc. v. Interland, Inc.*,
   2006 WL 1716881 (S.D.N.Y. June 21, 2006) .......................................................8

*Feldman v. Google, Inc.*,
   513 F. Supp. 2d 229 (E.D. Pa. 2007) ...................................................................8

*First Options of Chicago, Inc. v. Kaplan*,
   514 U.S. 938 (1995)..............................................................................................7

*Forrest v. Verizon Commc'ns, Inc.*,
   805 A.2d 1007 (D.C. 2002) ..................................................................................8

*Gillman v. Chase Manhattan Bank*,
   534 N.E.2d 824 (N.Y. 1988)...............................................................................16

*Gilmore v. Shearson/Am. Express Inc.*,
   668 F. Supp. 314 (S.D.N.Y. 1987) .....................................................................13

*Goetsch v. Shell Oil Co.*,
   197 F.R.D. 574 (W.D.N.C. 2000)........................................................................9

*Gold v. Deutsche Aktiengesellschaft*,
   365 F.3d 144 (2d Cir. 2004)..........................................................................11, 12

*Goodlett v. Kalishek*,
   223 F.3d 32 (2d Cir. 2000)..................................................................................19

*Green Tree Fin. Corp. v. Bazzle*,
   539 U.S. 444 (2003).............................................................................................27

*Harris v. Shearson Hayden Stone, Inc.*,
   435 N.E.2d 1097 (N.Y. 1982), *aff'g*, 441 N.Y.S.2d 70 (App. Div. 1981)..............19

*Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.*,
   246 F.3d 219 (2d Cir. 2001)..................................................................................7

*Hayes v. County Bank*,
   811 N.Y.S.2d 741 (App. Div.), *leave to appeal denied*, 857 N.E.2d 1137 (N.Y. 2006) .........20

*Hoodho v. Holder*,
   2009 WL 279654 (2d Cir. Feb. 6, 2009)..............................................................11

*Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*,
   379 F.3d 159 (5th Cir. 2004) ..............................................................................26

*In re Am. Express Merchants' Litig.,*
2009 WL 214525 (2d Cir. Jan. 30, 2009) ..........................................................21, 22

*Int'l Union of Operating Eng'rs v. Flair Builders, Inc.,*
406 U.S. 487 (1972).........................................................................................6

*Interstate Brands Corp. v. Bakery Drivers & Bakery Goods Vending Machs., Local*
*Union No. 550,*167 F.3d 764 (2d Cir. 1999)..............................................6

*Johnston v. Arrow Fin. Servs., LLC,*
2006 WL 2710663 (N.D. Ill. Sept. 15, 2006) ..........................................14

*JPMorgan Chase Bank, N.A. v. Lott,*
2007 WL 30271 (S.D. Miss. Jan. 3, 2007) ..............................................14

*La Salle Bank Nat'l Ass'n v. Kosarovich,*
820 N.Y.S.2d 144 (App. Div. 2006)...................................................20, 27

*Lawlor v. Nat'l Screen Serv. Corp.,*
349 U.S. 322 (1955).........................................................................................22

*Laster v. T-Mobile USA, Inc.,*
2008 WL 5216255 (S.D. Cal. Aug. 11, 2008), *appeal pending,*
No. 08-56394 (9th Cir.) ...............................................................................9

*LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham,*
185 F.3d 61 (2d Cir. 1999).........................................................................11

*Lemmon v. Lincoln Prop. Co.,*
307 F. Supp. 2d 1352 (M.D. Fla. Feb. 23, 2004)....................................7

*Lovey v. Regence BlueShield,*
72 P.3d 877 (Idaho 2003)..............................................................................23

*M&T Mortgage Corp. v. Miller,*
323 F. Supp. 2d 405 (E.D.N.Y. 2004) ......................................................16

*Manning v. Energy Conversion Devices, Inc.,*
833 F.2d 1096 (2d Cir. 1987).........................................................................5

*Mastrobuono v. Shearson Lehman Hutton, Inc.,*
514 U.S. 52 (1995)............................................................................................7

*McKee v. AT&T Corp.*,
  191 P.3d 845 (Wash. 2008)........................................................................24

*McMahan Sec. Co. v. Forum Capital Mkts. L.P.*,
  35 F.3d 82 (2d Cir. 1994)...........................................................................8

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
  473 U.S. 614 (1985)....................................................................................7

*Moss v. Rent-A-Center, Inc.*,
  2007 WL 2362207 (E.D.N.Y. Aug. 15, 2007).........................................23

*Nichols v. Wash. Mut. Bank*,
  2007 WL 4198252 (E.D.N.Y. Nov. 21, 2007).............................11, 16, 22

*Novak v. Overture Servs., Inc.*,
  309 F. Supp. 2d 446 (E.D.N.Y. 2004) ......................................................8

*Novak v. Tucows, Inc.*,
  2007 WL 922306 (E.D.N.Y. Mar. 26, 2007).............................................23

*Oppenheimer & Co. v. Neidhardt*,
  56 F.3d 352 (2d Cir. 1995)..........................................................................5

*Pahuta v. Massey-Ferguson, Inc.*,
  170 F.3d 125 (2d Cir. 1999).......................................................................19

*Perry v. Thomas*,
  482 U.S. 483 (1987)...................................................................................26

*Pleasants v. Am. Express Co.*,
  2007 WL 2407010 (E.D. Mo. Aug. 17, 2007), *aff'd*, 541 F.3d 853 (8th Cir. 2008) ...............14

*Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  7 F.3d 1110 (3d Cir. 1993)...........................................................................7

*Ranieri v. Bell Atl. Mobile*,
  759 N.Y.S.2d 448 (App. Div.), *leave to appeal denied*, 807 N.E.2d 290 (N.Y. 2003) .....19, 25

*Riensche v. Cingular Wireless LLC*,
  2007 WL 3407137 (W.D. Wash. Nov. 9, 2007) ......................................25

*Rivera v. AT&T Corp.*,
  420 F. Supp. 2d 1312 (S.D. Fla. 2006) ....................................................22

*Rochdale Vill., Inc. v. Pub. Serv. Employees Union,*
605 F.2d 1290 (2d Cir. 1979)...................................................................................6

*Rosenfeld v. Port Auth. of N.Y.,*
108 F. Supp. 2d 156 (E.D.N.Y. 2000) .....................................................................25

*Rudolph v. Topsider Bld. Sys., Inc.,*
2006 WL 4702077 (D. Haw. July 26, 2007)............................................................23

*Scone Invs., L.P. v. Am. Third Mkt. Corp.,*
992 F. Supp. 378 (S.D.N.Y. 1998) ..........................................................................10

*Shearson/American Express Inc. v. McMahon,*
482 U.S. 220 (1987)..................................................................................................22

*Shroyer v. New Cingular Wireless Services, Inc.,*
498 F.3d 976 (9th Cir. 2007) ...................................................................................20

*Siebert v. Amateur Athletic Union of the United States, Inc.,*
422 F. Supp. 2d 1033 (D. Minn. 2006).....................................................................8

*Southland Corp. v. Keating,*
465 U.S. 1 (1984)......................................................................................................22

*Steelmasters, Inc. v. Local Union 580 of the Int'l Ass'n of Bridge, Structural Ornamental & Reinforcing Iron Workers,*
2008 WL 312096 (E.D.N.Y. Feb. 1, 2008)..............................................................11

*Tarulli v. Circuit City Stores, Inc.,*
333 F. Supp. 2d 151 (S.D.N.Y. 2004).....................................................................23

*Tinder v. Pinkerton Sec.,*
305 F.3d 728 (7th Cir. 2002) ...................................................................................14

*Trujillo v. Apple Computer, Inc.,*
578 F. Supp. 2d 979 (N.D. Ill. 2008) ......................................................................14

*Tsadilas v. Providian Nat'l Bank,*
786 N.Y.S.2d 478 (App. Div. 2004)....................................................................11, 19

*Watson Wyatt & Co. v. SBC Holdings, Inc.,*
513 F.3d 646 (6th Cir. 2008) .....................................................................................9

*Zink v. Merrill Lynch Pierce Fenner & Smith, Inc.*,
13 F.3d 330 (10th Cir. 1993) ................................................9

*Zola v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
1985 WL 94 (S.D.N.Y. May 28, 1985) ................................14

**STATUTES AND RULES**

9 U.S.C. §§ 1–16 ................................................................3

9 U.S.C. § 2 ......................................................................26

15 U.S.C. §§ 7001 *et seq.* ..................................................8

28 U.S.C. § 1746 ..............................................................11

N.Y. State Tech. Law. §§ 301 *et seq.* ................................8

Fed. R. Evid. 406 ..............................................................13

**OTHER AUTHORITIES**

KENNETH S. BROUN, MCCORMICK ON EVIDENCE (6th ed. 2006)................12

Christopher R. Drahozal, *Arbitration Costs and Contingent Fee Contracts*, 59 VAND. L.
REV. 729 (2006) ................................................................26

2 CHRISTOPHER B. MUELLER & LAIRD C. KIRKPATRICK, FEDERAL EVIDENCE (3d ed.
Supp. 2008) ......................................................................13

Meredith W. Nissen, *Class Action Arbitration*s, 11 DISPUTE RESOLUTION MAGAZINE 19
(Summer 2005) ................................................................27

2 WEINSTEIN'S FEDERAL EVIDENCE (1997) ................................12

Koschitzki does not dispute that he received and accepted the terms of service of AT&T Mobility LLC ("ATTM")—including ATTM's arbitration provision—when he activated a Sony Ericsson telephone for use with ATTM's network. Nor does he deny agreeing to arbitrate when he obtained his iPhone 3G two days later, although he says that he does not remember doing so. And he cannot deny that, the week before he filed his opposition, he yet again agreed to arbitration when he accepted another service agreement online using ATTM's web site.

Although Koschitzki does raise a number of objections to arbitration, his arguments do not withstand even minimal scrutiny. To begin with, Koschitzki attempts to dismiss the arbitration provision he accepted when he activated his Sony Ericsson as "plainly irrelevant" because his lawsuit pertains to his iPhone 3G. But Koschitzki overlooks the all-encompassing scope of the provision, which requires arbitration of "***all*** disputes and claims between" the parties. Case after case confirms that a provision requiring arbitration of "all disputes" means exactly what it says. Thus, it does not matter that Koschitzki entered into his first arbitration agreement before purchasing his iPhone 3G a couple of days later.

For similar reasons, Koschitzki's most recent arbitration agreement covers this dispute. Koschitzki entered into that agreement, which is worded identically to his other arbitration agreements, on December 31, 2008, when he obtained a Blackberry cellular phone from ATTM's web site and accepted ATTM's service agreement. Koschitzki might protest that his December 31 arbitration agreement is inapplicable because he entered into it after purchasing his iPhone and filing this lawsuit. But it is well settled that all-encompassing arbitration clauses—like ATTM's provision, which covers "all disputes and claims"—mandate the arbitration of preexisting disputes.

In short, Koschitzki has entered into three arbitration agreements, and each of those

agreements constitutes an independent basis for compelling arbitration. Accordingly, he may avoid arbitration only if he can show that ***all three agreements*** are invalid. But Koschitzki has come nowhere close to doing so: Indeed, the only one for which he even tries to challenge contract formation is the one in his iPhone 3G service agreement.

In any event, Koschitzki is mistaken in contending that he did not agree to arbitrate when he obtained his iPhone 3G. He first suggests that ATTM did not prove that he signed that agreement. But ATTM is not required to prove what Koschitzki has conceded: He has already alleged in his complaint that, when he "purchased an iPhone," he "signed an agreement for monthly service provided by AT&T." Am. Compl. ¶ 5. Koschitzki is bound by that admission. Moreover, ATTM is submitting Apple's electronic record of Koschitzki's signature with this reply brief. That document conclusively demonstrates that Koschitzki agreed to ATTM's terms of service. Although Koschitzki states in his affidavit that he "do[es] not recall" the opportunity to review ATTM's terms of service when he purchased his iPhone 3G, that equivocal statement falls short of what the Second Circuit requires to justify an evidentiary hearing on whether an arbitration agreement was formed: an "unequivocal denial" combined with some "substantiating evidence."

Koschitzki's unconscionability arguments fare no better, as he cannot meet his burden under New York law of establishing ***both*** procedural and substantive unconscionability. Indeed, because he does not argue that his first arbitration agreement is procedurally unconscionable—and lacks any ground to make that argument about his most recent agreement—his unconscionability challenge should be rejected summarily for failing to allege, much less prove, a requisite element of that defense to contract enforcement. In any event, Koschitzki's contention that his second arbitration agreement is procedurally and substantively unconscionable fails on the mer-

its. He argues that his agreement is procedurally unconscionable because ATTM is the sole service provider for the iPhone 3G and because he does not recall being given the opportunity to review ATTM's terms of service (including the arbitration provision) at the Apple store. But Koschitzki was under no compulsion to buy an iPhone, and his allegation in his complaint reveals that he knew he was agreeing to ATTM's terms of service. His lack of recollection of the details of the transaction does not contradict the affirmative evidence that he was given that opportunity and then executed an electronic signature confirming that he was accepting ATTM's terms. Even if he lacked that opportunity when he purchased his iPhone 3G, he does not deny that he received and accepted the same arbitration provision two days before, when he activated his Sony Ericsson phone. And there can be no doubt that he had an opportunity to review ATTM's service terms when he again agreed to arbitration on December 31, 2008, by accepting ATTM's service terms online when he purchased a Blackberry for use on ATTM's network.

Moreover, Koschitzki's argument that an agreement to arbitrate on an individual basis is substantively unconscionable under New York law has been rejected by *every* New York court to confront it. Koschitzki simply pretends that those cases do not exist, and instead relies on irrelevant decisions applying the law of other states to invalidate arbitration provisions that are markedly less pro-consumer than ATTM's provision.

Moreover, even if this Court were to conclude that ATTM's arbitration provision is unconscionable under New York law merely because it requires individual arbitration, so construed New York law would be preempted by the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16. Koschitzki fails to address our preemption arguments in any meaningful way.

## I.  ATTM HAS DEMONSTRATED THAT KOSCHITZKI AGREED TO ARBITRATE HIS DISPUTES.

Koschitzki argues that ATTM has not established the existence of an agreement requiring him to arbitrate his claims.  He is mistaken.  ATTM has proffered evidence that Koschitzki agreed to arbitrate his disputes with ATTM on at least *three* occasions.  To avoid arbitration, Koschitzki would be required to show that *none* of these three agreements is valid.  That burden is insuperable.

### A.  This Dispute Is Within The All-Inclusive Scope Of Both The Arbitration Agreement Koschitzki Entered Into Two Days Before His iPhone 3G Purchase And The Identical Agreement Koschitzki Entered Into After ATTM Moved To Compel Arbitration.

ATTM's motion to compel arbitration identified two ATTM service agreements containing arbitration provisions that Koschitzki accepted.  The first is the service agreement he accepted through ATTM's Interactive Voice Response ("IVR") phone-activation process when he activated a Sony Ericsson cell phone by following the instructions in the "Quick Start Guide" enclosed with his phone.[1]  The second is the "agreement for monthly service provided by

---

[1]    Koschitzki observes that the declaration of ATTM employee Caroline Mahone-Gonzalez "fails to state if and when Plaintiff was given the opportunity to read the service agreement" he accepted.  Opp. 4.  But Mahone-Gonzalez, a customer care specialist, simply testified to what ATTM's records show: that Koschitzki ordered the Sony Ericsson handset by phone on August 27, 2008 and then activated it on August 29, 2008.  *See* Decl. of Caroline Mahone-Gonzalez ¶ 4.  A different ATTM employee, Adam Gill, submitted a separate declaration describing the routine practices and procedures by which customers receive and then accept their service agreements when they order a cell phone by telephone.  Specifically, Gill explained that such customers receive a Customer Guide enclosed within a Quick Start Guide with the package in which the cell phone is shipped.  Decl. of Adam Gill ¶ 3.  As Gill further explained, the Customer Guide contains ATTM's terms of service and directs the customer to activate the phone by (1) either going online or dialing ATTM's Interactive Voice Response ("IVR") system, (2) providing his or her social security number and zip code, and (3) affirming that he or she accepts the terms in the Guide.  *Id.* ¶¶ 3, 5 & Exs. 1–2.  Moreover, in a supplemental declaration, Mahone-Gonzalez attaches the screenshot of ATTM's records for Koschitzki's account that show that he used the IVR system to activate his Sony Ericsson phone.  Supp. Decl. of Caroline Mahone-Gonzalez ¶ 4 & Ex. 1.

AT&T" that Koschitzki himself alleges he "signed" when he purchased his iPhone 3G. Am. Compl. ¶ 5.

Moreover, after ATTM filed its motion to compel arbitration—which made abundantly clear to Koschitzki that ATTM's terms of service require arbitration—Koschitzki entered into a third service agreement when he used ATTM's web site to purchase a Blackberry Curve for use with ATTM's network. Supp. Decl. of Harry Bennett ¶ 5 & Ex. 2; Supp. Decl. of Caroline Mahone-Gonzalez ¶ 5 & Ex. 2. During that transaction, Koschitzki clicked a box next to the statement, "I have read and agree to the service agreement," which appeared immediately above in a scrollable text box. Supp. Bennett Decl. ¶ 4 & Ex. 1. That agreement contains the same arbitration provision as Koschitzki's previous service agreements.

Each of Koschitzki's three arbitration agreements constitutes an independent basis for granting ATTM's motion to compel arbitration. To begin with, Koschitzki does not challenge the formation of his first arbitration agreement.[2] Instead, he argues that the arbitration provision in his service contract for his Sony Ericsson cell phone is "irrelevant" because his lawsuit pertains to his iPhone 3G, which he bought two days later. Opp. 4–5. That argument is foreclosed by precedent. All three of Koschitzki's service agreements—the one he accepted when he activated the Sony Ericsson phone, the one he accepted when he obtained the iPhone 3G, and the

---

[2]     Because Koschitzki presented no evidence denying that agreement, he is not entitled to an evidentiary hearing on the manner in which the contract was formed. As the Second Circuit has explained, "[a] party resisting arbitration on the ground that no agreement to arbitrate exists must submit sufficient evidentiary facts in support of this claim in order to precipitate" an evidentiary hearing. *Manning v. Energy Conversion Devices, Inc.*, 833 F.2d 1096, 1103 (2d Cir. 1987) (no evidentiary hearing on whether CEO signed arbitration agreement in a personal rather than representative capacity because CEO "has never averred that he signed the Agreement only in his personal capacity."); *see also Oppenheimer & Co. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995) ("If the party seeking arbitration has substantiated the entitlement by a showing of evidentiary facts, the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried.").

one he accepted when he purchased the Blackberry online—contain the same arbitration provision, which requires Koschitzki and ATTM "to arbitrate **all disputes and claims** between us." Gill Decl. Ex. 2, at 14 (emphasis added); *see also* Terry Decl. Ex. 3 at 8; Supp. Bennett Decl. Ex. 2 at 6. To banish any doubt, the next sentence underscores that "[t]his agreement to arbitrate is intended to be broadly interpreted." *Id.* The plain language of each provision thus independently covers **any** lawsuit Koschitzki might file against ATTM, including this one.

Long-standing precedent establishes that "all disputes and claims between" the parties means precisely that—**all** disputes. For example, the Supreme Court has held that an arbitration provision that covers "'any difference * * * between the parties'" is all-inclusive because "[t]here is nothing to limit the sweep of this language or to except any dispute or class of disputes from arbitration." *Int'l Union of Operating Eng'rs v. Flair Builders, Inc.*, 406 U.S. 487, 488, 491 (1972). The Court concluded that "the parties meant what they said—that 'any difference' * * * should be referred to the arbitrator for decision." *Id.* Similarly, the Second Circuit has explained that "[i]f a court finds that the parties have agreed to submit to arbitration disputes 'of any nature or character,' or simply 'any and all disputes,' **all questions** * * * will be properly consigned to the arbitrator." *Rochdale Vill., Inc. v. Pub. Serv. Employees Union*, 605 F.2d 1290, 1295 (2d Cir. 1979) (emphasis added). Two decades later, the Second Circuit confirmed that an arbitration clause that covers disputes concerning "any act or conduct or relation between the parties" to the agreement extends to "matters that go beyond the application and interpretation of the [a]greement" itself. *Interstate Brands Corp. v. Bakery Drivers & Bakery Goods Vending Machs., Local Union No. 550*, 167 F.3d 764, 767–68 (2d Cir. 1999) (internal quotation marks omitted). Time and time again, the Second Circuit and other courts have held that all-inclusive arbitration provisions—similar to ATTM's provision here—govern even those disputes that do

not involve the contract containing the provision.[3]

Even if the scope of Koschitzki's agreement to arbitrate were debatable, the Supreme Court has repeatedly declared that "any doubts concerning the scope of arbitrable issues should be resolved *in favor of arbitration* [when] the problem at hand is the construction of the contract language." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) (emphasis added; internal quotation marks omitted).[4]  In other words, the federal presumption of arbitrability requires courts to order arbitration "unless it may be said with positive assurance

---

[3]     *See also Bank Julius Baer & Co. v. Waxfield Ltd.*, 424 F.3d 278, 282, 285 (2d Cir. 2005) (dispute over contract that did not contain an arbitration provision "plainly falls within the scope" of the parties' earlier agreement to arbitrate any dispute "'arising out of or relating to *any business relationship* between'" them) (emphasis by court); *Bell v. Cendant Corp.*, 293 F.3d 563, 568 & n.3 (2d Cir. 2002) (agreement to arbitrate "'[a]ny controversy arising in connection with or relating to this Agreement * * * or *any other matter or thing*'" is "as broad an arbitration pro-vision as one can imagine" and applies to disputes arising out of a "distinct" contract) (emphasis by court); *accord, e.g., Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217, 1221 (11th Cir. 2000) (arbitration provision that covers "'any dispute'" "includes the universe of the parties' po-tential claims against each other," "with no exceptions"); *Cara's Notions, Inc. v. Hallmark Cards, Inc.*, 140 F.3d 566, 571 (4th Cir. 1998) ("The breadth of the language" of a clause cover-ing "'[a]ny controversy or claim' relating to 'any aspects of the relationship' between" the par-ties "clearly establishes that the arbitration clause was intended to apply to all conflicts between the parties and not only to conflicts regarding [the contract] in particular."); *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1114 (3d Cir. 1993) ("Courts have broadly construed" arbitration provisions that "govern 'all controversies which may arise between'" the parties, "interpreting them to apply to all disputes between signatories."); *Lemmon v. Lincoln Prop. Co.*, 307 F. Supp. 2d 1352, 1353–54 (M.D. Fla. Feb. 23, 2004) (agreement to arbitrate "any claim, dispute or controversy" is "all-inclusive" and covers non-contractual claims); *Cash Converters USA, Inc. v. Burns*, 1999 WL 98345, at *8 (N.D. Ill. Feb. 19, 1999) (claims for breaching contracts without arbitration clauses are within the scope of an arbitration clause in a separate contract that covers "disputes arising from the parties' relationship generally"); *cf. Hart-ford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.*, 246 F.3d 219, 223, 226 (2d Cir. 2001) (agreement to arbitrate "any difference arising between the contracting parties" "merely requires '*any* difference' to trigger arbitration") (emphasis in original).

[4]     *See also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944–45 (1995) ("ambi-guity about * * * 'whether a * * * dispute is arbitrable because it is within the scope of a valid arbitration agreement'" is "resolved in favor of arbitration") (emphasis and internal quotation marks omitted); *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62 (1995) ("ambi-guities as to the scope of the arbitration clause itself [must be] resolved in favor of arbitration") (internal quotation marks omitted).

that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."

*McMahan Sec. Co. v. Forum Capital Mkts. L.P.*, 35 F.3d 82, 88 (2d Cir. 1994) (internal quotation marks omitted).

The same is true of Koschitzki's most recent arbitration agreement, which Koschitzki accepted when he purchased a Blackberry Curve from ATTM's web site. Supp. Mahone-Gonzalez Decl. ¶ 5 & Ex. 2. To complete that online transaction, he would have been required to click a box next to the statement, "I have read and agree to the service agreement." Supp. Bennett Decl. ¶ 4 & Ex. 1. That box and statement appear directly below the text of the service agreement. *Id.* Ex 1.[5] ATTM's records of this transaction constitute incontrovertible proof that Koschitzki agreed yet again to ATTM's all-encompassing arbitration provision.[6] And that provision covers this preexisting dispute, as numerous courts have held. For example, Judge Cote of the Southern District of New York recently analyzed the same ATTM arbitration provision and held that, because "the plain language of the arbitration clause requires both parties to submit any dispute between them, regardless of when they occur, to arbitration," under Second Circuit precedent, "the

---

[5]     In addition, Koschitzki would have received another copy of his service agreement with the shipment containing his Blackberry. Supp. Decl. of Adam Gill ¶¶ 4–5 & Exs. 1–2.

[6]     Contracts that are accepted electronically online are fully enforceable. *See* 15 U.S.C. §§ 7001 *et seq.* (The Electronic Signatures in Global and National Commerce Act); N.Y. State Tech. Law. §§ 301 *et seq.* (The Electronic Signatures and Records Act). Courts routinely enforce online contracts that are accepted by clicking on a box next to a statement that doing so constitutes acceptance of a contract on the web site. *See, e.g., Novak v. Overture Servs., Inc.*, 309 F. Supp. 2d 446, 451–52 (E.D.N.Y. 2004) (clicking acceptance "button" on web page with a "window" displaying the terms and conditions binds the user to the terms); *accord, e.g., Esl-worldwide.com, Inc. v. Interland, Inc.*, 2006 WL 1716881, at *2 (S.D.N.Y. June 21, 2006) (enforcing clickwrap agreement); *Feldman v. Google, Inc.*, 513 F. Supp. 2d 229, 237–38 (E.D. Pa. 2007) ("By clicking on" acceptance "button, Plaintiff indicated assent to the terms" in "scrollable text box"); *Siebert v. Amateur Athletic Union of the United States, Inc.*, 422 F. Supp. 2d 1033, 1039–40 (D. Minn. 2006) ("This Court finds that the 'click' represents assent to the contract, including the arbitration clause."); *Forrest v. Verizon Commc'ns, Inc.*, 805 A.2d 1007, 1010–11 (D.C. 2002) ("clicking an 'Accept' button below the scroll box" containing the contract "provide[s] adequate notice of the [contract's] forum selection clause").

agreement to arbitrate applies to the entirety of [plaintiff's] dispute with ATTM, even though the dispute pre-dates the agreement to arbitrate." *Douce v. Origin ID TMAA 1404-236-5547*, 2009 WL 382708, at *4 (S.D.N.Y. Feb. 17, 2009).[7]

In short, given (i) the all-encompassing scope of the arbitration provision and (ii) the presumption in favor of arbitration, Koschitzki is bound by the arbitration provisions contained in the service agreements that he accepted when he activated his Sony Ericsson cell phone and when he purchased his Blackberry Curve online. Because Koschitzki does not challenge the existence of that first arbitration agreement and cannot deny his most recent one, his challenge to the formation of the arbitration agreement he accepted when he purchased his iPhone 3G is academic.

**B.  ATTM Has Shown—And Koschitzki Has Failed To Rebut—That Koschtizki Entered Into A Second Arbitration Agreement When He Purchased His iPhone 3G.**

In any event, Koschitzki's contention that ATTM has not shown that he accepted the same arbitration provision again when he purchased his iPhone 3G is misguided.

Koschitzki argues that ATTM did not establish the existence of a service agreement in connection with the iPhone 3G because it did not prove "that [he] read, reviewed or even had access" to that agreement "before purchasing and/or activating his iPhone" (Opp. 6), thus creat-

---

[7]     Other federal district courts also have held that the exact same ATTM arbitration provision applies to preexisting disputes. *Laster v. T-Mobile USA, Inc.*, 2008 WL 5216255, at *6-7 (S.D. Cal. Aug. 11, 2008), *appeal pending*, No. 08-56394 (9th Cir.); *Davidson v. Cingular Wireless LLC*, 2007 WL 896349, at *4 (E.D. Ark. Mar. 23, 2007). Courts around the country have likewise concluded that parties can validly agree to arbitrate preexisting claims, so long as the language of the arbitration provision evinces an intent to do so. *See, e.g., Watson Wyatt & Co. v. SBC Holdings, Inc.*, 513 F.3d 646, 649–52 (6th Cir. 2008); *Zink v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 13 F.3d 330, 332 (10th Cir. 1993); *Enderlin v. XM Satellite Radio Holdings, Inc.*, 2008 WL 830262, at *7 (E.D. Ark. Mar. 25, 2008); *Goetsch v. Shell Oil Co.*, 197 F.R.D. 574, 577-79 (W.D.N.C. 2000); *see also* 9 U.S.C. § 2 ("an agreement in writing to submit to arbitration an ***existing controversy*** arising out of * * * a contract [or] transaction * * * shall be valid, irrevocable, and enforceable") (emphasis added).

ing "questions of fact as to whether a valid agreement" was formed (*id.* at 2). The Second Circuit has held, however, that a motion to compel arbitration cannot be denied merely because "issues of fact exist[] as to whether the asserted claims [are] arbitrable." *David L. Threlkeld & Co. v. Metallgesellschaft Ltd.*, 923 F.2d 245, 248 (2d Cir. 1991). The motion can be denied only if those "issues of fact" are actually resolved against the party seeking arbitration. Furthermore, in ruling upon the motion, the court should not "resolve[] all ambiguities in favor of the nonmoving party," as it would when resolving a motion for summary judgment, because "federal policy strongly favors arbitration." *Id.* at 248–49.

Koschitzki next asserts that ATTM was required to prove that he read and accepted ATTM's terms of service (and its arbitration provision). Again, he is mistaken: ATTM's burden under settled Second Circuit law is merely to "show[] at least prima facie" that the parties agreed to arbitrate. *Almacenes Fernandez, S.A. v. Golodetz*, 148 F.2d 625, 628 (2d Cir. 1945); *see also, e.g.*, *Doctor's Assocs., Inc. v. Jabush*, 89 F.3d 109, 114 (2d Cir. 1996). The burden then shifts to Koschitzki to produce "an unequivocal denial that the agreement ha[s] been made" and "some evidence * * * to substantiate the denial." *Almacenes*, 148 F.2d at 628; *see also, e.g.*, *Jabush*, 89 F.3d at 114; *Canada Life Assur. Co. v. Guardian Life Ins. Co.*, 242 F. Supp. 2d 344, 354 (S.D.N.Y. 2003); *Scone Invs., L.P. v. Am. Third Mkt. Corp.*, 992 F. Supp. 378, 381 (S.D.N.Y. 1998).

ATTM has made its required prima facie showing. ATTM has provided Apple's electronic record showing that Koschitzki (i) checked a box marked "AT&T Terms and Conditions" on a handheld device screen stating "Ask Customer to read Agreement and sign" (Terry Decl.

Ex. 1), and (ii) signed his name on a succeeding screen (Supp. Decl. of TJ Terry Ex. 1, at 3).[8] There can be no dispute that Koschitzki signed the handheld device with full knowledge that he was agreeing to a contract with ATTM: Koschitzki is bound by his allegation in his complaint that he "signed an agreement for monthly service provided by AT&T" (Am. Compl. ¶ 5).[9]

As a matter of New York law, "'a party who signs or accepts a written contract is ***conclusively presumed*** to know its contents and to assent to them,'" "'in the absence of fraud or other wrongful acts on the part of another contracting party'"—none of which is alleged here. *Nichols v. Wash. Mut. Bank*, 2007 WL 4198252, at *7 (E.D.N.Y. Nov. 21, 2007) (quoting *Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 149 (2d Cir. 2004) (emphasis added; brackets omitted)); *accord, e.g.*, *Tsadilas v. Providian Nat'l Bank*, 786 N.Y.S.2d 478, 480 (App. Div. 2004) ("Plaintiff is bound by the arbitration provision even if she did not read it."). This conclusive presumption applies even when the signed document "incorporate[s] by reference" an arbitration provision "that may be found" in another document, "***irrespective of whether [the plaintiff] received a copy*** of the" document containing the arbitration clause. *Steelmasters, Inc. v. Local Union 580 of the Int'l Ass'n of Bridge, Structural Ornamental & Reinforcing Iron Workers*, 2008 WL 312096, at *4 (E.D.N.Y. Feb. 1, 2008) (emphasis added; citing cases). As Judge Chin of the

---

[8] Koschitzki disparages Terry's testimony and the testimony of ATTM's other declarants as "unsworn declarations." Opp. 4. But Terry signed and dated his declaration under the statement: "I declare under penalty of perjury that the foregoing is true and correct." Terry Decl. at 2; *see also* Decl. of Theodore Weiman at 2; Decl. of Richard A. Nagareda at 7; Decl. of Harry Bennett at 2; Mahone-Gonzalez Decl. at 2; Gill Decl. at 2. This affirmation tracks the language suggested by 28 U.S.C. § 1746. Any signed and dated declaration that "substantially complies" with Section 1746 has the "like force and effect" that a sworn affidavit would. *LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham*, 185 F.3d 61, 65–66 (2d Cir. 1999).

[9] That allegation constitutes a judicial admission that binds Koschitzki. As the Second Circuit just reiterated: "Admissions by parties are not subject to judicial scrutiny to ensure that the admissions are fully supported by the underlying record." *Hoodho v. Holder*, 2009 WL 279654, at *5 (2d Cir. Feb. 6, 2009); *see also, e.g.*, *Bellefonte Reinsurance Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528–29 (2d Cir. 1985) (plaintiff bound by "assertion of fact" in complaint).

Southern District explained in enforcing an employment arbitration agreement, "even if he only received the last page, plaintiff is bound by the conditions of the Agreement once he signed it" because "[u]nder New York law * * *, it was his responsibility to raise [any questions] prior to placing his signature on that document." *DeBono v. Wash. Mut. Bank*, 2006 WL 3538938, at *2 (S.D.N.Y. Dec. 8, 2006).[10] The undisputed fact that Koschitzki signed his name with knowledge that he was accepting ATTM's terms of service conclusively establishes that he accepted and is bound by those terms.

Even if this conclusive presumption did not apply here, ATTM satisfied its prima facie burden of establishing that Koschitzki entered into an arbitration agreement when he purchased his iPhone 3G. As TJ Terry, Apple's senior manager of store operations, has explained, a customer must mark a box marked "AT&T Terms and Conditions" and write his or her signature on a "handheld EZ Pay device" in order to accept AT&T's service agreement (Terry Decl. ¶ 4). Apple's records reflect that Koschitzki did just that. Terry Supp. Decl. ¶ 3 & Ex. A. Moreover, as Terry describes in his declaration, the general procedure in Apple stores is to offer to provide iPhone 3G purchasers with the terms of AT&T's service agreement. *See* Terry Decl. ¶¶ 5–6. This "evidence" of the "routine practice of an organization" (Fed. R. Evid. 406) "is particularly persuasive in the business context because of the profit-driven need for regularity." 2 WEINSTEIN'S FEDERAL EVIDENCE § 406.03[1] (1997).[11] Accordingly, courts routinely hold that a

---

[10] *See also Gold*, 365 F.3d at 149–50 (employee was bound to NASD rules incorporated by arbitration agreement that he signed despite his "failure to fully read and [ask] questions" about "the forms"); *Baldeo v. Darden Rests., Inc.*, 2005 WL 44703, at *5 (E.D.N.Y. Jan. 11, 2005) ("[E]ven had [the employee] never received the handbook [containing the arbitration clause], her failure to review it would not allow her to avoid her [arbitration] agreement" because she had "signed the Acknowledgment form stating that" she agreed "to the terms and conditions" in the handbook).

[11] *Accord, e.g.*, KENNETH S. BROUN, MCCORMICK ON EVIDENCE § 195 (6th ed. 2006) (courts generally accept "evidence of the 'custom' of a business organization," in part because

company employee's affidavit describing the procedure under which a customer "would have been required" to accept arbitration "before he could open and maintain" an account adequately proves that any particular customer agreed to arbitrate. *Zola v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 1985 WL 94, at *1 (S.D.N.Y. May 28, 1985); *see also, e.g.*, *Blashka v. Greenway Capital Corp.*, 1995 WL 608284, at *2, *5 (S.D.N.Y. Oct. 17, 1995) (testimony that "Greenway's regular business practice [is] not to permit trading in a customer's account unless and until the account application and agreement," including its arbitration provision, "have been approved" is sufficient to prove that the customer "either signed such an agreement or authorized someone else to sign on his behalf," "even though a signed agreement cannot be located").

As a matter of law, Koschitzki has not created a factual dispute warranting an evidentiary hearing on whether he agreed to arbitration when he purchased his iPhone 3G . Koschitzki never says that he did not read (or did not have the opportunity to read) ATTM's terms of service. Instead, he says merely that he "does not recall" whether he did. Opp. 2; Aff. of Avi Kochitzki ¶ 3. But his lack of memory falls far short of the "***unequivocal denial***," with substantiating "evidence," that the Second Circuit requires. *Almacenes*, 148 F.2d at 628 (emphasis added). *See also, e.g.*, *Gilmore v. Shearson/Am. Express Inc.*, 668 F. Supp. 314, 320 (S.D.N.Y. 1987) (compelling arbitration even though plaintiff "has no recollection of even having seen the [arbitration] agreement, much less having signed it"); *Zola*, 1985 WL 94, at *3 ("Zola's asserted failure of recollection is insufficient to raise a substantial issue under the rule declared in *Almacenes* and

---

"the need for regularity in business and the organizational sanctions which may exist when employees deviate from the established procedures give extra guarantees that the questioned activity followed the usual custom"); 2 CHRISTOPHER B. MUELLER & LAIRD C. KIRKPATRICK, FEDERAL EVIDENCE § 4:48 (3d ed. Supp. 2008) (Evidence of "organizational routine" is "reliab[le]" because "responsible people perform their tasks to earn a living, and they do similar things over and again. Where the organization is a private business, efficiencies encouraged by competitive pressure enhance the reliability of such proof.").

subsequent cases.").[12]  This is all the more true given that Apple has produced a record of Koschitzki's signature and acceptance of AT&T's terms and conditions of service on the hand-held "EZ Pay" device.

As a last resort, Koschitzki points to irrelevant and inadvertent factual deficiencies in a declaration ATTM had submitted in an unrelated case.  *See* Opp. 6 (citing *Trujillo v. Apple Computer, Inc.*, 578 F. Supp. 2d 979 (N.D. Ill. 2008)).  In that case, an in-house lawyer at ATTM had submitted a declaration describing the contracting process for first-generation iPhones, which turned out to be incorrect as applied to the Apple store from which the plaintiff in that case had bought his phone.  ATTM informed the *Trujillo* court of these errors as soon as it became aware of them.

The inadvertent errors in that case are irrelevant here for several reasons.  ***First***, this case does not involve a declaration from an ATTM lawyer concerning Apple's practices.  The proof in this case comes from individuals with specialized knowledge of the facts to which they attest,

---

12      *Accord, e.g.*, *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 732, 736 (7th Cir. 2002) (affidavit that employee "does not remember receiving or seeing the brochure" requiring arbitration "does not raise a genuine issue whether the brochure was distributed to her" pursuant to employer's standard practice of distributing the brochure with employees' paychecks); *Pleasants v. Am. Express Co.*, 2007 WL 2407010, at *3 (E.D. Mo. Aug. 17, 2007) (plaintiff's "affidavit that 'to the best of [her] recollection' the Terms and Conditions page that contained the arbitration clause did not accompany her cards * * * is not sufficient to overcome" defendant's evidence that, "pursuant to company policy," the mailing would have included the terms), *aff'd*, 541 F.3d 853 (8th Cir. 2008); *JPMorgan Chase Bank, N.A. v. Lott*, 2007 WL 30271, at *3–*4 (S.D. Miss. Jan. 3, 2007) (testimony that customer "did not recall" signing an arbitration agreement was insufficient to rebut evidence of car dealer's practice of requiring "every customer purchasing a vehicle" to sign one, even though the actual agreement could not be found); *Cunningham v. Van Ru Credit Corp.*, 2006 WL 3289775, at *2 (E.D. Mich. Nov. 12, 2006) ("Plaintiff has failed to provide any evidence challenging Defendants'" proof that it would have mailed an arbitration agreement in the usual course of business because "Plaintiff merely states that he does not remember if he received the notice[.]"); *Johnston v. Arrow Fin. Servs., LLC*, 2006 WL 2710663, at *4 (N.D. Ill. Sept. 15, 2006) (testimony that plaintiffs "simply 'do not recall' receiving them * * * is simply not sufficient to rebut the presumption that Capital One mailed Customer Agreements containing valid arbitration clauses" per its usual procedure).

including an Apple employee with knowledge of how Apple's retail stores function. Apart from innuendo, Koschitzki identifies no reason to question the accuracy or veracity of their statements. **Second**, the issue in *Trujillo* related to the manner in which *first*-generation iPhones were sold in Apple stores—where contract formation did not occur until the customer later activated the phone using his or her own computer. *Id.* at 981–86, 992. That concern does not exist here. Customers such as Koschitzki who buy *second*-generation iPhone 3Gs must manifest their acceptance of ATTM's terms before completing the purchase at the store. Terry Decl. ¶ 3. **Third**, unlike the plaintiff in *Trujillo*, Koschitzki had received and accepted ATTM's terms of service two days before buying his iPhone when he activated another cell phone. That one declarant in one case made an inadvertent error does not provide grounds for a different customer who entered into his contract in a different manner to avoid his contract. In short, Koschitzki's challenge to the existence of his arbitration agreement amounts only to an assertion that he does not remember what took place during the contracting process. That does not suffice to rebut ATTM's prima facie showing that he agreed to arbitrate.

## II.   KOSCHITZKI'S CONTENTION THAT ATTM'S ARBITRATION PROVISION IS UNCONSCIONABLE UNDER NEW YORK LAW IS BASELESS.

Koschitzki also argues that the arbitration provision in ATTM's service agreement is unconscionable under New York law. Opp. 8–12. That contention is meritless for multiple reasons. First, he does not attempt to show that his first arbitration agreement—which he entered into when he activated his Sony Ericsson phone—is procedurally unconscionable. And he cannot make that showing for his third, most recent arbitration agreement, which he accepted online after ATTM moved to compel arbitration. Because New York law requires a party challenging an arbitration agreement to prove both procedural and substantive unconscionability, Koschitzki's challenge to his first and third arbitration agreement fails, and that agreement must

be enforced without regard to Koschitzki's attack on his second arbitration agreement, which he accepted when he purchased his iPhone 3G. But even if his challenge to the arbitration provision in his iPhone 3G service agreement were not moot, it misfires completely. New York courts have squarely rejected Koschitzki's contention that an agreement to arbitrate on an individual basis is substantively unconscionable. That alone defeats his challenge to his second arbitration agreement. Moreover, his two procedural unconscionability arguments—that he had no chance to review his contract before signing it, and that he could not obtain an iPhone 3G from another carrier—lack either evidentiary support or any basis in New York law.

> **A.** **The Court Should Enforce Koschitzki's First And Third Arbitration Agreements Because Koschitzki Has Not Even Tried To Show That The First Agreement Is Procedurally Unconscionable, And Cannot Make That Showing About His Third Agreement.**

Koschitzki asserts that ATTM's arbitration provisions are substantively unconscionable, and also argues that the manner in which he agreed to arbitrate when he subscribed to ATTM's wireless service for his iPhone 3G is procedurally unconscionable. Opp. 8–12, 15–20. As we explain below (*see* Parts II(B) and (C)), both arguments are meritless. They are also beside the point, because Koschitzki never contends that the manner in which he first agreed to arbitrate—*i.e.*, when he activated his Sony Ericsson cell phone—is procedurally unconscionable. That omission alone is fatal to Koschitzki's unconscionability challenge. Under New York law, Koschitzki has the burden of proving "***both*** procedural[] and substantive[] unconscionab[ility]" in order to avoid enforcement of his arbitration agreements. *Nichols*, 2007 WL 4198252, at *8 (emphasis added); *see also M&T Mortgage Corp. v. Miller*, 323 F. Supp. 2d 405, 412–13 (E.D.N.Y. 2004); *Gillman v. Chase Manhattan Bank*, 534 N.E.2d 824, 828 (N.Y. 1988).

Nor are Koschitkzi's attacks (*see* Opp. 8) on the formation of his second arbitration agreement—when he obtained his iPhone 3G—applicable to the manner in which Koschtizki

accepted ATTM's terms of service when he received his Sony Ericsson phone and his Black-berry. Koschitzki activated ATTM service for his Sony Ericsson cell phone by using ATTM's IVR System. Mahone-Gonzalez Decl. ¶ 4; Supp. Mahone-Gonzalez Decl. Ex. 1 at 1. As de-scribed above (at 4 & n.1), Koschitzki would have received ATTM's terms of service at the same time that he received the Sony Ericsson phone. Gill Decl. ¶¶ 3–5. And in order to activate his service on that phone, he was required to call the IVR system, verify his identity with his social security number and zip code, and push a particular button on his phone to confirm that he had accepted ATTM's terms of service. *See id.* ¶ 6. ATTM's records confirm that Koschitzki did so. Supp. Mahone-Gonzalez Decl. Ex. 1 at 1.

Moreover, as described above, to complete the online transaction to purchase his Black-berry, Koschitzki would have been required to click a box next to the statement, "I have read and agree to the service agreement." Supp. Bennett Decl. ¶ 4 & Ex. 1. That box and statement ap-pear directly below the text of the service agreement in a scrollable text box, the contents of which could be printed by clicking on a link just above the text box marked: "View the printable service agreement." *Id.* Ex 1. Although the terms of that agreement assuredly were familiar to Koschitzki—as ATTM had filed its motion to compel arbitration over a month earlier—even a first-time reader would notice ATTM's arbitration provision. The first few lines of the agree-ment that are visible in the text box highlight the arbitration provision:

> By checking "I have read and agree to the service agreement," you will be bound to the following for a two-year term (renewable in accordance with the Terms of Service):
>
> 1) The Terms of Service, including the binding arbitration clause (below);
>
> 2) The "Plan Terms" and other information regarding your voice and data plans * * *.

*Id.* Ex. 1, at 1. Other than the length of the customer's commitment, no other contractual provision receives such prominent billing.

In sum, because Koschitzki has failed even to allege that his first arbitration agreement is procedurally unconscionable, and cannot allege that his third arbitration agreement is procedurally unconscionable, the Court should enforce those agreements, and need not consider the enforceability of Koschitzki's second arbitration agreement.

### B. Koschitzki Has Failed To Show That ATTM's Arbitration Provision Is Substantively Unconscionable.

Even if the Court were to consider Koschitzki's unconscionability challenge to his second arbitration agreement, that challenge fails because New York law decisively rejects his contention that agreements to arbitrate on an individual basis are substantively unconscionable. Opp. 11–12, 15–20. Koschitzki insists that this Court would be writing on a clean slate, claiming that "the New York Court of Appeals has not ruled on" this issue (*id.* at 17) and pointing to cases from other jurisdictions striking down agreements to arbitrate on an individual basis under the laws of other states (*id.* at 15–20). He is badly mistaken. In fact, the question has long been settled under New York law. Moreover, the non-New York decisions that Koschitzki cites are not only irrelevant here; they are distinguishable because they involved markedly less pro-consumer arbitration provisions than ATTM's provision.

As an initial matter, Koschitzki's suggestion that the New York Court of Appeals has not weighed in on the enforceability of individual-arbitration agreements is mistaken. As we explained in our opening memorandum (at 7–8), in *Harris v. Shearson Hayden Stone, Inc.*, the New York Court of Appeals affirmed, "for the reasons stated in the [Appellate Division's] opinion," a First Department decision rejecting the argument that Koschitzki makes here—namely, that New York law prohibits enforcement of an arbitration provision that precludes customers

from pursuing claims on behalf of a class. 435 N.E.2d 1097, 1097 (N.Y. 1982), *aff'g*, 441 N.Y.S.2d 70, 75 (App. Div. 1981). "[U]nless and until the Court of Appeals disavows" *Harris*, this Court is "bound to apply it." *Goodlett v. Kalishek*, 223 F.3d 32, 36 (2d Cir. 2000).

Moreover, *Harris* does not stand alone. As we explained in our opening memorandum (at 7–8), the New York intermediate appellate courts that have addressed the question have consistently held that contracts that require arbitration to be conducted on an individual basis are fully enforceable—and the Court of Appeals consistently has denied review.[13] In fact, the Second Department—which oversees the courts for Nassau County (where Koschitzki lives (Am. Compl. ¶ 5))—has held that "the fact that [an] arbitration agreement[] effectively preclude[s a consumer] from pursuing a class action does not alone render [the agreement] substantively unconscionable." *Hayes v. County Bank*, 811 N.Y.S.2d 741, 743 (App. Div.), *leave to appeal denied*, 857 N.E.2d 1137 (N.Y. 2006). Even putting the New York Court of Appeals' decision in *Harris* aside, this Court is "bound * * * to apply the law as interpreted by New York's intermediate appellate courts" in the absence of "***persuasive evidence*** that the New York Court of Appeals * * * would reach a different conclusion." *Pahuta v. Massey-Ferguson, Inc.*, 170 F.3d 125, 134 (2d Cir. 1999) (emphasis added). Koschitzki has offered ***no evidence***, much less persuasive evidence, to suggest that the New York Court of Appeals would overrule the decisions enforcing agreements to arbitrate on an individual basis and hold that ATTM's provision is substantively unconscionable. Nor could he: To avoid enforcement of his arbitration agreement on the ground that it is substantively unconscionable, Koschitzki would be required to prove that "no reasonable and competent person would accept [its] terms, which are so inequitable as to shock the

---

[13]     *See, e.g.*, *Tsadilas v. Providian Nat'l Bank*, 786 N.Y.S.2d 478, 480 (App. Div. 2004), *leave to appeal denied*, 832 N.E.2d 1189 (N.Y. 2005); *Ranieri v. Bell Atl. Mobile*, 759 N.Y.S.2d 448, 449 (App. Div.), *leave to appeal denied*, 807 N.E.2d 290 (N.Y. 2003); *Brower v. Gateway 2000, Inc.*, 676 N.Y.S.2d 569, 573 (App. Div. 1998).

conscience." *La Salle Bank Nat'l Ass'n v. Kosarovich*, 820 N.Y.S.2d 144, 146 (App. Div. 2006) (internal quotation marks omitted). He has come nowhere close to meeting that burden.

Even if Koschitzki's arguments were not foreclosed by precedent, they fail on their own terms. For example, Koschitzki argues that ATTM's arbitration provision gives ATTM a "unilateral benefit" (Opp. 11) by "discourag[ing] any potential plaintiff from commencing an action" (*id.* at 12). Specifically, he asserts, when damages are "relatively small," customers cannot attract an attorney or afford to hire experts without a class action (*id.* at 16). But Koschitzki overlooks the pro-consumer features of ATTM's arbitration provision, which respond to such concerns. Under ATTM's provision, customers arbitrate for free and can receive any remedy a court could award (such as statutory attorneys' fees and costs). In addition, a New York customer who recovers more than ATTM's last settlement offer but less than $5,000 is entitled to $5,000, double attorneys' fees, and expenses (including expert witness fees). *See* Arb. Mem. 3. These features of ATTM's arbitration provision operate to encourage customers to pursue even small claims in individual arbitration and for attorneys to represent them. In any event, the Supreme Court has rejected the notion that businesses "unilateral[ly] benefit" from arbitration provisions. As the Court explained, without arbitration, "the typical consumer who has only a small damages claim (who seeks, say, the value of only a defective refrigerator or television set)" would be left "without any remedy but a court remedy, the costs and delays of which could eat up the value of an eventual small recovery." *Allied Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 281 (1995). ATTM customers like Koschitzki similarly benefit from arbitration.

Moreover, the non-New York cases on which Koschitzki relies are by no means persuasive evidence that the New York Court of Appeals would refuse to enforce ATTM's arbitration provision. For example, although Koschitzki cites the Ninth Circuit's decision in *Shroyer v. New*

*Cingular Wireless Services, Inc.*, 498 F.3d 976 (9th Cir. 2007) (cited at Opp. 16), the Ninth Circuit has recognized that "class action waiver provision[s] * * * aren't substantively unconscionable under New York law." *Douglas v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 495 F.3d 1062, 1068 (9th Cir. 2007), *cert denied*, 128 S. Ct. 1472 (2008). Moreover, none of the decisions that Koschitzki cites (Opp. 15–20) involved an arbitration provision that, like ATTM's provision, provides special premiums to encourage consumers and their attorneys to pursue small claims. Indeed, courts in several of the states whose laws Koschitzki invokes have enforced less generous individual-arbitration agreements than the one at issue here.[14]

In sum, New York law is clear that agreements to arbitrate on an individual basis are not substantively unconscionable. Because Koschitzki must prove both substantive and procedural unconscionability, his attack on his second arbitration agreement cannot succeed.[15]

---

[14]  *See, e.g., Davis v. Dell, Inc.*, 2008 WL 3843837, at *4 (D.N.J. Aug. 15, 2008) (agreement requiring individual arbitration was enforceable under New Jersey law because plaintiff sought recovery between $1,000 and $3,000); *Carideo v. Dell, Inc.*, 520 F. Supp. 2d 1241, 1248-49 (W.D. Wash. 2007) (agreement requiring individual arbitration that limited customer's share of arbitration costs was enforceable under Washington law because customer sought damages between $1,300 and $1,700); *Rivera v. AT&T Corp.*, 420 F. Supp. 2d 1312, 1322 (S.D. Fla. 2006) (agreement requiring individual arbitration was enforceable under Florida law because plaintiffs could seek full attorneys' fees in arbitration or proceed in small claims court); Mem. & Order at 10, *Crandall v. AT&T Mobility LLC*, 2008 WL 2796752, at *5 (S.D. Ill. July 18, 2008) (enforcing less pro-consumer arbitration provision of predecessor of ATTM because "Plaintiffs have not shown that their inability to pursue these claims on a class-wide basis effectively denies them legal recourse").

[15]  The Second Circuit recently invalidated an agreement between American Express and merchants that required individual arbitration. *In re Am. Express Merchants' Litig.*, 2009 WL 214525 (2d Cir. Jan. 30, 2009). That decision has no bearing here. To begin with, it did not apply New York unconscionability law. Rather, the Second Circuit held that the class waiver at issue was unenforceable because, under the specific facts of that case (*see id.* at *17–*18), the waiver "would grant AmEx de facto immunity from [federal] antitrust liability" (*id.* at *17). Specifically, the court pointed to evidence in the record that, while each plaintiff stood to gain about $9,000 in an individual action, his or her costs in expert fees alone "would be at least several hundred thousand dollars, and might exceed $1 million." *Id.* at *14. The plaintiffs in that case could not recover such expert fees in arbitration under the AmEx provision because the federal antitrust laws do not give prevailing plaintiffs the statutory right to recover such fees. *Id.* at

## C.     Koschitzki Has Failed To Show That His Second Arbitration Agreement Is Procedurally Unconscionable.

Koschitzki also cannot demonstrate that his second arbitration agreement is procedurally unconscionable—much less to the high degree that is required under New York's "sliding scale" approach to unconscionability.  *Nichols*, 2007 WL 4198252, at *8 (internal quotation marks omitted).  Under this approach, the less "imbalance in a contract's terms," the "more questionable the meaningfulness of choice" must be for the contract to be set aside.  *Id.*  As we have just shown, ATTM's arbitration provision is not substantively unconscionable under New York law at all.  But assuming *arguendo* that Koschitzki could show some modicum of substantive unconscionability, it would be, at most, on the low end of the spectrum of substantive unconscionability.  Accordingly, the provision must rise high on the spectrum of procedural unconscionability for it to be unenforceable.  Koschitzki contends that the manner in which he contracted for ATTM service for his iPhone 3G was unfair for two reasons:  (i) he purportedly lacked access to ATTM's terms of service before accepting them and (ii) ATTM's status as the "exclusive" car-

---

*15.  Here by contrast, Koschitzki can feasibly pursue his far simpler claims—which involve no antitrust allegations—in individual arbitration.  Indeed, even if he needed expert testimony to pursue his claims, ATTM's arbitration provision entitles him to recover those costs if the arbitrator awards him more than ATTM's written settlement offer—regardless of whether that expense would be recoverable in court.  *See* Arb. Mem. 3.  Moreover, while **Congress** can "evince[] an intention to preclude a waiver of judicial remedies" and thus render arbitration agreements unenforceable (*see Shearson/American Express Inc. v. McMahon*, 482 U.S. 220, 227 (1987)), state law cannot do so.  Thus, although Koschitzki has not invoked any purported New York public policy against individual arbitration—and no such policy exists—the FAA would prohibit the invalidation of ATTM's arbitration provision on that basis.  *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 446 (2006) ("in *Southland* [*Corp. v. Keating*, 465 U.S. 1 (1984)], * * * [w]e simply rejected the proposition that the enforceability of the arbitration agreement turned on the state legislature's judgment concerning the forum for enforcement of the state-law cause of action").  Indeed, the Second Circuit implicitly recognized this point, making clear that its decision was based on federal policy.  *In re Am. Express Merchants' Litig.*, 2009 WL 214525 at *16 ("[A]n agreement which in practice acts as a waiver of future liability under the federal antitrust statutes is void as a matter of public policy" in light of the "'public interest in vigilant enforcement of the antitrust laws.'" (quoting *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 329 (1955)); *see also id.* at *17.

rier for the iPhone 3G allegedly deprived him of a "meaningful choice." Opp. 8–9. Neither argument is sufficient to show procedural unconscionability to any degree.

Koschitzki's argument that he lacked an opportunity to review his agreement before accepting it fails for the same reasons that his challenge to the existence of an arbitration agreement does. *First*, it is unsupported by evidence; Koschitzki's testimony is merely that he "do[es] not recall being offered" ATTM's terms (Koschitzki Aff. ¶ 3), which does not contradict ATTM's showing that he did have that opportunity. *See* pages 10–14, *supra*. *Second*, even if he had not been offered a copy of the terms, it is settled law in New York that a contract is not procedurally unconscionable simply because one party signs the contract without reading it. Rather, "the burden was upon" Koschitzki "to have [his] concerns addressed before" he "sign[ed]" Apple's electronic signature-capture device. *Moss v. Rent-A-Center, Inc.*, 2007 WL 2362207, at *5 (E.D.N.Y. Aug. 15, 2007).[16] *Third*, Koschitzki had notice of ATTM's arbitration provision because he accepted an identical provision two days before he purchased his iPhone 3G when he received and then activated his Sony Ericsson phone.[17] *Fourth*, Koschitzki's objection about

---

[16]  *See also*, *e.g.*, *Novak v. Tucows, Inc.*, 2007 WL 922306, at *11 (E.D.N.Y. Mar. 26, 2007) (no procedural unconscionability, "even if plaintiff failed to **read** the terms of the contract," because he "'click[ed]-through' his assent to the [contract]"); *Tarulli v. Circuit City Stores, Inc.*, 333 F. Supp. 2d 151, 157–58 (S.D.N.Y. 2004) (contention that arbitration agreement is procedurally unconscionable because she was not given a copy of the incorporated arbitration rules "holds no weight" because "Plaintiff never requested a copy of the Rules"); *cf. Butvin v. DoubleClick, Inc.*. 2001 WL 228121, at *5 (S.D.N.Y. Mar. 7, 2001) ("The law simply does not protect someone who willingly signs an agreement which references and incorporates other controlling documents which he or she has not seen."), *aff'd*, 22 F. App'x 57 (2d Cir. 2001).

[17]  *See*, *e.g.*, *Acquaire v. Canada Dry Bottling*, 906 F. Supp. 819, 828 (E.D.N.Y. 1995) (holding that "plaintiffs were aware of [arbitration provision's] presence and effect in the contract" because they "are signatories to a number of distributorship agreements which contain arbitration provisions similar to the instant one"); *Rudolph v. Topsider Bld. Sys., Inc.*, 2006 WL 4702077, at *5 (D. Haw. July 26, 2007) (arbitration provisions "were not hidden from Rudolph" in part because they "were similar to a previously agreed to provision" in another contract); *Lovey v. Regence BlueShield*, 72 P.3d 877, 884 (Idaho 2003) (unread arbitration clause in insurance policy was not procedurally unconscionable in part because insured "had approximately

lack of notice of ATTM's arbitration provision is moot because Koschitzki again agreed to arbitration when he obtained a Blackberry from ATTM's web site on December 31, 2008, over a month after ATTM moved to compel arbitration. At that point, Koschitzki undeniably was on notice that ATTM's terms of service required him to arbitrate all disputes and claims against ATTM.

Moreover, the decision on which Koschitzki relies, *McKee v. AT&T Corp.*, 191 P.3d 845 (Wash. 2008) (cited at Opp. 10–11), is inapposite—and not only because the court in that case did not "reach the issue of procedural unconscionability." *Id.* at 860. Although the lower court had deemed a different AT&T entity's service agreement to be procedurally unconscionable under Washington (not New York) law, that was because the customer was never required to "sign or affirmatively acknowledge acceptance of the terms and conditions" and could not see them until they were mailed to him after he signed up for service. *Id.* By contrast, Koschitzki concedes that he signed Apple's signature-capture device with full knowledge that he was agreeing to ATTM's terms of service (*see* Am. Compl. ¶ 5), and, as we have proven, the opportunity to review ATTM's terms of service in the Apple store. More importantly, Koschitzki does not deny that he accepted the same terms of service two days before buying his iPhone when he activated his Sony Ericsson cell phone, and did so again online when he purchased his Blackberry.

Koschitzki also contends that he had no choice but to accept ATTM's terms because ATTM is the "exclusive" provider of service for the iPhone. Opp. 8–11. This argument fares no better under New York law. New York law does not deem form contracts for services with in-

---

four months to review the terms of the policy before submitting her application," as the policy "was identical to" an earlier purchased policy); *Bunge Corp. v. Williams*, 359 N.E.2d 844, 847 (Ill. App. Ct. 1977) (defendants' assertion that they did not read the arbitration provisions in their contracts was "to no avail" because "each defendant had been a party to a contract to sell grain to [the plaintiff] on at least one prior occasion, and * * * those contracts had been made on identical forms containing identical arbitration provisions").

novative features to be procedurally unconscionable. For example, Judge Korman has held that the terms of service of E-ZPass (an automated toll-payment system) are not procedurally unconscionable because customers "remain[ed] free" to forgo E-ZPass and "continue to use traditional cash toll lanes." *Rosenfeld v. Port Auth. of N.Y.*, 108 F. Supp. 2d 156, 165 (E.D.N.Y. 2000). If it is not procedurally unconscionable to put drivers to the choice between the convenience of EZ-Pass and use of "traditional cash toll lanes," then it surely also is not procedurally unconscionable to put consumers to the choice between the innovative iPhone 3G and competing wireless providers and devices.[18] Indeed, at least one major wireless service provider, T-Mobile, will provide service without requiring customers to agree to arbitration—a customer may opt out and decline T-Mobile's arbitration provision—and another provider, Virgin Mobile, does not include an arbitration provision in its current terms of service. Supp. Decl. of Theodore Weiman ¶¶ 4–5 & Exs. 1–2. And T-Mobile in particular offers a number of cellular phones with features comparable to the iPhone 3G (*e.g.*, phone, music, e-mail, and Internet access) that Koschitzki could have selected instead. *See id.* ¶¶ 6–10 & Exs. 3–7. Because "[i]nequality of bargaining power alone does not invalidate a contract as one of adhesion when the purchase can be made elsewhere" (*Ranieri v. Bell Atl. Mobile*, 759 N.Y.S.2d 448, 449 (App. Div. 2003)), Koschitzki's ability to obtain wireless phones and service elsewhere disposes of his procedural-unconscionability claim.

In any event, even if the arbitration provision in Koschitzki's service agreement for his iPhone 3G were procedurally unconscionable, it nonetheless is enforceable because Koschitzki

---

[18] In fact, as a federal district court in Washington has recognized, wireless phones are not a necessity of life. *See Riensche v. Cingular Wireless LLC*, 2007 WL 3407137, at *8 (W.D. Wash. Nov. 9, 2007) ("telephone service, particularly cellular service, is not a necessity."); *see also*, *e.g.*, *Enderlin*, 2008 WL 830262, at *16 (satellite radio service "is a non-essential luxury item").

cannot meet his burden of establishing that it also is substantively unconscionable.  *See* pages 18–21, *supra*.

## III.  ANY INTERPRETATION OF NEW YORK LAW THAT WOULD INVALIDATE ATTM'S ARBITRATION CLAUSE IS PREEMPTED BY THE FAA.

Koschitzki misunderstands our preemption arguments.  ATTM agrees that Section 2 of the FAA, 9 U.S.C. § 2, permits courts to invalidate arbitration agreements on the basis of defenses that are applicable to all contracts and that, broadly speaking, unconscionability is such a permissible contract defense.  Opp. 8 n.8.  But Koschitzki fails to recognize that Section 2 forbids courts from circumventing the FAA's bar on state laws forbidding arbitration agreements by "rely[ing] on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable."  *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987).  Thus, a state-law holding that traditional, individual arbitration is unconscionable is preempted.  Koschitzki asserts that his arguments steer clear of FAA preemption because he is challenging the class waiver in ATTM's arbitration agreement, not the arbitration requirement itself.  Opp. 15.  But the "lack of class relief," like the lack of a jury, is a "unique characteristic[] of the arbitration process."  Christopher R. Drahozal, *Arbitration Costs and Contingent Fee Contracts*, 59 VAND. L. REV. 729, 776 (2006).  Indeed, "the fact that certain litigation devices may not be available in an arbitration is part and parcel of arbitration's ability to offer simplicity, informality, and expedition."  *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 174 (5th Cir. 2004) (internal quotation marks omitted) (holding that requirement of individual arbitration was not unconscionable under Louisiana law).  Accordingly, deeming arbitration on an individual basis (or without a jury) to be unconscionable "just repackages the tired assertion that arbitration should be disparaged as second-class adjudication."  *Carbajal v. H & R Block Tax Servs., Inc.*, 372 F.3d 903, 906 (7th Cir. 2004).

Koschitzki does not respond at all to the second aspect of our express-preemption argument. Specifically, any holding that ATTM's pro-consumer arbitration provision so "shocks the conscience" as to be substantively unconscionable (*La Salle*, 820 N.Y.S.2d at 146) would impermissibly distort that standard by applying it differently to an arbitration provision than it applies to other kinds of contractual provisions.

Finally, Koschitzki is wrong in suggesting that ATTM's conflict-preemption argument (Arb. Mem. 10) fails unless ATTM definitively proves that companies have abandoned arbitration in states in which agreements to arbitrate on an individual basis have been invalidated. Opp. 11. The Supreme Court has never required proof that a state law has already thwarted a federal objective before concluding that preemption applies; rather, it has itself relied on commonsense assumptions and predictions of likely effects. For example, in *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, the Court held that a state law protecting an unpatentable invention was preempted because that law "**could** pose a substantial threat to the patent system's ability to accomplish its mission of promoting progress in the useful arts," and refused to dismiss the conflict as a "hypothetical * * * possibility." 489 U.S. 141, 161 (1989) (emphasis added). The threat here to the FAA's objective of promoting arbitration is no less palpable: Class arbitration features the high stakes and expense of a class action, but lacks a way to have an erroneous class award overturned, no matter how massive it might be. *See* Arb. Mem. 10. No rational company would willingly accept such a risk.[19] In any event, Koschitzki incorrectly assumes that no company has

---

[19] It is true that a number of class arbitrations are pending before the American Arbitration Association ("AAA"). Opp. 14–15. But most if not all of those companies were dragged into class arbitration kicking and screaming following the Supreme Court's decision in *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444 (2003), which unexpectedly gave arbitrators the authority to decide whether an arbitration agreement that is silent on class arbitration permits it. *See* Meredith W. Nissen, *Class Action Arbitrations*, 11 Dispute Resolution Magazine 19, 19

abandoned arbitration in states that have shown extreme unwillingness to enforce agreements to arbitrate individually, such as California.  At least one major company—Comcast—has done just that in its contracts with its millions of California customers.  *See* http://www.comcast.net/terms/ subscriber/.

## IV.   THE REQUIREMENT IN ATTM'S ARBITRATION PROVISION THAT ARBITRATION TAKE PLACE ON AN INDIVIDUAL BASIS IS NON-SEVERABLE.

If, notwithstanding our arguments, this Court concludes that the requirement in ATTM's arbitration provision that customers arbitrate on an individual basis is unconscionable under New York law, and that such an interpretation of law is not preempted by the FAA, then the Court should deny ATTM's motion to compel arbitration outright rather than striking the class waiver and compelling arbitration, as Koschitzki suggests.  Opp. 15.  Koschitzki's service agreements specify that that the class waiver in his arbitration provision is non-severable:  If "the prohibition against class or representative actions that is part of the arbitration clause" is "found to be unenforceable, the arbitration clause (but only the arbitration clause) shall be null and void."  Gill Decl. Ex. 2, at 16; Terry Decl. Ex. 3 at 9.

---

(Summer 2005).  These companies' presence in class arbitrations is an object lesson to drafters of arbitration provisions, not proof that companies prefer class arbitration to class litigation.

## CONCLUSION

The Court should grant ATTM's motion to compel arbitration and dismiss all claims against ATTM.

Dated: February 24, 2009

Respectfully submitted,

/s Kevin Ranlett_____

Evan M. Tager (of counsel)
Archis A. Parasharami (*pro hac vice*)
Kevin Ranlett (*pro hac vice*)
MAYER BROWN LLP
1909 K St., NW
Washington, DC 20006

Steven D. Greenblatt (SG – 5105)
CROWELL & MORING LLP
153 East 53rd Street, 31st Floor
New York, NY 10022
(212) 895-4200

Kathleen Taylor Sooy (*pro hac vice*)
Lynn E. Parseghian (*pro hac vice*)
CROWELL & MORING LLP
1001 Pennsylvania Ave., NW
Washington, DC 20004
(202) 624-2500

*Counsel for Defendant AT&T Mobility LLC*